## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF VIRGINIA
### Alexandria Division

| | |
|---|---|
| Bitseller Expert Limited; | ) |
| Accuracy Consulting, Ltd., | ) |
| | ) |
| *Plaintiffs*, | ) |
| | ) |
| v. | ) Civil Action No. 1:19-cv-1140-AJT-JFA |
| | ) |
| VeriSign, Inc; Does 1-10, | ) |
| | ) |
| *Defendants*. | ) |
| | ) |

## DEFENDANT VERISIGN, INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS THE COMPLAINT

October 21, 2019

Timothy B. Hyland (VSB No. 31163)
Tyler Southwick (VSB No. 91087)
Hyland Law PLLC
1818 Library Street, Suite 550
Reston, VA 20190
Phone: 703-956-3566
Fax: 703-935-0349
thyland@hylandpllc.com
tsouthwick@hylandpllc.com

*and*

Ronald L. Johnston (*pro hac vice*)
James S. Blackburn (*pro hac vice*)
E. Christopher Beeler (*pro hac vice*)
Arnold & Porter Kaye Scholer, LLP
777 S. Figueroa Avenue, 44th Floor
Los Angeles, CA 90017
Phone: 213-243-4000
Fax: 213-243-4199
ronald.johnston@arnoldporter.com
james.blackburn@arnoldporter.com
chris.beeler@arnoldporter.com

*Counsel for Defendant VeriSign, Inc.*

# TABLE OF CONTENTS

Page

I.     INTRODUCTION ........................................................................................ 1

II.    FACTUAL ALLEGATIONS RELEVANT TO VERISIGN'S MOTION TO
       DISMISS ................................................................................................... 3

III.   STANDARD OF REVIEW ........................................................................ 6

       A.    Fed. R. Civ. P. 12(b)(6) Failure to State a Claim .............................. 6

       B.    Fed. R. Civ. P. 12(b)(1) Lack of Subject Matter Jurisdiction ............... 7

IV.    ARGUMENT ............................................................................................ 7

       A.    Plaintiffs Fail to Establish Subject Matter Jurisdiction ......................... 7

             1.   Plaintiffs Cannot Invoke Diversity Jurisdiction Without Identifying the
                  Citizenship of "Does 1 through 10." .......................................... 8

             2.   Plaintiffs Fail to Identify Their Own Citizenship. ........................... 9

       B.    Plaintiffs Have Failed to State Claims for Conversion and Trespass to
             Chattels ............................................................................... 11

             1.   Plaintiffs Did Not Have the Right to Possess the Radaris Domain Name
                  at the Time of the Alleged Conversion and Trespass. ...................... 13

             2.   Verisign's Alleged Conduct Was in Compliance With a Valid Court
                  Order and Absolutely Privileged. ............................................. 16

             3.   Plaintiffs' Claims for Conversion or Trespass to Chattels Fail Because
                  Plaintiffs Cannot Plausibly Allege that Verisign Exercised Dominion or
                  Control Over the Radaris Domain Name or the Radaris Website. ........... 20

             4.   A Domain Name Cannot be the Subject of a Conversion Claim Under
                  Virginia Law, Because It Is Not Tangible Property or Documented
                  Intangible Property. ............................................................ 22

             5.   Access to a Website Cannot Be the Subject of a Conversion Claim
                  Under Virginia Law, Because It could Not Be Tangible Property or
                  Documented Intangible Property. .............................................. 25

             6.   Plaintiffs Fail to State a Claim for Trespass to Chattels with Respect to
                  the Radaris Domain Name and Radaris Website. ............................ 26

V.     CONCLUSION ........................................................................................ 27

i

# **TABLE OF AUTHORITIES**

**Page(s)**

## **Cases**

*4C, Inc. v. Pouls*,
 No. 11-778, 2014 WL 1047032 (D. Del. Mar. 5, 2014) ........................................................25

*Adams v. Bain*,
 697 F.2d 1213 (4th Cir. 1982) ...........................................................................................7

*Am. Online, Inc. v. Huang*,
 106 F. Supp.2d 848 (E.D. Va. 2000) ...................................................................................1

*Am. Online, Inc. v. IMS*,
 24 F. Supp. 2d 548 (E.D. Va. 1998) ..................................................................................12

*Americold Realty Trust v. Conagra Foods, Inc.*,
 136 S. Ct. 1012 (2016) .....................................................................................................10

*Ancient Egyptian Arabic Order Nobles Mystic Shrine of N. & S. Am. & Its*
 *Jurisdiction, Inc. v. Most Worshipful Prince Hall Grand Lodge of Va.*,
 No. 3:09-cv-521, 2009 WL 4068454 (E.D. Va. Nov. 19, 2009) ....................................8, 9

*Ashcroft v. Iqbal*,
 556 U.S. 662 (2009) ........................................................................................................6, 7

*Athena Auto., Inc. v. DiGregorio*,
 166 F.3d 288 (4th Cir. 1999) ..............................................................................................9

*Bancorp Bank v. Isaacs*,
 No. 07-CV-1907, 2010 WL 1141336 (E.D. Pa. Mar. 25, 2010)......................................25

*Banner Life Ins. Co. v. Bonney*,
 No. 2:11-cv-198, 2011 WL 5027498 (E.D. Va. Oct. 21, 2011) .........................................9

*Barnhill v. Ins. Co. of N. Am.*,
 130 F.R.D. 46 (D.S.C. 1990) ............................................................................................10

*Bell Atl. Corp. v. Twombly*,
 550 U.S. 544 (2007).............................................................................................................6

*Bitseller Expert Limited v. VeriSign, Inc. and Does 1-10*,
 Case No. 2:19-cv-02036-PA-GJS ......................................................................................3

*BouMatic, LLC v. Idento Operations, B.V.*,
 759 F.3d 790 (7th Cir. 2014) ............................................................................................10

*Bowman v. White*,
    388 F.2d 756 (4th Cir. 1968), *cert. denied*, 393 U.S. 891 (1968)............................................8

*Cable News Network, LP v. CNNews.com*,
    56 Fed. Appx. 599 (4th Cir. 2003)........................................................................................3, 20

*Coalition for ICANN Transparency, Inc. v. VeriSign, Inc.*,
    611 F.3d 495 (9th Cir. 2010) .......................................................................................................1

*Columbia Gas Transmission, LLC v. NRGC Dev., LLC*,
    No. 2:18-cv-258, 2018 WL 3872114 (E.D. Va. Aug. 14, 2018) ..............................................9

*Concur-Texas, LP v. Duradril, LLC*,
    No. 2:14-cv-218, 2016 WL 2596028 (D. Utah May 5, 2016) .................................................17

*DHI Grp., Inc. v. Kent*,
    Civil No. H-16-1670, 2017 WL 1088352 (S.D. Tex. Mar. 3, 2017) .......................................26

*Dish Network LLC v. Fraifer*,
    No. 8:16-cv-2549, 2017 WL 10085027 (M.D. Fla. Oct. 17, 2017)........................................26

*Dorer v. Arel*,
    60 F. Supp. 2d 558 (E.D. Va. 1999) .......................................................................................24

*E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*,
    213 F.3d 175 (4th Cir. 2000) .....................................................................................................6

*Economopoulos v. Kolaitis*,
    259 Va. 806,814, 528 S.E.2d 714 (2000)................................................................................12

*Exeter Twp. v. Gardecki*,
    No. 5:18-cv-1723, 2018 WL 6616930 (E.D. Pa. Dec. 17, 2018) ......................................25, 26

*Famology.com, Inc. v. Perot Sys. Corp.*,
    158 F. Supp. 2d 589 (E.D. Pa. 2001) .....................................................................................24

*Fed. Ins. Co. v. Smith*,
    144 F. Supp. 2d 507 (E.D. Va. 2001), *aff'd* 63 F. App'x 630 (4th Cir. 2003).......12, 13, 16, 20

*Fidlar Techs. v. LPS Real Estate Data Sols., Inc.*,
    No. 4:13-cv-4021, 2013 WL 5973938 (C.D. Ill. Nov. 8, 2013) .............................................26

*Garcia v. U.S. Bank*,
    141 F. Supp. 3d 490 (E.D. Va. 2015) ................................................................................13, 16

*Gen. Tech. Applications, Inc. v. Exro Ltda.*,
    388 F.3d 114 (4th Cir. 2004) ...................................................................................................10

*Giarratano v. Johnson,*
   521 F.3d 298 (4th Cir. 2008) ..................................................................6

*Globalsantafe Corp. v. Globalsantafe.com,*
   250 F. Supp.2d 610 (E.D. Va. 2003) ..................................................3, 5

*Goodman v. Praxair, Inc.,*
   494 F.3d 458 (4th Cir. 2007) (*en banc*) ..............................................7

*Hawkins v. i-TV Digitalis Tavkoziesi zrt.,*
   935 F.3d 211 (4th Cir. 2019) ...............................................................10

*Huebner v. Radaris LLC et al.,*
   Case No. 3:14-cv-04735-VC ......................................................... *passim*

