**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | |
|---|---|
| BITSELLER EXPERT LIMITED, and ACCURACY CONSULTING LTD., | Civil Action No. 1:190cv01140-AJT-JFA |
| Plaintiffs, | |
| v. | |
| VERISIGN, INC. and DOES 1-10, | |
| Defendants. | |

**PLAINTIFFS' OPPOSITION TO DEFENDANT VERISIGN'S**
**MOTION TO DISMISS THE COMPLAINT**

i

## TABLE OF CONTENTS

TABLE OF CONTENTS ..................................................................................................... ii

TABLE OF AUTHORITIES ............................................................................................... iii

I.      INTRODUCTION .................................................................................................... 1

II.     FACTUAL ALLEGATIONS .................................................................................... 2

III.    ARGUMENT ............................................................................................................ 5

    A.   This Court has Subject Matter Jurisdiction Over this Dispute ...................................... 5

    B.   Plaintiffs Have Stated Cognizable Claims for Conversion and Trespass to Chattels .. 6

        1.   Verisign Improperly Assumes the Application of Virginia Law ................................ 6

        2.   Plaintiffs Had the Right to Possess the Radaris Domain Name at all Times ............. 10

        3.   Verisign's Actions Were Not in Compliance with a Valid Order .............................. 12

        4.   Verisign's Argument that It did Not Exercise Control Over the Radaris Domain
             Name is Not Reasonable ........................................................................................ 16

        5.   Plaintiffs Can Maintain a Cause of Action for Conversion under Both California and
             Virginia law ........................................................................................................... 18

        6.   Plaintiffs Properly Plead a Cause of Action for Conversion of the Radaris Website  23

        7.   There Was Trespass to Chattels ................................................................................ 24

IV.     CONCLUSION ...................................................................................................... 24

CERTIFICATE OF SERVICE .......................................................................................... 26

# TABLE OF AUTHORITIES

**Cases**

*Airlines Reporting Corp. v. Pishvaian*, 155 F.Supp.2d 659 (E.D. Va. 2001) .............................. 11

*CRS Recovery Inc. v. Laxton*, 600 F.3d 1138, 1142 (9th Cir. 2010) ............................................ 20

*E.I. DuPont de Nemours & Co. v. Kolon Indus., Inc.*, 2011 WL 4625760 (E.D. Va. Oct. 3, 2011)

.................................................................................................................................. 21, 22, 23

*East West, LLC v. Rahman*, 873 F.Supp.2d 721 (E.D. Va. 2012) ................................................ 22

*Eastern Shore Markets, Inc. v. J.D. Associates Ltd. Partnership*, 213 F.3d 175 (4th Cir. 2000)... 2

*Farmers Ins. Exchange v. Zerin*, 53 Cal.App.4th 445 (Cal. Ct. App. 3d Dist. 1997)............. 10, 11

*Kalxon Co. v. Stentor Elc. Mfg. Co.*, 313 U.S. 457 (1941) ............................................................ 9

*Kremen v. Cohen*, 337 F.3d 1024 (9th Cir. 2003)................................................... 8, 18, 19, 20, 22

*Mahan v. Roc Nation, LLC*, 2015 WL 1782095 (S.D.N.Y. Apr. 15, 2015) ................................... 9

*Miller v. Holiday Inns, Inc.*, 436 F.Supp. 460 (E.D. Vir. 1977) ................................................... 9

*Motorspots, LLC v. Dart Machinery, Ltd.*, 640 F.Supp.2d 660 (D. Md. 2009)............................ 9

*Muho v. Citibank N.A.*, 2015 WL 106677 (N.D. Cal. Jan. 7, 2015) .............................................. 12

*Network Solutions, Inc. v. Umbro Int'l, Inc.*, 259 Va. 759 (2000)................................................ 20

*Precision Pipeline, LLC v. Dominion Transmission, Inc.*, 2017 WL 1100903 (E.D. Va. March

23, 2017) .................................................................................................................................... 7

*Quillen v. International Playtex, Inc.*, 789 F.2d 1041 (4th Cir. 1986) .......................................... 9

*Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393 (2d Cir. 2004)...................................................... 4

*Smith v. Network Solutions, Inc.*, 135 F.Supp.2d 1159 (N.D. Ala. 2001) ..................................... 3

*Southeastern Wholesale Corp. v. Cox Communications Hampton Roads, LLC*, 2013 WL

2147478 (E.D. Va. May 13, 2013).............................................................................................. 22

*Thrifty-Tel, Inc. v. Bezenek*, 46 Cal.App.4th 1559 (Cal. Ct. App. 4d Dist. 1996) .................. 10, 24

*Trustees of Columbia University in City of New York v. Symantec Corp.*, 2014 WL 1329417

(E.D. Va. Apr. 2, 2014) .................................................................................................. 7

*United States v. Moffitt, Zwerling & Kemler, P.C.*, 83 F.3d 660 (4th Cir. 1996) ........................ 12

**Statutes**

28 U.S.C. § 1332 ................................................................................................................. 5, 6

**Other Authorities**

Restatement (Second) of Torts, Section 266 .......................................................................... 14, 15

**Rules**

Fed. R. Civ. P. 12(b)(6) ......................................................................................................... 2, 6

Fed. R. Civ. P. 12(d) .............................................................................................................. 17

Fed. R. Civ. P. 65 .................................................................................................................. 11

**Academic Articles**

George Vona, Comment, *Sex in the Courts: Kremen v. Cohen and the Emergence of Property*

*Rights in Domain Names*, 19 Intell. Prop. J. 393 (2006) ................................................. 21

Plaintiffs Bitseller Expert Limited ("Bitseller") and Accuracy Consulting, Ltd. ("Accuracy," and together with Bitseller, "Plaintiffs") respectfully oppose the Motion to Dismiss the Complaint (the "Motion") filed by Defendant VeriSign, Inc. ("Verisign").

## I.     INTRODUCTION

Verisign has moved to dismiss Plaintiffs' Complaint on an incomplete reading of the Complaint, the assertion of factual matters not found in the Complaint, the application of the incorrect law, and the incorrect application of even that law that it applies.  Verisign essentially handed over the keys and the deed to Plaintiffs' house, but wants to be found having no responsibility for its wrongful actions.  The truth is, Verisign *is* responsible for its actions.

Plaintiffs at all times had the right to possession of the Radaris Domain Name and the Radaris Website.  The court order which Verisign purports to have relied upon to convert Plaintiffs' property does not change that, particularly given that that court order was overturned as it applied to Plaintiffs.  Nor can Verisign claim that it was absolutely privileged to rely on the court order.  Verisign knew, or should have known, had it taken even a minimal amount of effort to review the court order, that it did not apply to Plaintiffs.  Yet, instead of requesting the court's clarification or correction of the order, Verisign implemented an order which it knew, or should have known, was both invalid and unfair on its face.