*In re Alexandria Surveys Int'l LLC,*
   500 B.R. 817 (Bankr. E.D. Va. 2013) .............................................23, 24

*Johnson v. Gen'l Motors Corp.,*
   242 F. Supp. 778 (E.D. Va. 1965) ......................................................8, 9

*Katz v. Odin, Feldman & Pittleman, P.C.,*
   332 F. Supp. 2d 909 (E.D. Va. 2004) ...................................................11

*Kieffer v. Tundra Storage LLC,*
   Civil No. 14-3192, 2016 WL 199411 (D. Minn. Jan. 15, 2016)............17

*Lockheed Martin Corp. v. Network Solutions, Inc.,*
   194 F.3d 980 (9th Cir. 1999) ...............................................................21

*Mahan v. Roc Nation, LLC,*
   No. 14-cv-5975, 2015 WL 1782095 (S.D.N.Y. Apr. 15, 2015) ............11

*McNutt v. Gen'l Motors Acceptance Corp.,*
   298 U.S. 178 (1936)..........................................................................7, 8

*Microstrategy, Inc. v. Netsolve, Inc.,*
   368 F. Supp. 2d 533 (E.D. Va. 2005) ...................................................11

*Milton v. IIT Research Inst.,*
   138 F.3d 519 (4th Cir. 1998) ...............................................................11

*Neat–N–Tidy Co., Inc. v. Tradepower (Holdings) Ltd.,*
   777 F. Supp. 1153 (S.D.N.Y. 1991).......................................................9

*Network Solutions, Inc. v. Umbro Int'l, Inc.,*
   259 Va. 759, 529 S.E.2d 80 (2000).......................................................23

*NextEngine Ventures, LLC v. Network Solutions, LLC*,
No. 153341/17, 2017 WL 4569679 (N.Y. Supr. Ct., Oct. 13, 2017) ...................................... 24

*Orix Credit Alliance, Inc. v. Young Express, Inc.*,
43 Fed. App'x 650 (4th Cir. 2002) ........................................................................................ 22

*Petroliam Nasional Berhad v. GoDaddy.com, Inc.*,
897 F. Supp. 2d 856 (N.D. Cal. 2012), *aff'd*, 737 F.3d 546 (9th Cir. 2013),
*cert. denied*, 135 S. Ct. 55 (2014) .................................................................................. 21, 22

*Philips v. Pitt County Memorial Hosp.*,
572 F.3d 176 (4th Cir. 2009) ................................................................................................... 6

*Puerto Rico v. Russell & Co.*,
288 U.S. 476 (1933) ............................................................................................................. 10

*RaceRedi Motorsports, LLC v. Dart Mach., Ltd.*,
640 F. Supp. 2d 660 (D. Md. 2009) ...................................................................................... 11

*RitLabs S.R.L. v. RitLabs, Inc.*,
No. 1:12-cv-215, 2012 WL 3263893 (E.D. Va. Aug. 9, 2012), *vacated in part
on other grounds*, 2012 WL 6021328 (E.D. Va. Nov. 30, 2012) ........................................ 24

*Rolling Greens MHP, LP v. Comcast SCH Holdings LLC*,
374 F.3d 1020 (11th Cir. 2004) ............................................................................................ 10

*Sandler v. W. State Hosp.*,
No. 5:02-cv-107, 2003 WL 22722870 (W.D. Va. Nov. 18, 2003) ......................................... 9

*Schreiber v. Dunabin*,
938 F. Supp. 2d 587 (E.D. Va. 2013) ................................................................................... 20

*SecureInfo Corp. v. Telos Corp.*,
387 F. Supp. 2d 593 (E.D. Va. 2005) ................................................................................... 26

*Simmonds Equip., LLC v. GGR Int'l, Inc.*,
126 F. Supp. 3d 855 (S.D. Tex. 2015) .................................................................................. 25

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
551 U.S. 308 (2007) ............................................................................................................... 4

*United Leasing Corp. v. Thrift Ins. Corp.*,
247 Va. 299 S.E.2d 902 (1994) ....................................................................................... 11, 22

*United States v. Moffitt, Zwerling & Kemler, P.C.*,
83 F.3d 660 (4th Cir. 1996) ............................................................................................. 13, 14

*Universal Tube & Rollform Equip. Corp. v. YouTube, Inc.*,
    504 F. Supp. 2d 260 (N.D. Ohio 2007)..................................................26

*Unlimited Screw Prods., Inc. v. Malm*,
    781 F. Supp. 1121 (E.D. Va. 1991) .....................................................22

*VA C 12266 Jefferson, LLC v. Mattress Warehouse Inc.*,
    No. 4:14-cv-34, 2014 WL 5311453 (E.D. Va. Oct. 16, 2014) ...............10

*Vines v. Branch*,
    244 Va. 185, 418 S.E.2d 890 (1992)....................................................12

*Ward v. Connor*,
    495 F. Supp. 434 (E.D. Va. 1980), *rev'd on other grounds,* 657 F.2d 45 (4th
    Cir. 1981) ..............................................................................................9

*White v. CMA Const. Co., Inc.*,
    947 F.Supp. 231 (E.D. Va. 1996) ...........................................................7

*Wornow v. Register.com, Inc.*,
    778 N.Y.S.2d 25, 8 A.D.3d 59 (1st Dept. 2004)....................................24

*Xereas v. Heiss*,
    933 F. Supp. 2d 1 (D.D.C. 2013) ..........................................................24

**Statutes**

28 U.S.C. 1332(c)(1).......................................................................................9

28 U.S.C. § 1332(a)(2)....................................................................................7

Fed. R. Civ. P. 8(a)(1).....................................................................................8

Fed. R. Civ. P 10(c) .........................................................................................6

Fed. R. Civ. P. 12(b)(1)....................................................................................7

Fed. R. Civ. P. 12(b)(6)................................................................................6, 7

**Other Authorities**

L.Civ. R. 7.1..................................................................................................11

Restatement (2d) of Torts § 217(b).................................................................12

Restatement (2d) of Torts § 242 (1965)...........................................................22

Restatement (2d) of Torts § 266 (1965)..................................................16, 17, 18

Defendant VeriSign, Inc. ("Verisign") respectfully submits this memorandum in support of its motion to dismiss the complaint filed by plaintiffs Accuracy Consulting Ltd. ("Accuracy") and Bitseller Expert Limited ("Bitseller") (collectively, "Plaintiffs").

## I.    **INTRODUCTION**

By their complaint, Plaintiffs seek to hold Verisign, a domain name registry,[1] liable for conversion and trespass to chattels based on Verisign's compliance with a valid order from a United States district court requiring Verisign to assist in transferring the <radaris.com> domain name away from plaintiff Accuracy to a third party (which Plaintiffs chose not to sue).  Plaintiffs allege that they own the <radaris.com> domain name and operate a website that can be accessed using that domain name.  Plaintiffs admit that Verisign assisted in transferring the <radaris.com> domain name pursuant to the clear and unambiguous terms of a valid court order.  Nonetheless, Plaintiffs contend that the court-ordered transfer was unlawful and resulted in the radaris website being "taken offline."  Contrary to Plaintiffs' assertions, the alleged transfer of a domain name by a registry pursuant to court order does not constitute conversion or trespass to chattels under Virginia law.  Further, Plaintiffs' complaint suffers from jurisdictional deficiencies that likewise require dismissal of Plaintiffs' claims.

*First*, this Court lacks subject matter jurisdiction over the controversy because Plaintiffs have not pleaded facts regarding their places of business or their owners or members that would

---

[1] Pursuant to a Registry Agreement with the Internet Corporation for Assigned Names and Numbers, and a Cooperative Agreement with the Department of Commerce, Verisign or its predecessor has operated the .com Top Level Domain ("TLD") since the inception of the internet.  *Coalition for ICANN Transparency, Inc. v. VeriSign, Inc.*, 611 F.3d 495, 499 (9th Cir. 2010).  Domain names are part of the critical internet infrastructure within the Domain Name System ("DNS").  Within the DNS, a registry function is to convert alpha-numeric domain names (such as <verisign.com>) into computer-friendly numeric Internet Protocol ("IP") addresses (such as 69.58.187.40) allowing for internet-based communications.  *See Am. Online, Inc. v. Huang*, 106 F. Supp. 2d 848, 852 (E.D. Va. 2000).

allow this court to determine whether complete diversity exists.  Similarly, Plaintiffs have not pleaded the citizenship of John Doe Defendants 1-10 as required for diversity jurisdiction.  Since Plaintiffs bear the burden of demonstrating subject matter jurisdiction, these failures require dismissal of Plaintiffs' complaint.

*Second*, Plaintiffs' conversion and trespass claims fail because Plaintiffs had no right to own or possess the <radaris.com> domain name at the time of Verisign's allegedly wrongful conduct, for the reason that a valid court order from a United States district court already had transferred any rights to the domain name to third parties.  Conversion and trespass claims cannot lie where the plaintiff lacks rights to the subject property at the time of the alleged conversion or trespass.