Verisign's arguments thereafter border into the absurd when it claims that it had no control over the Radaris Domain Name, even though it was apparently completely able to strip possession of the domain name from Plaintiffs and put it into the control of others.  Verisign's arguments strain credulity.

Finally, causes of action for conversion and trespass to chattels do apply to domain names and websites.  Applying Virginia's choice of law test, there is no question that California's substantive law should apply to this dispute (or at the very least, there is not

1

sufficient evidence at this stage that Virginia law should apply).  Under California law, it is undeniable that Plaintiffs can bring their causes of action alleged in the Complaint.  However, even if Virginia law was to apply, Defendants cannot succeed on their Motion.  Courts in this district have explicitly found that conversion claims can apply to domain names.  And even if the strictest law is applied, requiring that the intangible property be merged with a document, Verisign's own Motion makes clear that such documents do exist in the form of the Domain Name System which Verisign itself administers.  Accordingly, for the reasons set forth below, Plaintiffs request that this honorable Court deny Verisign's Motion.

## II.    FACTUAL ALLEGATIONS

"Because only the legal sufficiency of the complaint, and not the facts in support of it, are tested under a Rule 12(b)(6) motion, [the Court must] assume the truth of ***all*** facts alleged in the complaint and the existence of any fact that can be proved, consistent with the complaint's allegation....  [W]e must take the facts in the light most favorable to the plaintiff....." *Eastern Shore Markets, Inc. v. J.D. Associates Ltd. Partnership*, 213 F.3d 175, 180 (4th Cir. 2000) (emphasis added).  Notwithstanding the foregoing, Verisign's telling of the facts leaves out material allegations and misconstrues others.  Accordingly, while Plaintiffs will not repeat all the allegations in the Complaint, they do bring to the Court's attention herein some of those allegations missing or misstated by Verisign in its Motion.

While mentioning the *Huebner* Complaint, which alleged wrongs arising from the operation of the Radaris Website,[1] Verisign completely fails to mention the false basis for that complaint, which precipitated this action.  Specifically, the *Huebner* Complaint named two entities and an individual as defendants: Radaris, LLC, purportedly a Massachusetts limited

---

[1] The Radaris Website is the website available at the Radaris Domain Name.  The Radaris Domain Name is radaris.com.  Complaint, ¶¶ 8-9.

liability company, Radaris America, Inc., a Delaware corporation, and an individual named Edgar Lopin.  Complaint, ¶ 14.  The *Huebner* Complaint incorrectly alleged that the named defendants owned and operated the Radaris Website and the Radaris Domain Name, when, in reality, Bitseller operated the Radaris Website and Accuracy owned and was the registrant of the Radaris Domain Name.  Complaint, ¶¶ 15-16.  At no relevant time were Bitseller or Accuracy named in connection with the *Huebner* litigation.  Complaint, Ex. 2 ("[T]he plaintiffs never submitted evidence before entry of judgment that Accuracy and Bitseller were involved in the unlawful conduct that was the subject of this lawsuit.").

At the time of the *Huebner* litigation, it was exceedingly easy for *anyone* to verify that none of the *Huebner* defendants owned or operated the Radaris Website or Radaris Domain Name, but instead that Bitseller operated the Radaris Website and that Accuracy was the registrant of the Radaris Domain Name.  Complaint, ¶ 17.  The Radaris Website explicitly stated that the website was operated by Bitseller.  *Id.*, ¶ 18.  Moreover, the publicly available WhoIs information[2] for the Radaris Domain Name showed that Accuracy was the registrant and owner of the Radaris Domain Name.  *Id.*, ¶ 19.  Not only did Verisign have access to the WhoIs information, and not only did Verisign maintain a search engine on its own website for the public to access the WhoIs information, Verisign itself is the very entity tasked with maintaining the WhoIs database for *all* .com domain names, including the Radaris Domain Name.  *Id.*, ¶¶ 20-21. To put it another way, Verisign itself was maintaining the publicly facing information and data

---

[2] The WhoIs database is a centralized database of all registered "Second Level Domain" names in a particular "Top Level Domain."  *Smith v. Network Solutions, Inc.*, 135 F.Supp.2d 1159, 1161 (N.D. Ala. 2001).  A domain name consists of a combination of a Top Level Domain ("TLD") and a Second Level Domain ("SLD"), which are separate by a period known as a "dot." *Id.*  So that, for the Radaris Domain Name "radaris.com," for example, the ".com" is the TLD and "radaris" is the SLD.  A domain name registry, in this case Verisign, maintains the centralized "WHOIS" database of all registered SLD names in the .com TLD.  *Id.*

that confirmed that the Radaris Domain Name was registered to Accuracy and not to any of the defendants in the *Huebner* action. *Id.*, ¶ 21.

Ultimately, the plaintiffs in the *Huebner* action obtained a default judgment against the named defendants, but not against Bitseller or Accuracy. Complaint, ¶¶ 22-23. The default judgment ordered that, among other things, the Radaris Domain Name should be transferred to the control of the *Huebner* plaintiffs. *Id.*, ¶ 24. At the time, the Radaris Domain Name was registered through the registrar[3] EuroDNS.[4] *Id.*, ¶ 26. However, EuroDNS did not accept the *Huebner* default judgment and refused to transfer the Radaris Domain Name. *Id.*, ¶ 27.

But, in February 2018, the *Huebner* plaintiffs approached Verisign with the default judgment, who then stripped the Radaris Domain Name from Accuracy's control despite the easily verifiable fact that the Accuracy was the actual registrant and owner of the domain name, and not any party identified in the *Huebner* default judgment. Complaint, ¶¶ 28-29. It is unquestionable that Verisign knew, or should have known, that the default judgment was invalid at least as applies to Accuracy and Bitseller's property and that it was acting illegally when it converted and transferred the Radaris Domain Name away from Plaintiffs. *Id.*, ¶¶ 30. As a direct result of Verisign's knowing and improper transfer of the Radaris Domain Name, Plaintiffs suffered immense losses as a result of losing traffic to the Radaris Domain Name's website. *Id.*, ¶ 31.

---

[3] A registrar is distinct from a registry. Registrars have direct relationship with customers who submit requests to register domain names to the registrar, who then registers the domain name with the registry. *See*, *generally*, *Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393, 409-418 (2d Cir. 2004) (explaining the Domain Name System).

[4] At the time, the WhoIs information for the Radaris Domain Name stated that it was registered to Accuracy with a registration address in Nicosia, Cyprus. Shayefar Decl., Exhibit 1.

There is no question that the default judgment as applied to Accuracy and Bitseller was invalid.  On May 4, 2018, even the *Huebner* court itself issued a ruling finding that "the exercise of diligence" would have shown that Accuracy and Bitseller were the real parties in interest to the Radaris Domain Name and Radaris Website and relieved them from the default judgment. Complaint, ¶ 33 and Exhibit 2.