*Third*, the conversion and trespass to chattels claims fail because, assuming *arguendo* the truth of Plaintiffs' allegations, Verisign acted with an absolute privilege pursuant to a valid court order.  Specifically, Plaintiffs admit that a federal court's injunction ordered domain name registries, including Verisign, to comply with requests to assist in the transfer of the <radaris.com> domain name away from Accuracy.  Plaintiffs further admit that Verisign fully "complied" with the explicit terms of that order.  Thus, Verisign's alleged conduct cannot be actionable.

*Fourth*, Plaintiffs' claims fail the *Iqbal/Twombly* plausibility test because Plaintiffs cannot plausibly allege that Verisign exercised dominion or control over, or interfered with Plaintiffs' use or possession, of the <radaris.com> domain name or its associated website.  Verisign is the registry for all .com second-level domain names and, in that capacity, as numerous courts have held, it does not exercise control or dominion over registered domain names or their associated websites.

2

*Finally*, the <radaris.com> domain name and website are not property subject to conversion or trespass to chattels claims under Virginia law.  As the Virginia Supreme Court has determined, conversion and trespass claims apply only to tangible property or documented intangible property, not contract rights like domain names.

Accordingly, Verisign respectfully requests that this Court dismiss Plaintiffs' complaint without leave to amend.

## II.     <u>FACTUAL ALLEGATIONS RELEVANT TO VERISIGN'S MOTION TO DISMISS</u>

The complaint in this action (the "Complaint")[2] was filed by Plaintiffs on or about September 4, 2019.  The Complaint names as defendants Verisign and Does 1 through 10.  (Complaint, ¶¶ 3, 4.)  The Complaint asserts two claims for relief against all defendants: (1) Conversion; and (2) Trespass to Chattels.[3]  (*Id.*, ¶¶ 35-45.)

Verisign is a Delaware corporation with its principal place of business in Reston, Virginia.  (Complaint, ¶ 3.)  Verisign is the registry operator for popular top-level domains including ".com" and ".net."[4]  (*Id.*, ¶ 11.)

---

[2] ECF Docket Entry No. 1.

[3] This is not the first action Plaintiffs have brought asserting claims for conversion and trespass to chattels against Verisign based on the alleged transfer of the <radaris.com> domain name. Bitseller filed a nearly identical action in the Central District of California on March 19, 2019. *See Bitseller Expert Limited v. VeriSign, Inc. and Does 1-10*, Case No. 2:19-cv-02036-PA-GJS (ECF Docket Entry No. 1).  That action was dismissed by the court on April 10, 2019 for lack of personal jurisdiction and venue.  (*Id.*, ECF Docket Entry No. 16).

[4] As the .com registry, Verisign does not possess or exercise any control over .com domain names registered by third parties; it merely maintains the database that associates a domain name with a nameserver.  *See Globalsantafe Corp. v. Globalsantafe.com*, 250 F. Supp. 2d 610, 618-19 (E.D. Va. 2003) ("Verisign, as the registry for all domain names ending in ".com," is responsible for directing domain name queries regarding [a] second level domain name to the appropriate SLD name server.  This SLD name server, in turn, matches the domain name … with its specific numeric IP address.  In other words, the ".com" TLD zone file maintained by Verisign contains a list of all second level domains within the ".com" TLD linked to the IP address of the SLD name servers for those second level domains…").  Within the DNS, domain name *registrars*, not registries, are responsible for registering domain names and maintaining domain name registration records.  *See Cable News Network, LP v. CNNews.com*, 56 Fed. Appx. 599, *1 (4th

Plaintiffs allege that Accuracy is a limited company organized in and under the laws of the British Virgin Islands.  (Complaint, ¶ 2.)  The Complaint does not identify a principal (or any) place of business for Accuracy, or identify any owners, shareholders, or members of Accuracy.  Plaintiffs allege that Accuracy is the owner and registrant of the domain name <radaris.com> (the "Radaris Domain Name").  (*Id.*, ¶ 8.)

Plaintiffs allege that Bitseller is a limited company organized in and under the laws of the Republic of Cyprus.  (Complaint, ¶ 1.)  The Complaint does not identify a principal (or any) place of business for Bitseller, or identify any owners, shareholders, or members of Bitseller.  Plaintiffs allege that Bitseller is the operator of the website that can be accessed using the Radaris Domain Name (the "Radaris Website").  (Complaint, ¶ 9.)

On October 24, 2014, a class of plaintiffs (the "*Huebner* Plaintiffs") filed a complaint titled *Huebner v. Radaris LLC et al.*, Case No. 3:14-cv-04735-VC in the United States District Court for the Northern District of California (the "Northern District Court") against various corporate entities alleging "various wrongs arising from the operation of the Radaris Website" located at the Radaris Domain Name (the "*Huebner* Action").  (Complaint, ¶¶ 12-13.)

On or about June 19, 2017, the Northern District Court issued an order granting default judgment in favor of the plaintiff class.[5]  (Complaint, ¶ 22, Ex. 1 (the "*Huebner* Order").)  In the *Huebner* Order, the Northern District Court granted the *Huebner* Plaintiffs injunctive relief,

---

Cir. 2003) ("When a company wants the rights to a new domain name, it contacts a registrar. The registrar submits the domain name to a registry, which enters the assigned domain name into a database.").

[5] Plaintiffs have attached to the Complaint as Exhibit 1 a copy of the Order Granting Motion for Default Judgment entered by the Northern District Court in the *Huebner* Action, and refer extensively to its provisions.  Where an exhibit is attached to and made a part of a complaint, the contents of that exhibit are to be taken as true and considered in determining a motion to dismiss. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *see also* 5B Wright & Miller § 1357 (3d ed.).

including an order immediately transferring the Radaris Domain Name to the *Huebner* Plaintiffs and directing third parties such as Verisign to comply with requests by the *Huebner* Plaintiffs to assist in the transfer of the Radaris Domain Name. (*Id.*, Ex. 1 (§ II.5.c.).)

More specifically, the *Huebner* Order directed all domain name registrars to "transfer exclusive control of the Subject Domain Names"[6] to the *Huebner* Plaintiffs. If the domain name registrars did not comply within 1 business day of receipt of the *Huebner* Order, then the top-level domain registries for the Subject Domain Names, including Verisign, were ordered to "change or assist in changing the registrars of record for the Subject Domain Names to a registrar of Plaintiffs' choosing." (*Id.*)

According to the Complaint in this action – following entry of a final judgment and permanent injunction in the *Huebner* Action -- "[i]n or about February 2018, the plaintiffs in the *Huebner* case requested that Verisign, as the registry for all .com domain names, transfer the registration and operation of the Radaris Domain Name to those plaintiffs." (Complaint, ¶ 28.) On February 26, 2018, Plaintiffs allege that "Verisign complied with" the request made by the *Huebner* Plaintiffs pursuant to the *Huebner* Order and transferred the Radaris Domain Name to the *Huebner* Plaintiffs. (*Id.*, ¶ 29.)

In March 2018, after Verisign complied with the *Huebner* Order,[7] Plaintiffs sought relief from the *Huebner* Order. (Complaint, ¶ 32.) In May 2018, the Northern District Court issued an

---

[6] The "Subject Domain Names" is a defined list of domain names, including the Radaris Domain Name, covered by the *Huebner* Order. (Complaint, Ex. 1 (§ II.5.a.).)

[7] Verisign cannot transfer a domain name registration between registrants; only a domain name *registrar* can transfer a domain name. As the .com registry, Verisign maintains a database that includes (i) the domain name; (ii) the IP addresses of the primary and secondary name server for that domain name; (iii) the name of the registrar; and (iv) the expiration date for the registration. Domain name registrars, in turn, maintain records that include the name, address and other contact information for a domain name registrant. Verisign can change the identity of the domain name *registrar*, but further action by that registrar is required to change the identity of the domain name *registrant*. *See Globalsantafe Corp.*, 250 F. Supp.2d at 619. Nonetheless, for

order granting Accuracy and Bitseller relief from the *Huebner* Order.  (*Id.*, ¶ 33.)  Accuracy and Bitseller allege that the Radaris Domain Name and Radaris Website subsequently were "returned" to them.  (*Id.*, ¶ 34.)

Plaintiffs contend that they have suffered "serious and irreparable damages" because the "transfer of the Radaris domain name" resulted in the "Radaris Website [being] taken offline." (Complaint, ¶ 31.)  The only specific damage identified by Plaintiffs is their contention that "Plaintiffs lost a tremendous amount of traffic to the Radaris Website and suffered damage to its reputation and business relations."  (*Id.*)

## III.   STANDARD OF REVIEW

### A.   Fed. R. Civ. P. 12(b)(6) Failure to State a Claim

Rule 12(b)(6) permits a court to dismiss those allegations which fail "to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  A Rule 12(b)(6) motion tests the legal sufficiency of the complaint and does not resolve contests surrounding the facts or merits of a claim.  *See Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008).  In assessing the motion, the Court must "assume the truth of all facts alleged in the complaint."  *E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000).  In addition, a court "may properly take judicial notice of matters of public record . . . as well as those documents attached to the complaint."  *Philips v. Pitt County Memorial Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009); Fed. R. Civ. P 10(c).