**III.     ARGUMENT**

        **A.     This Court has Subject Matter Jurisdiction Over this Dispute**

Plaintiffs have plead subject matter jurisdiction pursuant to 28 U.S.C. Section 1332. Complaint, ¶ 6.  Specifically, this is a dispute between Verisign, a citizen of a Virginia, and Plaintiffs, which are citizens or subjects of a foreign state, specifically Cyprus and the British Virgin Islands.  Complaint, ¶ 6.  *See*, *also*, 28 U.S.C. § 1332(a)(2).  This diversity of citizenship is apparent from the pleadings.

However, to the extent that the Court finds it necessary, not only are Accuracy and Bitseller incorporated outside of the United States, their principal places of business and all their owners are outside the United States.  Bitseller's principal place of business is in Riga, Latvia. Declaration on Behalf of Bitseller Expert Limited, filed herewith, ¶ 2.  Bitseller has no place of business in the United States.  *Id.*  Bitseller has no owners in the United States.  *Id.*  Accuracy's principal place of business is in Riga, Latvia.  Declaration on Behalf of Accuracy Consulting Ltd., filed herewith, ¶ 2.  Accuracy has no place of business in the United States.  *Id.*  Accuracy has no owners in the United States.  *Id.*  Accordingly, whether Plaintiffs are deemed incorporated or unincorporated associations, complete diversity of citizenship exists.  Should the Court deem it necessary for these matters to be plead directly in the Complaint, Plaintiffs respectfully request leave to file an amended Complaint to add these allegations.

Verisign also argues that diversity cannot exist because of the Doe defendants alleged in the Complaint.  However, all of the cases cited by Verisign for this proposition were cases under 28 U.S.C. Section 1332(a)(1), which requires complete diversity of jurisdiction between citizens of different *domestic* states.  But when, as here, diversity is found because Plaintiffs are citizens and subjects of foreign states and Verisign and the Doe Defendants are citizens of domestic states, regardless of the citizenry of the Doe Defendants, diversity of citizenship will continue to exist.[5]  Accordingly, this Court continues to maintain subject matter jurisdiction regardless of the citizenship of the Doe Defendants.

**B.     Plaintiffs Have Stated Cognizable Claims for Conversion and Trespass to Chattels**

*1.     Verisign Improperly Assumes the Application of Virginia Law*

Verisign begins its argument under Fed. R. Civ. P. 12(b)(6) with a complete misrepresentation of the allegations in the Complaint and an unwarranted assumption of law that presents a *prima facie* basis for denial of the Motion.  Relegated to a footnote, apparently with the hope that the Court will not notice, Verisign claims that Virginia law must apply to this action based on the false claim that the Complaint alleged that the place of the wrongs committed was in Reston, Virginia.  Motion, p. 11, fn. 11.  This is not true.

The Complaint makes no allegation whatsoever that Verisign committed the wrong in Virginia – only that Verisign has its principal place of business in Virginia.  Accordingly, the Court cannot assume the application of Virginia law to *any* portion of the substantive claims in this case because the Court is not yet in a position to decide which jurisdiction's law is applicable to this dispute.  *See*, *e.g.*, *Trustees of Columbia University in City of New York v.*

_____

[5] To the extent that it may be possible that the Doe Defendants include persons or entities that may share citizenship with either of Plaintiffs, Plaintiffs are willing to amend the Complaint with leave to indicate that the Doe Defendants do not include any such persons or entities.

6

*Symantec Corp.*, 2014 WL 1329417 at *13 (E.D. Va. Apr. 2, 2014) ("The Parties dispute whether New York law or Virginia law applies to Columbia's claim for conversion.  However, at this early stage in the litigation, the Court cannot determine which State's law applies to Columbia's conversion claim.  Columbia has alleged that Symantec converted to its own use information and property in which Columbia had a superior right of possession....  Symantec has argued that New York law applies on the basis of the place of injury; however, this assertion is inconsistent with Virginia law.  Columbia has failed to offer any basis – beyond a conclusory assertion – for concluding that the substantive law of Virginia applies to its state law claims.");  *Precision Pipeline, LLC v. Dominion Transmission, Inc.*, 2017 WL 1100903 at *5 (E.D. Va. March 23, 2017) (finding that the court could not determine facts necessary for choice of law determination on motion to dismiss).  In this case, Verisign has failed to offer any basis, beyond a conclusory assertion, for concluding that the substantive law of Virginia applies to the claims in this litigation.

In the course of discovery, it will be made clear that the substantive law of Virginia does not apply to the claims in this litigation.  The Court will learn that the Radaris Domain Name was registered with an address in the Republic of Cyprus.  *See* Declaration of Matthew Shayefar [hereinafter, "Shayefar Decl."], filed herewith, Exhibit 1.  Accordingly, the harm to Plaintiffs was in Cyprus and the property converted was converted from Cyprus – not Virginia.  Moreover, the Complaint alleges that Verisign gave control of the Radaris Domain name to the *Huebner* plaintiffs.  Complaint, ¶¶ 28-29.  The Court may take judicial notice that the *Huebner* plaintiffs were California residents and their counsel were in California.  *See* Shayefar Decl., ¶ 3 and Exhibit 2 thereto, ¶ 12.  The *Huebner* lawsuit was filed in California, subject to California law, and the default judgment was issued by a California court.  Complaint, ¶ 12, and Exhibit 1

thereto.  After Verisign improperly converted the Radaris Domain Name, discovery will show that it was converted into the control of *Huebner* plaintiffs' counsel with registration and use in Los Angeles, California.[6]  Complaint, ¶ 12.  And even if Verisign has its principal place of business in Virginia, and the location where Verisign implemented the conversion is relevant, it is not known where Verisign's personnel were when they implemented the conversion.  Public information indicates that Verisign has offices in China, India, Switzerland and Australia, let alone anywhere else in the United States or the world it may have technical personnel.  Shayefar Decl., Exhibit 4.  These complex, factual based issues preclude applying Virginia law as the substantive law in this case at this juncture (nor has Verisign even attempted to perform a choice of law analysis in its Motion).

Whether Latvian, Cypriot, Virginian or Californian substantive law applies changes the test that this Court must apply to Plaintiffs' causes of action.  For example, in *Kremen v. Cohen*, the Ninth Circuit applied California law to a conversion claim relating to a domain name.  337 F.3d 1024 (9th Cir. July 25, 2003).  Coincidentally, one of the defendants in that case was a wholly-owned subsidiary of Verisign called Network Solutions.[7]  In that case, Verisign's subsidiary essentially conceded that a domain name registrant has property rights in a domain name.  *Id.* at 1029.  In any case, the *Kremen* court made clear that California does not follow a strict merger requirement and that a domain name may appropriately be subject to a conversion claim regardless of any merger with a document.  *Id.* at 1030-36 ("Exposing Network Solutions

---

[6] After the *Huebner* plaintiffs' attorneys took control of the Radaris Domain Name, they put in place a privacy protection service to keep from the public WhoIs record their actual registration details.  *See* Shayefar Decl., ¶ 4 and Exhibit 3 thereto.  Plaintiffs expect that discovery will disclose that the underlying registration details under the privacy information indicates that the Radaris Domain Name was registered with a California address at the office of the attorneys.