To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim

---

unknown reasons, Plaintiffs sued Verisign, the registry, and not the *Huebner* Plaintiffs or the registrar responsible for transfer of the Radaris Domain Name.

has facial plausibility only "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

A Rule 12(b)(6) motion also may be brought based on an affirmative defense that is evident on the face of a complaint. Where a complaint clearly alleges facts sufficient to establish an affirmative defense, then a court may rule on the affirmative defense in a motion to dismiss. *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007) (*en banc*) (explaining that "where facts sufficient to rule on an affirmative defense are alleged in the complaint, the defense may be reached by a motion to dismiss under Rule 12(b)(6)").

### B.     Fed. R. Civ. P. 12(b)(1) Lack of Subject Matter Jurisdiction

A motion to dismiss under Fed. R. Civ. P. 12(b)(1) places the burden on the plaintiff, as the party asserting jurisdiction, to prove that federal jurisdiction is proper. *White v. CMA Const. Co., Inc.*, 947 F. Supp. 231, 233 (E.D. Va. 1996) (citing *McNutt v. Gen'l Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936); *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982)). A Rule 12(b)(1) motion may attack the complaint on its face, asserting simply that the complaint "fails to allege facts upon which subject matter jurisdiction can be based." *Id.* (quoting *Adams*, 697 F.2d at 1219).

## IV.    ARGUMENT

### A.     Plaintiffs Fail to Establish Subject Matter Jurisdiction

Plaintiffs fail to allege sufficient facts upon which to base subject matter jurisdiction in this Court. While not specified in the Complaint, it appears that Plaintiffs – who have alleged only state law claims – base subject matter jurisdiction on diversity grounds pursuant to 28 U.S.C. § 1332(a)(2), which provides generally for jurisdiction in actions between "citizens of a State and citizens or subjects of a foreign state."

Bitseller and Accuracy allege that each of them is a "limited company" organized under the laws of the Republic of Cyprus and the British Virgin Islands, respectively.  (Complaint, ¶¶ 1, 2.)  Neither Plaintiff alleges the location of its respective principal place of business. Plaintiffs further allege, correctly, that Verisign is a Delaware corporation with its principal place of business in Reston, Virginia.  (*Id.*, ¶ 3.)  Plaintiffs state that they "are ignorant" as to the identities of defendants "Does 1 through 10," and therefore do not allege the citizenship of these parties.  (*Id.*, ¶ 4.)

Under Fed. R. Civ. P. 8(a)(1), a complaint must include "a short and plain statement of the grounds for the court's jurisdiction."  In order to do so, the plaintiff must allege "the facts essential to show jurisdiction."  *McNutt*, 298 U.S. at 189.  To successfully invoke diversity jurisdiction, a plaintiff must allege facts showing complete diversity of citizenship between the parties.  *Id.; Bowman v. White*, 388 F.2d 756, 760 (4th Cir. 1968), *cert. denied*, 393 U.S. 891 (1968).

### 1.    Plaintiffs Cannot Invoke Diversity Jurisdiction Without Identifying the Citizenship of "Does 1 through 10."

The Complaint names as defendants "Does 1 through 10," claiming that each of these unnamed defendants is "negligently or otherwise responsible in some manner, along with [Verisign], for the occurrences herein alleged…".  (Complaint, ¶ 4.)  "Sound authority supports the general proposition that the 'John Doe' practice is unwarranted in diversity cases." *Ancient Egyptian Arabic Order Nobles Mystic Shrine of N. & S. Am. & Its Jurisdiction, Inc. v. Most Worshipful Prince Hall Grand Lodge of Va.*, No. 3:09-cv-521, 2009 WL 4068454, at *2 (E.D. Va. Nov. 19, 2009) (quoting *Johnson v. Gen'l Motors Corp.,* 242 F. Supp. 778, 779 (E.D. Va. 1965)).  If "John Doe" pleading is allowed in a diversity action, a plaintiff "must at least show that the John Doe defendants are citizens of states other than the Plaintiffs' states of citizenship."

*Id.* (citing *Ward v. Connor,* 495 F. Supp. 434, 438 (E.D. Va. 1980), *rev'd on other grounds,* 657 F.2d 45 (4th Cir. 1981)).  In such a case, a plaintiff "must establish the citizenship of the various John Doe defendants."  *Id.* (quoting *Sandler v. W. State Hosp.,* No. 5:02-cv-107, 2003 WL 22722870, at *3 (W.D. Va. Nov. 18, 2003)).  Therefore, "the action is subject to dismissal unless the John Does are eliminated or their citizenship affirmatively alleged." *Johnson,* 242 F. Supp. at 779.  Because Plaintiffs have not alleged the citizenship of the John Doe defendants, they have not adequately alleged diversity jurisdiction and this action should be dismissed on that basis.

### 2.      Plaintiffs Fail to Identify Their Own Citizenship.

Plaintiffs' invocation of the diversity jurisdiction of this Court fails for the additional reason that Plaintiffs have not properly pleaded their own citizenship for diversity jurisdiction purposes.  In their Complaint, Plaintiffs identify themselves as "limited compan[ies]" formed in Cyprus (Bitseller) or the British Virgin Islands (Accuracy).  Whether these foreign limited companies are treated as corporations[8] or as unincorporated associations,[9] it is clear that Plaintiffs have failed to allege sufficient facts to support diversity jurisdiction.

It is "well-established that complete diversity must be apparent from the pleadings." *Banner Life Ins. Co. v. Bonney*, No. 2:11-cv-198, 2011 WL 5027498, at *5 (E.D. Va. Oct. 21, 2011).  "If a complaint fails to allege a corporation's principal place of business, and if there is a possibility that a party's citizenship, through its principal place of business, might destroy diversity, then the pleading is insufficient to establish diversity."  *Id.* (citing *Neat–N–Tidy Co.,*

---

[8] If Plaintiffs are treated as corporations, their citizenships for diversity purposes would be their places of incorporation and their principal places of business.  *See* 28 U.S.C. 1332(c)(1) ("a corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business").

[9] If Plaintiffs are treated as unincorporated associations, their citizenships for diversity purposes would be the citizenships of all of their constituent members.  *See Columbia Gas Transmission, LLC v. NRGC Dev., LLC*, No. 2:18-cv-258, 2018 WL 3872114, at *2 (E.D. Va. Aug. 14, 2018) (citing *Athena Auto., Inc. v. DiGregorio*, 166 F.3d 288, 290 (4th Cir. 1999)).

*Inc. v. Tradepower (Holdings) Ltd.*, 777 F. Supp. 1153, 1156 (S.D.N.Y. 1991)); *see also Barnhill v. Ins. Co. of N. Am.*, 130 F.R.D. 46, 48 (D.S.C. 1990) ("In other words, Rule 8(a) has been applied in this context to require that a corporate party allege both its state of incorporation and its principal place of business in order to invoke federal diversity jurisdiction").

Therefore, if Bitseller and Accuracy are treated as corporations, the Complaint fails to allege sufficient facts to establish diversity jurisdiction because they have not alleged the locations of their respective principal places of business.

The same result obtains if Plaintiffs are treated as unincorporated associations.  To sufficiently allege the citizenship of an unincorporated association, a party must list the citizenships of all the members of the association.  *See VA C 12266 Jefferson, LLC v. Mattress Warehouse Inc.*, No. 4:14-cv-34, 2014 WL 5311453, at *3 (E.D. Va. Oct. 16, 2014) (quoting *Rolling Greens MHP, LP v. Comcast SCH Holdings LLC*, 374 F.3d 1020, 1022 (11th Cir. 2004)); *see also Gen. Tech. Applications, Inc. v. Exro Ltda.*, 388 F.3d 114, 120 (4th Cir. 2004); *Americold Realty Trust v. Conagra Foods, Inc.*, 136 S. Ct. 1012, 1016 (2016) ("[S]o long as such an entity is unincorporated, we apply our 'oft-repeated rule' that it possesses the citizenship of all of its members.").  If Bitseller and Accuracy are treated as unincorporated associations, they have not alleged sufficient facts to establish diversity jurisdiction because they have not alleged the identities and citizenships of their respective members.[10]

---

[10] The Fourth Circuit has not yet adopted a definitive approach for how foreign entities are treated for purposes of diversity jurisdiction.  *See Hawkins v. i-TV Digitalis Tavkozlesi zrt.*, 935 F.3d 211, 224 (4th Cir. 2019) ("[O]ur circuit has not yet adopted any approach to characterizing foreign civil-law business entities for diversity purposes.").  In *Hawkins*, the Court of Appeals noted that there are two general approaches when assessing diversity jurisdiction in a case involving a foreign entity.  Under the predominant rule formulated by the Seventh Circuit Court of Appeals, a court must examine the foreign entity's substantive features to determine whether it is to be treated as a corporation or an unincorporated association.  *Id.* (citing *BouMatic, LLC v. Idento Operations, B.V.*, 759 F.3d 790, 791 (7th Cir. 2014)).  Under the minority approach, a foreign entity having "separate legal personhood" should be treated as a corporation for purposes of diversity jurisdiction.  *Id.* (citing *Puerto Rico v. Russell & Co.*, 288 U.S. 476 (1933)).  Among

**B.**     **Plaintiffs Have Failed to State Claims for Conversion and Trespass to Chattels**

"Under Virginia law,[11] the tort of conversion constitutes any 'wrongful exercise or assumption of authority ... over another's goods, depriving him of their possession; [and any] act of dominion wrongfully exerted over property in denial of the owner's right, or inconsistent with it.'" *Microstrategy, Inc. v. Netsolve, Inc.*, 368 F. Supp. 2d 533, 536 (E.D. Va. 2005) (quoting *United Leasing Corp. v. Thrift Ins. Corp.*, 247 Va. 299, 305, 440 S.E.2d 902, 905 (1994)) (internal quotations omitted).