[7] Verisign owned Network Solutions from 2000 through approximately October of 2003. Shayefar Decl., Exhibit 5.

8

to liability when it gives away a registrant's domain name on the basis of a forged letter is no different from holding a corporation liable when it gives away someone's shares under the same circumstances....  Network Solutions made no effort to contact Kremen before giving away his domain name, despite receiving a facially suspect letter from a third party....  [T]he common law does not stand idle while people give away the property of others.").

Of course, as further detailed below, even if the Court were to apply Virginia's substantive law to Plaintiffs' claims, Plaintiffs have still satisfied the alleged cognizable causes of action for conversion and trespass to chattels.

However, to the extent that this Court does apply a choice of law analysis at this early stage, the Court should find that California substantive law should apply to this dispute for the following reasons:

"[I]n a diversity action a federal district court is bound to apply the conflicts of law rule of the forum State, in this case Virginia, to determine which State's substantive law governs the action." *Quillen v. International Playtex, Inc.*, 789 F.2d 1041, 1043 (4th Cir. 1986) (citing *Kalxon Co. v. Stentor Elc. Mfg. Co.*, 313 U.S. 457, 496 (1941)).  The "place of the wrong (lex loci delicti)" determines which State's substantive law applies in a tort action brought in Virginia.  *Quillen*, 789 F.2d at 1043.  "The place of the wrong for purposes of the lex loci delicti rule ... is defined as the place where 'the last event necessary to make an act liable for an alleged tort takes place.'"  *Id.* (quoting *Miller v. Holiday Inns, Inc.*, 436 F.Supp. 460, 462 (E.D. Vir. 1977)).[8]

---

[8] Verisign's Motion, perplexingly, improperly applies Maryland and New York's versions of the lex loci delicti rule for conversion and trespass claims.  *See*, Motion, p. 11, fn. 11; *Motorspots, LLC v. Dart Machinery, Ltd.*, 640 F.Supp.2d 660 (D. Md. 2009) ("Under **Maryland** law, conversion occurs in the state where any wrongful retention of plaintiff's property and subsequent injury occurs." (emphasis added)).  Verisign's citation to *Mahan v. Roc Nation, LLC*

To the extent that this Court is able to make this determination at all at this stage of the litigation, the Court must refer to the allegations in the Complaint.  As alleged in the Complaint, the last event necessary to make Verisign liable for the torts alleged was it transferring the Radaris Domain Name to the *Huebner* plaintiffs <u>in California</u>.  Complaint, ¶¶ 28, 29, 31.

Under California law, "Conversion is the wrongful exercise of dominion over the property of another. The elements of a conversion are the plaintiff's ownership or right to possession of the property at the time of the conversion; the defendant's conversion by a wrongful act or disposition of property rights; and damages.  It is not necessary that there be a manual taking of the property; it is only necessary to show an assumption of control or ownership over the property, or that the alleged converter has applied the property to his own use." *Farmers Ins. Exchange v. Zerin*, 53 Cal.App.4th 445, 451-52 (Cal. Ct. App. 3d Dist. 1997).  In California, trespass to chattels "lies where an intentional interference with the possession of personal property has proximately caused injury."  *Thrifty-Tel, Inc. v. Bezenek*, 46 Cal.App.4th 1559, 1566 (Cal. Ct. App. 4d Dist. 1996).  Under California law, there is no question that Plaintiffs have properly plead causes of action against Verisign.

2.      *Plaintiffs Had the Right to Possess the Radaris Domain Name at all Times*

Verisign argues that Plaintiffs cannot sustain a cause of action because they did not have a right to possess the Radaris Domain Name at the time that Verisign took the domain name away from them.  This is wrong as a matter of fact and law.  Accuracy ***did*** have a right to possess the Radaris Domain Name at all times, which is exactly why the *Huebner* court granted Accuracy's motion for relief from the default judgment. *See* Complaint, ¶¶ 32-33 and Exhibit 2

---

is even more confounding because New York courts apply a "paramount interest" test under New York law, and only apply the lex loci delicti rule "in extraordinary circumstances."  2015 WL 1782095 at *6 (S.D.N.Y. Apr. 15, 2015).  Maryland and New York's laws are simply, at least at this time, wholly irrelevant to this dispute.

thereto.  In the Order Granting Motion for Relief from Default Judgment, the District Court for

the Northern District of California specifically found that it could not conclude "that Accuracy

and Bitseller are acting in concert with the named defendants," limiting its ability to issue any

injunction against them pursuant to Fed. R. Civ. P. 65(d)(2).  Fed. R. Civ. P. 65(d)(2) states that

every injunction of a court can only bind (A) the parties to an action (which Plaintiffs were not),

(B) the parties' officers, agents, servants, employees, and attorneys (which Plaintiffs were not),

and (C) other persons who are in active concert or participation with the foregoing (which the

Court found Plaintiffs were not).  Accordingly, the very court that issued the default judgment

found that it never had a basis to issue an injunction that the Radaris Domain Name should be

taken from Plaintiffs.  But more importantly, the fact that the California District Court explicitly

found that Plaintiffs should be relieved from the default judgment confirmed that they *always*

had the right to ownership and rightful possession of the Radaris Domain Name – otherwise

Plaintiffs would not now have retaken ownership and rightful possession of the same.

Complaint, ¶ 34.

        Accordingly, whether applying Virginia's or California's substantive law, Accuracy at all

times had a "right to possession" of the Radaris Domain Name.  *See Farmers Ins. Exchange v.*

*Zerin*, 53 Cal.App.4th 445, 451 (Cal. Ct. App. 3d Dist. 1997) ("Neither legal title nor absolute

ownership of the property is necessary....  A party need only allege it is entitled to immediate

possession at the time of conversion." (internal citations and quotation marks omitted)); *Airlines*

*Reporting Corp. v. Pishvaian*, 155 F.Supp.2d 659, 664 (E.D. Va. 2001) ("To assert a claim for

conversion [under Virginia law], a plaintiff must prove by a preponderance of the evidence (i)

the ownership or right of possession of the property at the time of the conversion and (ii) the

wrongful exercise of dominion or control by defendant over the plaintiff's property, thus depriving plaintiff of possession.").