To state a conversion claim under Virginia law, a plaintiff must plead the following elements:

> (i) the ownership or right to possession of the property at the time of the conversion; and
>
> (ii) the defendant's conversion by the wrongful exercise of dominion or control over the plaintiff's property, depriving plaintiff of possession.

---

other omissions, Plaintiffs have pleaded no facts regarding the legal import of "limited company" status under the laws of the Republic of Cyprus or the British Virgin Islands that would allow defendants or this Court to determine whether that corporate status is more akin to a United States corporation or an unincorporated association. Here, this issue need not be addressed, because Bitseller and Accuracy have not alleged sufficient facts to establish their citizenship under either approach, including by Plaintiffs' failure to comply with L. Civ. R. 7.1.

[11] "In tort actions, it is well-settled that Virginia applies the rule of *lex loci delicti*, or the law of the place of the wrong." *Katz v. Odin, Feldman & Pittleman, P.C.*, 332 F. Supp. 2d 909, 915 n.4 (E.D. Va. 2004) (citing *Milton v. IIT Research Inst.*, 138 F.3d 519, 521 (4th Cir. 1998)) (applying Virginia law in tort action because Virginia was the place of the wrong). When applying *lex loci delicti* to conversion claims, the applicable law is the law of the state where the purported "unauthorized retention" of a plaintiff's property occurs. *See RaceRedi Motorsports, LLC v. Dart Mach., Ltd.*, 640 F. Supp. 2d 660, 666 (D. Md. 2009). Likewise, when applying *lex loci delicti* to trespass to chattels claims, the court applies the law of the place where it is alleged the property was confiscated or the interference occurred. *See Mahan v. Roc Nation, LLC*, No. 14-cv-5975, 2015 WL 1782095, at *6 (S.D.N.Y. Apr. 15, 2015). Here, Plaintiffs assert that the place of the wrong was Verisign's place of business in Reston, Virginia (Complaint, ¶ 3), where Verisign purportedly performed the acts alleged to be a conversion or trespass. (Complaint, ¶¶ 38, 43.) Virginia law therefore governs Plaintiffs' claims.

*Fed. Ins. Co. v. Smith*, 144 F. Supp. 2d 507, 517–18 (E.D. Va. 2001), *aff'd* 63 F. App'x 630 (4th Cir. 2003); *see also Economopoulos v. Kolaitis*, 259 Va. 806,814, 528 S.E.2d 714, 719 (2000).

"A trespass to chattels occurs when one party intentionally uses or intermeddles with personal property in rightful possession of another without authorization." *Am. Online, Inc. v. IMS*, 24 F. Supp. 2d 548, 550 (E.D. Va. 1998) (citing Restatement (2d) of Torts § 217(b)); *see also Vines v. Branch*, 244 Va. 185, 190, 418 S.E.2d 890, 893-94 (1992) ("Where a person has illegally seized the personal property of another and converted it to his own use, the owner may bring an action in trespass, trover, detinue, or assumpsit").

As set forth herein, Plaintiffs' claims for conversion and trespass to chattels fail for each of the following independent reasons:

- Under the *Huebner* Order, Plaintiffs did not have a right to ownership or possession of the Radaris Domain Name and Radaris Website at the time of Verisign's alleged conduct;

- Verisign was absolutely privileged to comply with the *Huebner* Order;

- Plaintiffs cannot plausibly allege that Verisign exercised dominion or control over, or interfered with Plaintiffs' use or possession, of the Radaris Domain Name or Radaris Website; and

- The Radaris Domain Name and Radaris Website are not property subject to conversion and/or trespass to chattels claims under Virginia law.

12

**1.  Plaintiffs Did Not Have the Right to Possess the Radaris Domain Name at the Time of the Alleged Conversion and Trespass.**

It is axiomatic under Virginia law that a plaintiff must have a right to "ownership" or "rightful possession" of the property at the time of the alleged conversion or trespass to maintain a conversion or trespass to chattels claim.  *See Fed. Ins. Co.*, 144 F. Supp. 2d at 517–18; *Garcia v. U.S. Bank*, 141 F. Supp. 3d 490, 496 (E.D. Va. 2015).  A plaintiff lacks the required right if, as here, at the time of the alleged conversion or trespass, a court order has transferred ownership or possessory interest to another party.  *See United States v. Moffitt, Zwerling & Kemler, P.C.*, 83 F.3d 660, 663-64 (4th Cir. 1996).

In *Moffit*, the Fourth Circuit held that a law firm, holding funds paid to it by a criminal defendant using cash derived from criminal activity, no longer had a right to possession of those funds based on court entry of a forfeiture order with respect to those funds.  In February 1991, a criminal defendant paid his law firm $103,800 in legal fees using cash derived from criminal activity. *Moffitt,* 83 F.3d at 663-64.  Subsequently, at the criminal defendant's sentencing, the court entered a forfeiture order with respect to the fees he had paid to the law firm from criminal proceeds.  *Id.* at 664.  When the law firm refused to turn over the forfeited money, the government filed a civil case against the attorneys asserting, *inter alia*, a common law claim for conversion.

On appeal, the Fourth Circuit considered the narrow question "whether the government had such a right of possession" in the attorney's fees once the district court entered the forfeiture order.  *Id.* at 670.  Answering this narrow question, the Fourth Circuit held that "once the forfeiture order was entered" the government took "title" to the criminal proceeds and its "right to possess the $103,000" related back to the date the law firm received the payment from criminal proceeds.  *Id.*  Consequently, the court's forfeiture order stripped the law firm of its title

13

*and* right to possess the payment from criminal proceeds.  The same is true here.  Once the Northern District Court entered the *Huebner* Order, the *Huebner* Plaintiffs, *not* Accuracy or Bitseller, had the right to possess the Radaris Domain Name and to control its use.

Similarly, in *Muho v. Citibank N.A.*, a plaintiff brought claims for conversion and trespass to chattels against a bank for denying the plaintiff access to funds in his deposit account.  No. 14-cv-3219, 2015 WL 106677, at *1-2 (N.D. Cal. Jan. 7, 2015).  The bank refused the plaintiff access to his funds because a court had entered a default judgment targeting the plaintiff's deposit account.  *Id.* at *5.  The *Muho* Court dismissed the conversion claim on the basis that "once Citibank was obligated to comply with those [court] orders, Muho did not have a right to possess the funds in his Citibank account."  *Id.*  Similar facts are admitted here.

Plaintiffs' Complaint establishes that, at the time that Verisign assisted in the transfer of the Radaris Domain Name to the *Huebner* Plaintiffs – the **sole** alleged act of conversion **or** trespass pleaded by Plaintiffs -- the *Huebne*r Order had divested Plaintiffs of any ownership or possessory interest in the Radaris Domain Name or access to the Radaris Website through use of the Radaris Domain Name.  In their Complaint, Plaintiffs admit that the *Huebner* Order was issued by the Northern District Court on or about June 19, 2017.  (Complaint, ¶ 22.)  As Plaintiffs further admit, the *Huebner* Court "ordered that domain names operated by the *Huebner* Defendants be transferred to the plaintiffs in the *Huebner* case."  (*Id.*, ¶ 24.)

More specifically, the *Huebner* Order states that the defendants in that action and any "third parties providing services used in connection with Defendants' operations who receive actual notice of this Order, including but not limited to domain name registrars, **domain name registries**…are **immediately ordered to cease** hosting, using, linking to, transferring, selling,

*facilitating access to, exercising control over, or otherwise owning the domain name radaris.com…*"  (Complaint, Ex. 1 (§ II.5.a.) (Emphasis added).)

The *Huebner* Order further provides that "within 1 business day of receipt of this Order, the top-level domain (TLD) registr[ies][12] (or their administrators) for the Subject Domain Names within 5 business days of receipt of this Order shall change or assist in changing the registrars of record for the Subject Domain Names to a registrar of Plaintiff's choosing."  (*Id.* at § II.5.c.)