Each of the cases cited by Verisign to claim that Plaintiffs had no right to possession are inapplicable, or at the very least distinguishable, because neither of them involve a situation in which a Court order was overturned for being invalid.  *See United States v. Moffitt, Zwerling & Kemler, P.C.*, 83 F.3d 660 (4th Cir. 1996) (plaintiff relied on statute and forfeiture order satisfied requirement that it is entitled to possession of the converted property and validity of statute and forfeiture order were never questioned); *Muho v. Citibank N.A.*, 2015 WL 106677 at *4-5 (N.D. Cal. Jan. 7, 2015) (relating to restraining order, order of attachment, and default judgment that were never challenged).

Verisign is accordingly wrong as a matter of fact and law: Plaintiffs at all times had the right to possess the Radaris Domain Name.  Verisign's argument is simply illogical – if Plaintiffs had lost the right to possess the Radaris Domain Name after the default judgment was issued, then they never would have received it back.

> 3.    *Verisign's Actions Were Not in Compliance with a Valid Order*

Verisign's actions in response to receiving the *Huebner* default judgment were not "absolutely privileged" because the default judgment itself permitted Verisign not to act (or at least request further clarity before acting) and was invalid on its face.

Verisign breathlessly claims that it had no choice but to transfer the Radaris Domain Name because the *Huebner* default judgment told it to do so and it had no other option.  But that is not the case.  Had Verisign actually read through the default judgment, it would have had, at the very least, made use of the default judgment's invitation to seek relief from the California District Court.  Specifically, the default judgment stated that "Any third parties subject to this

Order may seek relief from the Court if they believe the scope of injunctive relief requires clarification or correction."  Complaint, Exhibit 1, p. 5.

And if Verisign had engaged in any form of rational thinking, it would have seen that the scope of the injunctive relief required clarification or correction.  Verisign claims that it had no choice but to transfer the Radaris Domain Name because the default judgment stated that "within 1 business day of receipt of this Order, the top-level domain (TLD) registr[ies] (or their administrators) for the Subject Domain Names within 5 business days of receipt of this Order shall change or assist in changing the registrars of record for the Subject Domain Names to a registrar of Plaintiff's choosing."  Complaint, Exhibit 1, pp. 4-5, § 5(c).  But, the Order makes clear that the "Subject Domain Names" are the domain names "that are operated by Defendants." *Id.*, p. 4, § 5(a).  Given that Verisign not only had access to the WhoIs information for the Radaris Domain name, and not only did Versign maintain a search engine on its own website for the public to access the WhoIs information, but in reality Verisign itself is the very entity tasked with maintain that WhoIs Database for all .com domain names, Verisign was well aware which domain names were "operated by Defendants."  Complaint, ¶¶ 20-21.  Verisign knew that Accuracy was the registrant of the Radaris Domain Name and, if it had actually reviewed the *Huebner* default judgment, it would have known that Accuracy was not any one of the "Defendants" in the *Huebner* action.[9]  At the very least, Verisign would have had reason enough

---

[9] What remains to be seen through discovery is what kind of review, if any at all, Verisign applied to the *Huebner* default judgment.  For instance, is Verisign never even looked at the default judgment itself until this litigation was filed, but instead only considered a cover email from the *Huebner* plaintiffs' attorneys, Verisign could not claim any sort of good faith reliance whatsoever.

to "believe the scope of the injunctive relief requires clarification or correction" so that it could seek relief from the California District Court.[10]  Complaint, Exhibit 1, p. 5.

Verisign attempts to rely on Section 266 of the Restatement (Second) of Torts for its proposition that "One is privileged to commit acts which would otherwise be a trespass to a chattel or a conversion when he acts pursuant to a court order which is valid or fair on its face." Verisign submits no case law to suggest that Section 266 has been accepted by any Virginia courts (and Plaintiffs have not found any California cases that accept Section 266), but to the extent it is an applicable authority, Verisign cannot rely on it because the *Huebner* default judgment was neither valid nor fair on its face and because the rule explicitly excludes application to Verisign in this circumstance.

Comment *d* to Section 266 also stands directly against Verisign's arguments, stating that "If the writ merely authorizes the officer to seize the goods of A, it will protect him only when the goods seized belong to A.  The officer takes the wrong goods or the goods of the wrong person at his peril."  In this case, the *Huebner* court order authorized third-parties to seize the goods of Defendants, but it was not applicable as to the goods of Plaintiffs.  Accordingly, Verisign converted Plaintiffs' property at its own peril.

Moreover, comment *a* states that the rule in its broadest form applies only "to a sheriff, constable or other officer who intermeddles with chattels in the possession of another pursuant to

---

[10] That the *Huebner* order was a default judgment and that the real parties in interest, Accuracy and Bitseller, were foreign parties, presents a particular concern for abuse of legal proceedings because it has become a standard practice of many in the United States to file baseless lawsuits in the United States against foreign entities which may not be subject to personal jurisdiction and obtain default judgments when the foreign entities do not show up.  This issue was in fact recently briefed to the Fourth Circuit.  *See, e.g.*, Brief of *Amicus Curiae* Electronic Frontier Foundation in Support of Defendant-Appellee, Docket No. 48, pp. 13-19, in *UMG Recordings, Incorporated v. Kurbanov*, Case No. 19-1124 (4th Circuit).

an order of eviction."  Verisign is not a sheriff, constable or other officer.  However, comment *f* states that the rule may apply to "a carrier, warehouseman, or other bailee, or indeed a finder or any other person who is in possession of the chattel of another," but, importantly, "[t]he bailee ... is, however, under a duty to exercise reasonable care to give timely notice to the other whose goods he holds, in order that the other may have the opportunity to protect his interests; and if such notice is not given, and harm results to the interests of the other, there may be liability for negligence.  The damages recoverable in the negligence action may account to the full value of the chattel if the other is deprived of it by the failure to give him timely notice...."  In this case, it is clear that Verisign wholly failed to exercise reasonable care whatsoever, much less give notice to Plaintiffs prior to transferring the Radaris Domain Name.  Accordingly, Verisign remains liable for the conversion of the Radaris Domain Name.

Furthermore, the *Huebner* default judgment as applied to Plaintiffs was neither valid nor fair on its face.  "A writ to be valid must meet three requirements: (1) it must be regular in form, (2) it must be issued by a court having authority to issue the particular writ and having jurisdiction over the chattels described in it and (3) all proceedings required for the proper issuance of the writ must have duly taken place.  A writ is fair on its face if (1) it is regular in form, (2) the court issuing it has authority to issue writs of such character, although it did not have authority to issue the particular write, or although one or more of the proceedings required for its proper issuance have not taken place, and (3) the chattels described in the writ are within the territorial jurisdiction of the court."  Restatement (Second) of Torts § 266 (1965), comment *b*. In this case, the California District Court itself found that it did not have proper jurisdiction over the Radaris Domain Name because, among other things, no proceedings against the actual parties in interest, Accuracy and Bitseller, were ever even initiated, much less did they take place.