Finally, the *Huebner* Order makes it clear that, following the change of registrar by Verisign, the *Huebner* Plaintiffs – not Verisign or Bitseller and Accuracy – had the authority and ability to redirect the Radaris Domain Name away from the servers hosting the Radaris Website, thereby affecting the ability of Internet users using the Radaris Domain Name to reach the Radaris Website.  (*Id.*, Ex. 1 (Huebner Order, § II.5.c. ("*Plaintiffs* may thereafter elect to direct the registrar to institute a domain name redirection that will automatically redirect any visitor to the Subject Domain Names to the uniform resource locator (URL) http://radarisclassaction.com, whereon copies of this Order and other documents related to this case are displayed, and place the Subject Domain Names on lock status to prevent the modification [or] deletion of the domains.") (Emphasis added).)

Therefore, once the court issued the *Huebner* Order, Plaintiffs lost any "right to possession" or control they may have had of the Radaris Domain Name and its associated services, including use of that domain name to provide access to the Radaris Website.  That Order (i) transferred the right to possession of the Radaris Domain Name *and* control of that domain name to provide access to the associated Radaris Website to the *Huebner* Plaintiffs, and

---

[12] The *Huebner* Order incorrectly refers to "top-level (TLD) registrars."  It is clear from the context of the injunction that the Order is directed at TLD *registries*, like Verisign.

(ii) compelled Verisign to comply with requests by the *Huebner* Plaintiffs to change the registrar

of record for the domain name to a registrar of the *Huebner* Plaintiffs' choosing and thereafter

assist in the transfer of the domain name as directed by the registrar.[13]  According to the

Complaint, Verisign did nothing more than comply with the *Huebner* Order.  (Complaint, ¶ 28

("In or about February 2018, the plaintiffs in the *Huebner* case requested that Verisign, as the

registry for all .com domain names, transfer the registration and operation of the Radaris Domain

Name to those plaintiffs.") & ¶ 29 ("On or about February 26, 2018, Verisign complied with the

request of the plaintiffs in the *Huebner* case…").)

As a matter of law, Plaintiffs cannot maintain conversion and trespass claims with respect

to alleged property which the Northern District Court had, in a final judgment, decreed they had

no right to possess or control.

### 2.   Verisign's Alleged Conduct Was in Compliance With a Valid Court Order and Absolutely Privileged.

Claims for conversion and trespass to chattels both require a plaintiff to allege that a

defendant exercised "wrongful" control over the subject property or otherwise acted "without

authorization."  *See Fed. Ins. Co.*, 144 F. Supp. 2d at 517–18; *Garcia*, 141 F. Supp. 3d at 496.

An action cannot be wrongful or without authorization where the action occurs pursuant to a

final judgment and order of a court order, as Plaintiffs admit occurred here.  Indeed, it is black

letter law that "[o]ne is privileged to commit acts which would otherwise be a trespass to a

chattel or a conversion when he acts pursuant to a court order which is valid and fair on its face."

Restatement (2d) of Torts § 266 (1965).

---

[13] As discussed in Section IV.E.1 *infra*, a domain name registry does not control any website that may be associated with a domain name.  While the *Huebner* Order gave the *Huebner* Plaintiffs control over the Radaris Website, Verisign as a registry could not have assisted in any exercise of such control by the *Huebner* Plaintiffs.

The Restatement recognizes that a court order is "valid and fair on its face" where the following requirements are met: (1) it must be regular in form, (2) it must be issued by a court having authority to issue the particular writ and having jurisdiction over the chattels described in it, and (3) all proceedings required for the proper issuance of the writ must have duly taken place. *Id.* § 266 cmt. b. These elements clearly are met here.

Courts routinely dismiss conversion and trespass claims by applying this sensible rule. For instance, in *Huebner v. Alliance Fund Servs., Inc.*, a plaintiff asserted a conversion claim against the defendant bank because the bank placed a hold on an IRA account as required by a court ordered injunction. No. Civ. A. 98-243, 1999 WL 314168, at *6 (D.N.J. May 3, 1999). The court dismissed the conversion claim because the bank acted "with legal justification, that is, in accordance with an operative court order." *Id.* Similar holdings have been issued by federal and state courts throughout the United States. *See e.g.*, *Concur-Texas, LP v. Duradril, LLC*, No. 2:14-cv-218, 2016 WL 2596028, at *7 (D. Utah May 5, 2016) ("[C]ompliance with a court order may justify depriving another possession of their property."); *Kieffer v. Tundra Storage LLC*, Civil No. 14-3192, 2016 WL 199411, at *6 (D. Minn. Jan. 15, 2016) ("Because the Tundra Defendants were acting in compliance with a court order, they can hardly be considered to have acted 'without lawful justification.'"); *Huebner*, 1999 WL 314168, at *5 ("However, it is widely recognized that when a taking is authorized or directed by a court order, conversion will not result."); *Intermetal Mexicana, S.A. v. Ins.e Co. of N. Am.*, 866 F.2d 71, 78 (3d Cir. 1989) ("There was no theft or conversion on July 16, 1983 [because] the equipment was moved pursuant to a valid court order.").

Here, the Complaint establishes that Verisign was absolutely privileged to perform the act – the purported transfer of the Radaris Domain Name – alleged to be a conversion and

17

trespass to chattels.  Plaintiffs admit that the *Huebner* Order required the transfer of the Radaris

Domain Name to the *Heubner* Plaintiffs.  (Complaint, ¶ 24 & Ex. 1 (*Huebner* Order, § II.5.c.

("[D]omain name registrars . . . shall transfer exclusive control of the Subject Domain Names to

Plaintiffs.").  Plaintiffs further admit that Verisign "complied with" the *Huebner* Order when

requested to do so.  (Complaint, ¶ 29.)  These allegations – which are the ***only*** acts Verisign is

alleged to have taken -- confirm that Verisign's alleged acts of conversion and transfer were

taken in order to comply with a federal district court order and are thus absolutely privileged.

Of the other requirements for application of the privilege also are present here.  The

*Huebner* Order is "valid and fair on its face."  Restatement (2d) of Torts § 266 (1965).  First, the

order is "regular in form" because it appears with a proper case caption from the Northern

District Court, is dated, signed by an Article III judge, and carries a stamp from ECF confirming

that the court filed the order on its docket.  (Complaint, Ex. 1.)  Second, there is no doubt that the

*Huebner* Order was issued "by a court having authority to issue the particular writ and having

jurisdiction over the chattels described in it."  *Id.* § 266 cmt. b.  Plaintiffs have made no

allegation that the Northern District Court lacked authority or jurisdiction to issue the relevant

order as it pertained to the Radaris Domain Name.  Third, Plaintiffs make no allegation that any

required proceedings necessary for issuance of the *Huebner* Order failed to occur.

Plaintiffs apparently attempt to avoid application of the privilege by alleging that

"Verisign knew, or should have known, that the Radaris Domain Name was not registered to the

*Huebner* Defendants against whom the Default Judgment was levied."  (Complaint, ¶ 30.)

Verisign's alleged knowledge, however, is immaterial.  The *Huebner* Order states in absolute

terms that "domain name registr[ie]s," such as Verisign, "***shall…assist***" the *Huebner* Plaintiffs in

changing the registrar records for the Subject Domain Names to identify a registrar of the

*Huebner* Plaintiffs' choosing, thereby granting the Huebner Plaintiffs' control over those domain names.  (*Id.*, Ex. 1 (Huebner Order, § II.5.c.).)  Accordingly, taking Plaintiffs' allegation as true that Verisign had actual or constructive knowledge that Accuracy owned the Radaris Domain Name, Verisign still had no choice but to comply with the absolute terms in a valid and final order issued by a federal district court directing Verisign to comply with the *Huebner* Plaintiffs' request to change the registrar identified in the registration record for the Radaris Domain Name. Even if Verisign had disagreed with the *Huebner* Order or otherwise believed it inappropriate, Verisign was still required to comply with the *Huebner* Order.

Similarly, it is irrelevant that Accuracy and Bitseller were unnamed parties in the Northern District Court case.  (Complaint, ¶ 14.)  The relevant language in the *Huebner* Order does not limit its injunctive relief to the parties in that case.  While Section II.5.a. of the *Huebner* Order seemingly limits the injunctive relief described in that section to those "persons in active concert or participation with" the defendants in that case, Section II.5.a. is not the operative clause that required Verisign to act.  Rather, Section II.5.c. of the *Huebner* Order states that Verisign, as a TLD registry, "***shall*** change or assist in changing the registrars of record for the Subject Domain Names to a registrar of Plaintiffs' choosing."  (Emphasis added.)  There is no limiting language in Section II.5.c. — it is unequivocal, unconditional, and absolute. Consequently, notwithstanding allegations that "Accuracy owned and was the registrant of" the Radaris Domain Name, (*see* Complaint, ¶ 16), Section II.5.c. of the *Huebner* Order unequivocally required Verisign to perform the very act alleged to constitute a conversion and trespass without reference to, or limitation by reason of, an alleged named registrant.