15

Moreover, the Radaris Domain Name was not within the territorial jurisdiction of the California District Court because it was registered to Accuracy in Cyprus.  Verisign of course, as already detailed above, knew or should have known about the invalidity and unfairness of the order on its face.[11]

Verisign *did* have an obligation to act reasonably when it received the *Huebner* default judgment.  It failed that obligation.  Verisign *did* have an obligation to notify Plaintiffs before taking action on the default judgment.  It failed that obligation.  Verisign *knew*, or should have known, that the default judgment did not apply to the Radaris Domain Name.  Verisign failed to pay any heed to its knowledge.  And at the very end, Verisign had explicit instructions that it could seek relief from the California District Court if it required clarification on its obligations. Verisign failed to take that opportunity.  Accordingly, Verisign cannot rely on any claim of privilege to protect itself from Plaintiffs' claims – and certainly not at the motion to dismiss stage when the allegations in the Complaint must be taken as true.

4. *Verisign's Argument that It did Not Exercise Control Over the Radaris Domain Name is Not Reasonable*

Verisign's argument that it could not exercise control over the Radaris Domain Name strains credulity and is, in any case, directly contradicted by the well-plead facts in the Complaint.  As alleged in the Complaint, Verisign "intentionally and substantially interfered with and deprived Plaintiffs of their property by taking possession of and transferring the Radaris Domain Name, thereby preventing Plaintiffs from accessing and enjoying their respective property."  Complaint, ¶ 38.  As further alleged in the Complaint, Verisign "transfer[red] the

---

[11] Verisign claims that the Complaint should be dismissed because Plaintiffs have not alleged facts to contradict what is essentially Verisign's affirmative defense that it was acting pursuant to a privilege.  Of course, it is not the obligation of Plaintiffs to foresee Verisign's affirmative defenses and plead around them in advance.  The burden is on Verisign to provide its affirmative defenses.

registration and operation of the Radaris Domain Name to" the *Huebner* plaintiffs.  Complaint, ¶¶ 28-29.  That is where this analysis should end.

However, in contravention of the indisputable requirement that this Court must take the well-plead allegations of the Complaint as true, Verisign brings in the outside allegation that it "merely" changed the database entry associated with the Radaris Domain Name from one nameserver to another.  Motion, p. 20.[12]  If this is in fact true, then it simply boggles the mind how Verisign could claim that this action does not constitute the basis for a conversion, whether under California law or Virginia law.  Whether Verisign changed data in a spreadsheet or ripped keys out of another person's hands and gave them to a third, the effect of the action is the same: Verisign dispossessed Plaintiffs of their rightful property.  The very fact that Verisign could and did deprive Plaintiffs of their rightful property by purportedly changing a database entry only proves that Verisign exercised dominion or control over the Radaris Domain Name.  One is left to wonder what could ever constitute exercising dominion or control over property if the ability to instantly take it away from its proper owner does not constitute it.  The fact is, whatever it was that Verisign did, its actions dispossessed Plaintiffs of the Radaris Domain Name and Radaris Website.  If Verisign had no dominion or control, none of its actions could have ever resulted in that outcome.

Nor does the Complaint fail to state a claim for conversion of the Radaris Website: Plaintiffs do in fact plausibly allege that Verisign dispossessed Plaintiffs of the Radaris Website by exercising control over the Radaris Domain Name.  As alleged in the Complaint, the Radaris Domain Name is used to access the Radaris Website.  Complaint, ¶ 9.  When Verisign converted

---

[12] The entirety of the argument in Section IV(B)(3) of the Motion is based on factual assertions not found in the Complaint.  Accordingly, the entire section and its arguments therein should be excluded by the Court.  Fed. R. Civ. P. 12(d).

the Radaris Domain Name, it also exercised control over the Radaris Website because its actions resulted in making the Radaris Website inaccessible through the Radaris Domain Name because it was taken offline.  Complaint, ¶ 31.  For all intents and purposes, the taking over of a domain name constitutes the taking over of the website.  This is made clear by the fact that once Verisign converted the Radaris Domain Name, discovery will show that the website at the Radaris Domain Name was replaced with a website making damaging statements regarding the operations at the Radaris Website.  Accordingly, as alleged in the Complaint, Verisign, by its actions and omissions, took action which dispossessed Bitseller of the Radaris Website and caused Bitseller damage thereby.

> 5.   *Plaintiffs Can Maintain a Cause of Action for Conversion under Both California and Virginia law*

As already stated above, to the extent that the Court believes it is appropriate to determine the choice of law for Plaintiffs' causes of action, California law should apply to Plaintiffs' cause of action for conversion.  And under California law, the clear and undeniable precedent is that a domain name is a form of property subject to a conversion claim.  In *Kremen v. Cohen*, where Verisign's wholly-owned subsidiary at the time was a defendant, the Ninth Circuit was absolutely clear that the claims at issue here could proceed, explaining in detail the basis for its decision:

> Property is a broad concept that includes "every intangible benefit and prerogative susceptible of possession or disposition." *Downing v. Mun. Court*, 88 Cal.App.2d 345, 350, 198 P.2d 923 (1948) (internal quotation marks omitted). We apply a three-part test to determine whether a property right exists: "First, there must be an interest capable of precise definition; second, it must be capable of exclusive possession or control; and third, the putative owner must have established a legitimate claim to exclusivity." *G.S. Rasmussen*, 958 F.2d at 903 (footnote omitted). Domain names satisfy each criterion. Like a share of corporate stock or a plot of land, a domain name is a well-defined interest. Someone who registers a domain name decides where on the Internet those who invoke that particular name—whether by typing it into their web browsers, by following a hyperlink, or by other means—are sent. Ownership is exclusive in that the registrant alone makes

18

that decision. Moreover, like other forms of property, domain names are valued, bought and sold, often for millions of dollars, see Greg Johnson, *The Costly Game for Net Names*, L.A. Times, Apr. 10, 2000, at A1, and they are now even subject to in rem jurisdiction, see 15 U.S.C. § 1125(d)(2).

Finally, registrants have a legitimate claim to exclusivity. Registering a domain name is like staking a claim to a plot of land at the title office. It informs others that the domain name is the registrant's and no one else's. Many registrants also invest substantial time and money to develop and promote websites that depend on their domain names. Ensuring that they reap the benefits of their investments reduces uncertainty and thus encourages investment in the first place, promoting the growth of the Internet overall. *See G.S. Rasmussen*, 958 F.2d at 900.