Simply put, Verisign cannot be held liable in tort for compliance with a lawful court order.  Such compliance is absolutely privileged and Plaintiffs' conversion and trespass claims should be dismissed.

### 3. Plaintiffs' Claims for Conversion or Trespass to Chattels Fail Because Plaintiffs Cannot Plausibly Allege that Verisign Exercised Dominion or Control Over the Radaris Domain Name or the Radaris Website.

To state a claim for conversion, a plaintiff must plead and prove the defendant's "exercise of dominion or control over the plaintiff's property, depriv[ed] plaintiff of possession." *See Fed. Ins. Co.*, 144 F. Supp. 2d at 517-18.  Here, Plaintiffs do not allege that Verisign exercised "dominion or control" over the Radaris Domain Name or the Radaris Website.  Rather, Verisign is alleged only to have assisted in the transfer of the "registration and operation of the Radaris Domain Name to" third parties in accordance with the *Huebner* Order.  (Complaint, ¶¶ 28, 29.)  Such a transfer is not an exercise of dominion or control over a domain name; it is merely the change of the database entry that associated the Radaris Domain Name with one nameserver, to a different nameserver, pursuant to a command directed to the registry database by a third party registrar, as directed in this case by a court order.[14]  *See Cable News Network*, 56 Fed. App'x at 601.

Verisign operates the registry for domain names in the .com top-level domain. (Complaint, ¶ 11.)  *See also Schreiber v. Dunabin*, 938 F. Supp. 2d 587, 593 (E.D. Va. 2013).  This means that it maintains the database that allows the domain name system

---

[14] Indeed, the change was not a voluntary act; it was a result of a direct order, enforceable under the contempt powers of the Northern District Court.

(DNS) to operate.[15]  It does not create, own, control, or possess any third party domain name.[16]  Hence, any claim that Verisign exercised dominion or control over the Radaris Domain Name is facially implausible, as all Verisign could do was change the nameserver and the identity of the registrar associated with the domain name in the zone file.[17]

As to the Radaris Website, Plaintiffs make no allegation at all that Verisign exercised dominion and control over it, nor could they.  Rather, Plaintiffs allege only that "following Verisign's transfer of the Radaris Domain Name, the Radaris Website was taken offline."  (Complaint, ¶ 31.)  They do not suggest, nor could they, that Verisign controlled in any way or took offline the Radaris Website.  This allegation fails to establish that Verisign took the website offline or otherwise exercised dominion or control over it.  *See Lockheed Martin Corp. v. Network Solutions, Inc.*, 194 F.3d 980, 982 (9th Cir. 1999) (stating that a domain name registry is not "an Internet Service Provider" and "performs none of the 'hosting' functions for a web site.").

Plaintiffs' Complaint apparently seeks to conflate a domain name with a website.  They are not the same.  Instead, a domain name has no content and is not a website, but merely may be used to help direct traffic to a website:

---

[15] The manner in which the DNS operates is succinctly described in *Petroliam Nasional Berhad v. GoDaddy.com, Inc.*, 897 F. Supp. 2d 856, 859-60 (N.D. Cal. 2012), *aff'd*, 737 F.3d 546 (9th Cir. 2013), *cert. denied*, 135 S. Ct. 55 (2014).

[16] A registrant chooses a domain name it wants to register (and that is not already taken by another registrant), contracts with a registrar, and the registrar then electronically communicates that name to the registry for entry into its database of registered domain names.  *See Petroliam Nasional Berhad*, 897 F. Supp. 2d at 859.

[17] This is borne out by the *Huebner* Order itself, which directed Verisign to assist the *Huebner* Plaintiffs in changing the registrar of record for the Radaris Domain Name, after which the *Huebner* Plaintiffs – not Verisign -- could take control of the domain name.  (Complaint, Ex. 1 (§ II.5.c.).)

> In response to the entry of a domain name, the user's computer communicates
> back and forth with the Domain Name System ("DNS"), a set of servers that
> allow the user to locate the IP Address for the computer that hosts the desired
> website. **The DNS does not provide any website content, but instead functions
> as the Internet's equivalent of "directory assistance."** The fundamental
> building block of the DNS is the "nameserver," which is a database of IP
> Addresses.

*Petroliam Nasional Berhad*, 897 F. Supp. 2d at 859 (emphasis added).  A website has content

and a domain name can be used to find a website; a website also may be accessed or found using

an IP address.  Of course, a website also can be found by simply accessing the files on the host

computer.  If a domain name is taken away, the website still exists, unmodified.  The website

may become harder to find, as the "directory assistance" is no longer active.  But any claim that

the transfer of the Radaris Domain Name somehow constituted dominion or control over the

Radaris Website is patently untrue and therefore fails the *Iqbal/Twombly* plausibility test for

statement of a claim.

> ### 4.    A Domain Name Cannot be the Subject of a Conversion Claim Under Virginia Law, Because It Is Not Tangible Property or Documented Intangible Property.

Plaintiffs' claims must be dismissed for the further reason that, under Virginia law, "a

cause of action for conversion does not encompass claims for interference with *undocumented*

intangible property rights."  *United Leasing*, 247 Va. at 305-06, 440 S.E.2d at 906 (italics in

original); *see also Unlimited Screw Prods., Inc. v. Malm*, 781 F. Supp. 1121, 1131 (E.D. Va.

1991) (citing Restatement (2d) of Torts § 242 (1965) for the proposition that intangibles which

are documented and therefore subject to conversion are limited to those in which the intangible

rights are embodied in the document, like a stock certificate or promissory note); *Orix Credit

Alliance, Inc. v. Young Express, Inc.*, 43 Fed. App'x 650, 654 n.3 (4th Cir. 2002) (holding that it

is "an accurate statement of Virginia law" that "there can be no conversion of an undocumented

intangible asset").  Documented intangible property rights are items such as stock certificates, insurance policies, promissory notes, or warehouse receipts.

The Supreme Court of Virginia has described a domain name in the following terms:

> . . . the *right to use* a domain name is a form of intangible personal property. . . Irrespective of how a domain name is classified . . . a domain name registrant acquires the contractual right to use a unique domain name for a specified period of time. However, that contractual right is inextricably bound to the domain name services that [Network Solutions] provides. In other words, whatever contractual rights the [registrant] has in the domain names at issue in this appeal, those rights do not exist separate and apart from [Network Solutions]'s services that make the domain names operational Internet addresses. Therefore, we conclude that a domain name registration is the product of a contract for services between the registrar and registrant.

*Network Solutions, Inc. v. Umbro Int'l, Inc.*, 259 Va. 759, 769-70, 529 S.E.2d 80, 86 (2000) (emphasis added).  By its nature, a domain name is undocumented, unlike a stock certificate or a negotiable promissory note; it has no physical representation.  The domain name exists only as an entry in a computer database and, like a telephone number, merely helps to direct Internet traffic to a website.  A domain name arises out of a contract between the registrant and registrar – *not* a contract between a registry and registrant.  No contract whatsoever exists between the registrant and registry.  In short, a domain name is neither tangible personal property nor a documented intangible right susceptible to a conversion claim.

At least one court in this district has recognized that domain names are not personal property that can be converted.  In the analogous case, *In re Alexandria Surveys Int'l LLC*, 500 B.R. 817, 822 (Bankr. E.D. Va. 2013) (emphasis added), the Court explained that "because Virginia *does not recognize an ownership interest* in telephone numbers and *web addresses* [domain names], neither were property of Alexandria International's estate and neither were subject to sale by the trustee (nor would they be subject to sale in any future proceeding)".  Thus,

under Virginia law – which governs here – a domain name is not personal property that can be converted.  It is nothing more than "the product of a contract for services between the registrar and registrant."  Furthermore, even if it were assumed *arguendo* that a conversion claim could exist with respect to an intangible contract right, such a principle would not apply to a domain name, as a domain name is not merged in a document (*e.g.*, like a stock certificate), and thus no claim for conversion of such a right could exist.[18]

Other courts in this district also have recognized that Virginia law prohibits such a claim. In *RitLabs S.R.L. v. RitLabs, Inc.*, No. 1:12-cv-215, 2012 WL 3263893, at *8 (E.D. Va. Aug. 9, 2012), *vacated in part on other grounds*, 2012 WL 6021328 (E.D. Va. Nov. 30, 2012), the Court was confronted head-on with the issue of whether a domain name could be the subject of a conversion action under Virginia law.  It entered summary judgment for the defendant because a domain name cannot, under Virginia law, be the subject of a conversion action as a matter of law.  *Id.*  This holding is consistent with other cases in this district and other courts applying Virginia law.  *See, e.g., Dorer v. Arel*, 60 F. Supp. 2d 558, 559 (E.D. Va. 1999) ("[A] domain name registration is the product of a contract for services between the registrar and registrant."); *In re Alexandria Surveys*, *supra*; *NextEngine Ventures, supra*.