Kremen therefore had an intangible property right in his domain name, and a jury could find that Network Solutions "wrongful[ly] dispos[ed] of" that right to his detriment by handing the domain name over to Cohen. *Id.* at 906. The district court nevertheless rejected Kremen's conversion claim. It held that domain names, although a form of property, are intangibles not subject to conversion. This rationale derives from a distinction tort law once drew between tangible and intangible property: Conversion was originally a remedy for the wrongful taking of another's lost goods, so it applied only to tangible property. *See Prosser and Keeton on the Law of Torts* § 15, at 89, 91 (W. Page Keeton ed., 5th ed.1984). Virtually every jurisdiction, however, has discarded this rigid limitation to some degree. *See id.* at 91. Many courts ignore or expressly reject it. *See Kremen*, 325 F.3d at 1045–46 n. 5 (Kozinski, J., dissenting) (citing cases); *Astroworks, Inc. v. Astroexhibit, Inc.*, 257 F.Supp.2d 609, 618 (S.D.N.Y.2003) (holding that the plaintiff could maintain a claim for conversion of his website); Val D. Ricks, *The Conversion of Intangible Property: Bursting the Ancient Trover Bottle with New Wine*, 1991 B.Y.U. L. Rev. 1681, 1682. Others reject it for some intangibles but not others.

337 F.3d 1024, 1030 (9th Cir. 2003).  The Ninth Circuit's opinion in *Kremen* proceeds with a further in-depth extrapolation of California law and even incorporates and makes reference to its own holdings on domain names in other contexts, all of which is directly relevant and elucidating for this dispute.  The end result, however, is that in California no "merger" between the intangible property right is needed with a document to proceed.

But even were it so that a merger was required, the Ninth Circuit finds that the DNS records that Verisign claims it maintains itself can constitute a merged document:

Were it necessary to settle the issue once and for all, we would toe the line of *Payne* and hold that conversion is "a remedy for the conversion of every species of

personal property." 54 Cal. at 341. But we need not do so to resolve this case. Assuming *arguendo* that California retains some vestigial merger requirement, it is clearly minimal, and at most requires only some connection to a document or tangible object—not representation of the owner's intangible interest in the strict Restatement sense.

Kremen's domain name falls easily within this class of property. He argues that the relevant document is the Domain Name System, or "DNS"—the distributed electronic database that associates domain names like sex.com with particular computers connected to the Internet. We agree that the DNS is a document (or perhaps more accurately a collection of documents). That it is stored in electronic form rather than on ink and paper is immaterial. *See, e.g., Thrifty–Tel*, 46 Cal.App.4th at 1565, 54 Cal.Rptr.2d 468 (recognizing conversion of information recorded on floppy disk); *A & M Records*, 75 Cal.App.3d at 570, 142 Cal.Rptr. 390 (same for audio record); *Lone Ranger Television*, 740 F.2d at 725 (same for magnetic tape). It would be a curious jurisprudence that turned on the existence of a paper document rather than an electronic one. Torching a company's file room would then be conversion while hacking into its mainframe and deleting its data would not. That is not the law, at least not in California.

*Id.* at 1033-34.

There can therefore be no doubt that under the application of California law that Plaintiffs have plead a cause of action for conversion.

However, even to the extent that Virginia law applies, there has been no case on point to state that conversion claims cannot apply to domain names. Verisign cites to *Network Solutions, Inc. v. Umbro Int'l, Inc.*, 259 Va. 759 (2000), as equating a domain name to a contract right, but the case was, as other courts and commentators point out, rather equivocal and ambiguous as to how it would apply in a conversion case. *See*, *e.g.*, *CRS Recovery Inc. v. Laxton*, 600 F.3d 1138, 1142 (9th Cir. 2010) ("We find the case more equivocal. *Umbro* did treat domain names as contract rights, but at the same time, the opinion observed that the registrar of the name, Network Solutions, took the position that the name was 'personal property.' *Id.* at 85-86. The court stated that it did 'not believe that it is essential to the outcome of this case to decide whether the circuit court correctly characterized a domain name as a "form of intellectual property."' *Id.* at 86. The

20

court, thus, did not disapprove the characterization of domain names as property rights, but treated it as immaterial to the garnishment determination.... *Umbro* tells us only about how Virginia law treats domain names in *garnishment* actions.  Particularly given the majority of states' justifiable coalescence around understanding domain names as intangible property, we decline Laxton's invitation to read *Umbro* more broadly that its text requires."); George Vona, Comment, *Sex in the Courts: Kremen v. Cohen and the Emergence of Property Rights in Domain Names*, 19 Intell. Prop. J. 393, 408 (2006) ("*Umbro* does not stand for the proposition that domain names are not intangible property.  In fact, the decision is quite ambiguous.").

Even the Eastern District of Virginia has recognized the limited applicability of the *Umbro* decision to intangible property like domain names and its analog telephone numbers.   In *E.I. DuPont de Nemours & Co. v. Kolon Indus., Inc.*, Senior District Judge Robert E. Payne of the Eastern District of Virginia examined the matter in great detail in connection with a claim of conversion of confidential information.  2011 WL 4625760 (E.D. Va. Oct. 3, 2011).  Judge Payne explained that:

> The purpose of the tort of conversion is to protect individuals from those who interfere with their property rights in a way that is inconsistent with the full exercise of those rights. In this technology-driven world, the value of intangible property cannot be disputed, and a decision to limit conversion to tangible property or intangible property merged in a document symbolizing ownership would leave domain name users, satellite programmers, owners of telephone networks and internet servers, and others similarly situated unable to use an action for conversion for substantial interference with their rights. The Restatement and its reporter acknowledged the evolving nature of conversion law in 1965 when the Restatement was first published. Even then, the Restatement authors recognized the importance of providing protection for intangible rights, and they wrote in an era devoid of ecommerce. The Seventh Circuit, the Ninth Circuit, and the D.C. Circuit have recognized actions for conversion of intangible property, and this Court concludes that, if confronted with the issue, the Supreme Court of Virginia also would permit a conversion action for converted intangible property of the sort here at issue: confidential business information about the manufacturing process and about a company's business plans.

Moreover, it makes no sense to conclude that intangible property loses its protection simply because it appears in a copy of a document or on a CD. Indeed, the ease with which copies of documents can be made and with which information can be copied onto documents and CDs makes it easier for a wrongdoer to convert the intangible property of others. To hold that copied confidential information cannot be the subject of a conversion action would lead to more unauthorized copying and encourage conversion. The Court declines Kolon's invitation to do so.

*Id.* at * 5.