---

[18]  Virginia is not alone in this holding. Courts in the District of Columbia, Pennsylvania, and New York, amongst others, agree. *See Xereas v. Heiss*, 933 F. Supp. 2d 1, 7 (D.D.C. 2013) (holding that Maryland and District of Columbia law do not permit conversion claims as to domain names, because domain names are intangible property not merged in a document); *Famology.com, Inc. v. Perot Sys. Corp.*, 158 F. Supp. 2d 589, 591 (E.D. Pa. 2001) (rejecting conversion claim because "domain names are not the kind of intangible rights which are customarily merged in, or identified with some document"); *NextEngine Ventures, LLC v. Network Solutions, LLC*, No. 153341/17, 2017 WL 4569679, at *5 (N.Y. Supr. Ct., Oct. 13, 2017) (holding that under both Virginia and New York law, "a domain name cannot be the subject of a conversion claim since a domain name is not considered personal property"); *see also Wornow v. Register.com, Inc.*, 778 N.Y.S.2d 25, 26, 8 A.D.3d 59, 59 (1st Dept. 2004) (holding a domain name is a contract right, not personal property).

Accordingly, Plaintiffs' conversion claim as to the Radaris Domain Name fails as a matter of law, and must be dismissed.

> **5.      Access to a Website Cannot Be the Subject of a Conversion Claim Under Virginia Law, Because It could Not Be Tangible Property or Documented Intangible Property.**

As noted above, Virginia law does not recognize conversion claims with respect to interference with undocumented intangible property rights.  Hence, Plaintiffs' claim that Verisign converted the Radaris Website must fail.

Plaintiffs do not allege that Verisign exercised dominion or control over the Radaris Website, nor could such a claim be made in good faith.  "[A] website is intangible," and it is not an intangible right merged into a document.  *See Simmonds Equip., LLC v. GGR Int'l, Inc.*, 126 F. Supp. 3d 855, 869 (S.D. Tex. 2015).  In *Simmonds*, for example, the Court was confronted with a motion to dismiss a claim – just like the one here – that a defendant had converted the plaintiff's website.  The Court applied Texas' law, which is substantively identical to Virginia law in this regard, and dismissed the claim, because:

> Texas law has never recognized a cause of action for conversion of intangible property except in cases where an underlying intangible right has been merged into a document and that document has been converted. Based on the foregoing Texas authority, the court concludes that Simmonds' allegations are not sufficient to state a claim for conversion under Texas law because Simmonds alleges that GGR converted its website, a website is intangible, and conversion applies only to tangible property under Texas law.

*Id.* (internal quotations and citations omitted); s*ee also Exeter Twp. v. Gardecki*, No. 5:18-cv-1723, 2018 WL 6616930, at *4 (E.D. Pa. Dec. 17, 2018) (dismissing claim for conversion of electronic data from servers, because data is intangible); *4C, Inc. v. Pouls*, No. 11-778, 2014 WL 1047032, at *9 n.18 (D. Del. Mar. 5, 2014) (suggesting but not deciding that a website cannot be the subject of a conversion claim because it is intangible); *Bancorp Bank v. Isaacs*, No. 07-CV-

1907, 2010 WL 1141336, at *8 (E.D. Pa. Mar. 25, 2010) (dismissing claim for conversion of website).

Under Virginia law, a website is neither tangible property nor "documented" intangible property.  Therefore, it cannot be the subject of a conversion action under Virginia law. Plaintiffs' conversion claim as to the Radaris Website must therefore be dismissed.

### 6. Plaintiffs Fail to State a Claim for Trespass to Chattels with Respect to the Radaris Domain Name and Radaris Website.

Multiple courts have held that intangibles – like domain names and websites – are not "chattels" to which a trespass to chattels claim may be applied.  *See Dish Network LLC v. Fraifer*, No. 8:16-cv-2549, 2017 WL 10085027, at *2 (M.D. Fla. Oct. 17, 2017) (recognizing that because a domain name is intangible, it cannot be the subject of a trespass to chattels claim under Florida law); *Universal Tube & Rollform Equip. Corp. v. YouTube, Inc.*, 504 F. Supp. 2d 260, 268 (N.D. Ohio 2007) (same, under Ohio law); *Fidlar Techs. v. LPS Real Estate Data Sols., Inc.*, No. 4:13-cv-4021, 2013 WL 5973938, at *10 (C.D. Ill. Nov. 8, 2013) (dismissing trespass to chattels claim because data "was not tangible property and therefore not chattel"); *Exeter Twp.*, 2018 WL 6616930, at *4 (same); *DHI Grp., Inc. v. Kent*, Civil No. H-16-1670, 2017 WL 1088352, at *11 (S.D. Tex. Mar. 3, 2017) (dismissing claim for trespass to chattels where the "chattel" was intangible).

In addition, a court in this district has held that to state a claim for trespass to chattels under Virginia law, a plaintiff must allege "that the *materials that were taken* by the defendants were damaged or diminished in value," and that there can be no liability "unless the chattel is impaired as to its value, condition, or quality." *SecureInfo Corp. v. Telos Corp.*, 387 F. Supp. 2d 593, 621 (E.D. Va. 2005).

Here, Plaintiffs allege only that Verisign interfered with their "use and possession" of the Radaris Domain Name and the Radaris Website. (Complaint, ¶ 43.) But the domain name and the website are intangibles which cannot be the subject of a trespass to chattels claim. Furthermore, there is no allegation – nor can there be – that the Radaris Domain Name or the Radaris Website were *themselves* damaged or diminished in value, condition, or quality. The alleged damage was to a "right of possession," of a domain name, which is insufficient. Plaintiffs also allege that they were damaged because they lost traffic to the Radaris Website. (Complaint, ¶ 31.) This, too, is not sufficient, because it demonstrates that any damages were not to the alleged chattels themselves, but rather to Plaintiffs' purported business interests.

Therefore, Bitseller's and Accuracy's trespass to chattels claims must be dismissed for failure to state a claim.

## V.   **CONCLUSION**

For these reasons, Verisign respectfully requests that this Court dismiss Plaintiffs' Complaint with prejudice.

Respectfully submitted,


 /s/  Timothy B. Hyland
Timothy B. Hyland
Virginia Bar No. 31163
Counsel for VeriSign, Inc.
HYLAND LAW PLLC
1818 Library Street, Suite 500
Reston, VA  20190
Tel.:   (703) 956-3566
Fax:    (703) 935-0349
Email:  thyland@hylandpllc.com

  /s/  Tyler Southwick
Tyler Southwick
Virginia Bar No. 91087
Counsel for VeriSign, Inc.
HYLAND LAW PLLC
1818 Library Street, Suite 500
Reston, VA  20190
Tel.:    (703) 956-3566
Fax:    (703) 935-0349
Email:  tsouthwick@hylandpllc.com


  /s/  Ronald L. Johnston
Ronald L. Johnston
*Pro Hac Vice*
Counsel for VeriSign, Inc.
ARNOLD & PORTER KAYE SCHOLER, LLP
777 S. Figueroa Avenue, 44th Floor
Los Angeles, CA  90017
Tel.:    (213) 243-4000
Fax:    (213) 243-4199
Email:  ronald.johnston@arnoldporter.com


  /s/  James S. Blackburn
James S. Blackburn
*Pro Hac Vice*
Counsel for VeriSign, Inc.
ARNOLD & PORTER KAYE SCHOLER, LLP
777 S. Figueroa Avenue, 44th Floor
Los Angeles, CA  90017
Tel.:    (213) 243-4000
Fax:    (213) 243-4199
Email:  james.blackburn@arnoldporter.com


  /s/  E. Christopher Beeler
E. Christopher Beeler
*Pro Hac Vice*
Counsel for VeriSign, Inc.
ARNOLD & PORTER KAYE SCHOLER, LLP
777 S. Figueroa Avenue, 44th Floor
Los Angeles, CA  90017
Tel.:    (213) 243-4000
Fax:    (213) 243-4199
Email:  chris.beeler@arnoldporter.com

28

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 21st day of October, 2019, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

> Jeffrey H. Geiger, Esquire
> SANDS ANDERSON PC
> 1111 E. Main Street, Suite 2400
> Bank of America Plaza
> P.O. Box 1998
> Richmond, VA 23218
> jgeiger@sandsanderson.com

and that a copy of the foregoing and the NEF was sent by email and first class mail, postage prepaid on the same date to the following non-ECF users:

> Valentin D. Gurvits, Esquire
> Matthew Shayefar, Esquire
> BOSTON LAW GROUP, PC
> 825 Beacon Street, Suite 20
> Newton Centre, MA 02459
> vgurvits@bostonlawgroup.com
> matt@bostonlawgroup.com

> /s/ Timothy B. Hyland
> Timothy B. Hyland
> Virginia Bar No. 31163
> Counsel for VeriSign, Inc.
> HYLAND LAW PLLC
> 1818 Library Street, Suite 500
> Reston, VA  20190
> Tel.:    (703) 956-3566
> Fax:    (703) 935-0349
> Email:  thyland@hylandpllc.com

29