Judge Payne's decision was then followed by Senior District Judge Henry Coke Morgan in this District in the case of *Southeastern Wholesale Corp. v. Cox Communications Hampton Roads, LLC*, 2013 WL 2147478 (E.D. Va. May 13, 2013). There, on an opinion and order on a motion to dismiss, Judge Morgan was asked to decide whether a conversion claim could be based on the improper transfer of a telephone number. Judge Morgan found Judge Payne's *E.I. du Pont* decision particularly instructive, and also referenced eight cases from the federal circuit courts. *Id.* at *5. In the end, Judge Morgan decided that "Because there is a significant split of authority on this issue (and importantly, little guidance from the Virginia courts), it seems inappropriate to conclude that as a matter of law Plaintiffs has no property interest in the toll-free telephone number." *Id.* at *6. If this Court does determine at this stage that Virginia substantive law applies, then Plaintiffs suggest that the Court should follow the holdings in *E.I. du Pont* and *Southeastern Wholesale. See, also*, *East West, LLC v. Rahman*, 873 F.Supp.2d 721, 731 (E.D. Va. 2012) (citing *E.I. du Pont* approvingly to distinguish the holding there from a claim of conversion of a trademark).

Finally, in the event that this Court does not follow *E.I. du Pont* and *Southeastern Wholesale*, it can clearly find that the Radaris Domain Name does in fact merge with the Domain Name System. As the Ninth Circuit has stated, the DNS is "the distributed electronic database that associates domain names ... with particular computers connected to the Internet." *Kremen*,

22

337 F.3d at 1033.[13]  Both this DNS system and the WhoIs database containing the registration information for Accuracy each constitute a document with which the Radaris Domain Name merges to give Accuracy its documented intangible property rights.  The very system which Verisign maintains is in fact the documentation which gives Accuracy its claim for conversion if merger is in fact required for such a claim.  Complaint, ¶¶ 19-21, 26.

      6.    *Plaintiffs Properly Plead a Cause of Action for Conversion of the Radaris Website*

Verisign argues, without a citation to a single case applying Virginia law, its purported law of preference that a cause of action for conversion of a website cannot stand under Virginia law.  The sole reasoning for Verisign's conclusion is that, once again, there is no merger between the website and a document.

Once again, however, Virginia law (nor even the Texas precedent cited by Verisign) is not the applicable law in this lawsuit.  Under California law, as cited above, no merger is required whatsoever, therefore the entire reasoning for Verisign's conclusion is inapplicable.

Nonetheless, even if there was a merger requirement, there is no question but that the website itself constitutes a document.  The website, being lines of written code displayed as a "webpage" on an Internet user's browser, satisfies any requirements that may exist regarding documentation of a property right.  *See, e.g.*, *E.I. DuPont de Nemours & Co. v. Kolon Indus., Inc.*, 2011 WL 4625760 at * 5 (E.D. Va. 2011) ("[I]t makes no sense to conclude that intangible property loses its protection simply because it appears in a copy of a document or on a CD.").  And once again, the DNS records that Verisign claims it maintains itself merges the website with a document.  Specifically, the DNS is a record that the Radaris Domain Name points to the

---

[13] Verisign itself, among the outside information that it seeks to present to this Court, recognizes the existence of this database and its importance to the functioning of the Internet.  *See* Motion, fn. 1.

Radaris Website, thereby documenting the existence of the Radaris Website and its association with the Radaris Domain Name. *See* Motion, fn. 1.

7.      *There Was Trespass to Chattels*

As already clearly set forth above, under California law there exists unquestionably a cause of action for trespass to chattels for interfering with either a domain name or a website. Specifically, Plaintiffs have alleged in the Complaint that Verisign intentionally interfered with Plaintiffs' possession of their properties, the Radaris Domain Name and Radaris Website, which is all that is necessary to proceed with a cause of action under California law. *Thrifty-Tel, Inc. v. Bezenek*, 46 Cal..App.4th 1559, 1566 (Cal. Crt. App. 4d 1996) (trespass to chattels "lies where an intentional interference with the possession of personal property has proximately caused injury"). Once again, Verisign cites to no law from Virginia that prohibits a cause of action for trespass to chattels in this circumstance.

Finally, Verisign makes the argument that Plaintiffs have not alleged damage to the chattels. This is clearly false. Plaintiffs have alleged that they suffered "serious and irreparable damage," which includes, without limitation, the loss of traffic to the Radaris Website. Complaint, ¶¶ 31, 34. Even in the event that Virginia law applies, it is obvious that these losses have impaired the value of both the Radaris Domain Name and the Radaris Website. Any argument by Verisign to the contrary borders on the absurd.

## IV.    CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that this Court deny Verisign's Motion. Notwithstanding the foregoing, in the event that the Court deems it appropriate to grant any portion of Verisign's Motion, Plaintiffs respectfully request leave to amend the Complaint to remedy any deficiencies therein.

24

Dated: November 4, 2019                    **BITSELLER EXPERT LIMITED, and**
                                           **ACCURACY CONSULTING LTD.**


Respectfully Submitted,

 /s/  Jeffrey H. Geiger
Jeffrey H. Geiger
Virginia Bar No. 40136
Counsel for Plaintiffs Bitseller Expert
Limited and Accuracy Consulting Ltd.
SANDS ANDERSON PC
1111 E. Main Street, Suite 2400
Bank of America Plaza
P.O. Box 1998 (23218)
Richmond, Virginia 23218-1998
Telephone: (804) 783-7248
Facsimile: (804) 783-7291
Email:  jgeiger@sandsanderson.com

Valentin D. Gurvits
*Pro hac vice*
Counsel for Plaintiffs Bitseller Expert
Limited and Accuracy Consulting Ltd.
BOSTON LAW GROUP, PC
825 Beacon Street, Suite 20
Newton Centre, Massachusetts 02459
Telephone: 617-928-1804
Facsimile: 617-928-1802
vgurvits@bostonlawgroup.com

Matthew Shayefar
P*ro hac vice*
Counsel for Plaintiffs Bitseller Expert
Limited and Accuracy Consulting Ltd.
Law Office of Matthew Shayefar, PC
925 N La Brea Ave
West Hollywood, CA 90038
Telephone: 323-948-8101
matt@shayefar.com

 *Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 4th day of November, 2019, I will electronically file the foregoing with the Clerk of the Court using the CM/ECF system, which will then send a notification of such filing (NEF) to those registered to receive the same.  Furthermore, a copy of the foregoing will be sent by email on the same date to the following non-ECF users:

Ronald L. Johnston (Ronald.johnston@arnoldporter.com)
James S. Blackburn (james.blackburn@arnoldporter.com)
E. Christopher Beeler (chris.beeler@arnoldporter.com)

/s/  Jeffrey H. Geiger
Jeffrey H. Geiger
Virginia Bar No. 40136
Counsel for Plaintiffs Bitseller Expert
Limited and Accuracy Consulting Ltd.
SANDS ANDERSON PC
1111 E. Main Street, Suite 2400
Bank of America Plaza
P.O. Box 1998 (23218)
Richmond, Virginia 23218-1998
Telephone: (804) 783-7248
Facsimile: (804) 783-7291
Email:  jgeiger@sandsanderson.com

26