# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF VIRGINIA
### Alexandria Division

Bitseller Expert Limited;
Accuracy Consulting, Ltd.,    )
    )
        *Plaintiffs*,    )
    )
      v.    )  Civil Action No. 1:19-cv-1140-AJT-JFA
    )
VeriSign, Inc; Does 1-10,    )
    )
        *Defendants*.    )
    )

## DEFENDANT VERISIGN, INC.'S REPLY MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS THE COMPLAINT

November 12, 2019

Timothy B. Hyland (VSB No. 31163)
Tyler Southwick (VSB No. 91087)
Hyland Law PLLC
1818 Library Street, Suite 550
Reston, VA 20190
Phone: 703-956-3566
Fax: 703-935-0349
thyland@hylandpllc.com
tsouthwick@hylandpllc.com

*and*

Ronald L. Johnston (*pro hac vice*)
James S. Blackburn (*pro hac vice*)
E. Christopher Beeler (*pro hac vice*)
Arnold & Porter Kaye Scholer, LLP
777 S. Figueroa Avenue, 44th Floor
Los Angeles, CA 90017
Phone: 213-243-4000
Fax: 213-243-4199
ronald.johnston@arnoldporter.com
james.blackburn@arnoldporter.com
chris.beeler@arnoldporter.com

*Counsel for Defendant VeriSign, Inc.*

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................. i

TABLE OF AUTHORITIES ........................................................................................... ii

II.     INTRODUCTION ................................................................................................. 1

III.    ARGUMENT ........................................................................................................ 3

    A.    Plaintiffs' Complaint is Premised on a Misunderstanding of the DNS – There Was No "Transfer" or Other Actionable Conduct by Verisign. ........... 3

    B.    Plaintiffs Lacked the Right to Possess the Radaris Domain Name. ................. 5

    C.    Verisign's Alleged Conduct Was Absolutely Privileged. ................................ 7

    D.    Virginia Substantive Law Governs this Dispute. ........................................... 10

    E.    Plaintiffs Fail to State Claims for Conversion – Neither a Domain Name Nor a Website Is Subject to a Claim for Conversion. ...................................... 13

        1.    A Domain Name Cannot be the Subject of a Conversion Action. ....... 13

        2.    A Website Cannot be the Subject of a Conversion Action. ................. 16

    F.    Plaintiffs Fail to State Claims for Trespass to Chattels. ................................ 17

    G.    Plaintiffs Fail to Establish Subject Matter Jurisdiction. ................................ 19

IV.    CONCLUSION .................................................................................................. 20

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*4C, Inc. v. Pouls*, 2014 WL 1047032 (D. Del. Mar. 5, 2014) ........................................................ 17

*AdVnt BioTechs., LLC v. Bohannon*, 2007 WL 1875670 (D. Ariz. June 28, 2007) ..................... 16

*Am. Online, Inc. v. Huang*, 106 F. Supp. 2d 848 (E.D. Va. 2000) ............................................... 16

*Am. Online, Inc. v. IMS*, 24 F. Supp. 2d 548 (E.D. Va. 1998) ..................................................... 12

*Ancient Egyptian Arabic Order Nobles Mystic Shrine of N. & S. Am. & Its Jurisdiction, Inc. v. Most Worshipful Prince Hall Grand Lodge of Va.*, No. 3:09-cv-521, 2009 WL 4068454 (E.D. Va. Nov. 19, 2009) .................................................................................................................... 20

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ......................................................................................... 4

*Baiqiao Tang v. Wengui Guo*, No. 17 Civ. 9031, 2019 WL 1207859 (S.D.N.Y. Mar. 14, 2019) 20

*Bancorp Bank v. Isaacs*, 2010 WL 1141336 (E.D. Pa. Mar. 25, 2010) ........................................ 17

*Bitseller Expert Ltd. v. Verisign, Inc.*, C.D. Cal., Case No. 2:19-cv-2036-PA-GJS, at ECF No. 16 (Apr. 10, 2019) ....................................................................................................................... 11

*Cable News Network, LP v. CNNews.com*, 56 Fed. Appx. 599 (4th Cir. 2003) ............................ 4

*Cai v. Zhang*, 2017 WL 6892897 (E.D. Va. Oct. 4, 2017) ........................................................... 13

*Coalition for ICANN Transparency, Inc. v. VeriSign, Inc.*, 611 F.3d 495 (9th Cir. 2010) ............. 3

*Columbus-Am. Discovery Grp. v. Atlantic Mut. Ins. Co.*, 203 F.3d 291 (4th Cir. 2000) .............. 8

*Consumer Source Holding, Inc. v. Does 1-24*, 2014 WL 2967942 (E.D. Va. July 1, 2014 ......... 13

*Dexter v. Depository Trust & Clearing Corp.*, 406 F. Supp. 2d 260 (S.D.N.Y. 2005) ................. 9

*DHI Grp., Inc. v. Kent*, 2017 WL 1088352 (S.D. Tex. Mar. 3, 2017) ........................................... 18

*Dish Network LLC v. Fraifer*, 2017 WL 10085027 (M.D. Fla. Oct. 17, 2017) ............................ 18

*Dolman v. United States*, 439 U.S. 1395 (1978) ........................................................................... 10

*Dorer v. Arel*, 60 F. Supp. 2d 558 (E.D. Va. 1999) ..................................................................... 16

*East W., LLC v. Rahman*, 873 F. Supp. 2d 721 (E.D. Va. 2012)................................................... 15

*Exeter Twp. v. Gardecki*, 2018 WL 6616930 (E.D. Pa. Dec. 17, 2018)................................. 17, 18

*Famology.com, Inc. v. Perot Sys. Corp.*, 158 F. Supp. 2d 589 (E.D. Pa. 2001).......................... 16

*Fed. Ins. Co. v. Smith*, 144 F. Supp. 2d. 507 (E.D. Va. 2001)...................................................... 12

*Fed. Trade Com'n v. Productive Mktg, Inc.*, 136 F. Supp. 1096 (C.D. Cal. 2001)...................... 8

*Fidlar Techs. v. LPS Real Estate Data Sols., Inc.*, 2013 WL 5973938 (C.D. Ill. Nov. 8, 2013).. 18

*Ford Motor Co. v. Nat'l Indem. Co.*, 972 F. Supp. 2d 850 (E.D. Va. 2013)................................ 11

*Gen. Tech. Applications, Inc. v. Exro Ltda*, 388 F.3d 114 (4th Cir. 2004).................................. 20

*Globalsantafe Corp. v. Globalsantafe.com*, 250 F. Supp. 2d 610 (E.D. Va. 2003) .............. 3, 4, 5

*Howat v. Kansas*, 258 U.S. 181 (1922)....................................................................................... 10

*In re Forchion*, 130 Cal. Rptr. 3d 690, 198 Cal. App. 4th 1284 (Cal. App. 2011)...................... 14

*Integrated Direct Mktg., LLC v. May*, 143 F. Supp. 3d 418 (E.D. Va. 2015) ............................. 15

*Jeffrey J. Nelson & Assocs., Inc. v. LePore*, 2012 WL 2673242 (E.D. Va. July 5, 2012)........... 13

*Jones v. R.S. Jones & Assoc.*, 246 Va. 3, 431 S.E.2d 33 (1993)................................................... 11

*Kremen v. Cohen*, 337 F.3d 1024 (9th Cir. 2003)....................................................................... 14

*Maness v. Meyers*, 419 U.S. 449 (1975) ....................................................................................... 8

*McGuire v. Brown, Guardian*, 114 Va. 235, 76 S.E.2d 295 (1912) ............................................ 16

*Mid-Am. Fire & Marine Ins. v. Middleton*, 468 N.E.2d 1335 (Ill. App. 1984) ............................. 9

*Miller v. Holiday Inns, Inc.*, 436 F. Supp. 460 (E.D. Va. 1977)............................................ 11, 12

*Milton v. IIT Research Inst.*, 138 F.3d 519 (4th Cir. 1998) ........................................................ 11

*Muho v. Citibank N.A.*, No. 14-cv-3219, 2015 WL 106677 (N.D. Cal. Jan. 7, 2015).................. 7

*Network Solutions, Inc. v. Umbro Int'l, Inc.*, 259 Va. 759, 529 S.E.2d 80 (2000) ................ 14,16

*NextEngine Ventures, LLC v. Network Solutions, LLC*, 2017 WL 4569679 (N.Y. Supr. Ct., Oct. 13, 2017) ........................................................................................................... 14

*Petroliam Nasional Berhad v. GoDaddy.com, Inc.*, 897 F. Supp. 2d 856 (N.D. Cal. 2012) ........ 17

*Quillen v. Intern. Playtex, Inc.*, 789 F.2d 1041 (4th Cir. 1986) ..................................................... 11

*Reynolds & Reynolds Co. v. Hardee*, 932 F. Supp. 149 (E.D. Va. 1996) ...................................... 16

*RitLabs S.R.L. v. RitLabs, Inc.*, 2012 WL 3263893 (E.D. Va. Aug. 9, 2012) .............................. 14

*S.W. Wholesale Corp. v. Cox Commc'ns Hampton Roads, LLC*, Civil Action No. 2:12-cv-701, 2013 WL 2147478 (E.D. Va., May 14, 2013) ...................................................................... 4, 15

*Simmonds Equip., LLC v. GGR Int'l, Inc.*, 126 F. Supp. 3d 855 (S.D. Tex. 2015) ...................... 17

*Trs. of Columbia Univ. in City of N.Y. v. Symantec Corp.*, 2014 WL 1329417 (E.D. Va. Apr. 2, 2014) .................................................................................................................................. 12

*United Leasing Corp. v. Thrift Ins. Corp.*, 247 Va. 299, 440 S.E.2d 902 (1994) ................... 15, 16

*United States v. Moffitt, Zwerling & Kemler, P.C.*, 83 F.3d 660 (4th Cir. 1996) ........................... 7

*Universal Tube & Rollform Equip. Corp. v. YouTube, Inc.*, 504 F. Supp. 2d 260 (N.D. Ohio 2007) ................................................................................................................................... 18

*Xereas v. Heiss*, 933 F. Supp. 2d 1 (D.D.C. 2013) ....................................................................... 15

*Zak v. Chelsea Therapeutics Intern., Ltd.*, 780 F.3d 597 (4th Cir. 2015) ........................................ 4

**Other Authorities**

63C Am. Jur. 2d Property § 1 (2019) ............................................................................................. 16

Restatement (2d) of Torts § 217 cmt. e .......................................................................................... 19

Restatement (2d) of Torts § 242 cmt. a (1965) .............................................................................. 15

Restatement (2d) of Torts § 266 (1965) ............................................................................................ 8

**Rules**

Fed. R. Civ. P. 8(a)(1) ................................................................................................ 20

Fed. R. Civ. P. 10(c) ................................................................................................. 19

**Treatises**

5 McCarthy on Trademarks & Unfair Competition § 25A:73 (5th ed. 2019) ......................... 3, 13

Defendant Verisign[1] respectfully submits this Reply Memorandum in support of its Motion to Dismiss the Complaint filed by Plaintiffs (the "Motion").

## II.   <u>INTRODUCTION</u>

Plaintiffs' Opposition to the Motion (the "Opposition") exposes, rather than overcomes, the fundamental deficiencies of Plaintiffs' claims that compel dismissal of the Complaint with prejudice.  Plaintiffs attempt to divert the Court's attention with a series of factual and legal mis-directions instead of addressing, on their own terms, each of the arguments made by Verisign. Once Plaintiffs' obfuscations are stripped away, it is clear that Plaintiffs' conversion and trespass claims are deficient as a matter of law, and must be dismissed.

*First*, Plaintiffs fundamentally misunderstand the limited role of a domain name *registry* within the Domain Name System.  Plaintiffs' Complaint is based on their conclusory assertion that Verisign, the .com *registry*, "transferred" the Radaris Domain Name away from Accuracy. Numerous cases have recognized that a TLD *registry* like Verisign cannot "transfer" a domain name between registrants; only *registrars*, which Verisign is not, transfer domain names. Plaintiffs' claims based on a purported transfer by a *registry* simply make no sense.

*Second*, Plaintiffs cannot overcome the fact that the *Huebner* order and final judgment ("*Huebner* Order") transferred any rights of possession of the Radaris Domain Name away from Accuracy *prior to* Verisign's alleged conduct.  The *Huebner* Order is clear on its face and granted possessory rights to the Radaris Domain Name to the *Huebner* Plaintiffs, not Accuracy. The subsequent vacatur of the *Huebner* Order does not render it any less binding on Verisign during the period it was in effect nor retroactively grant Plaintiffs possessory rights for the time period during which Verisign allegedly transferred the Radaris Domain Name.

---

[1] Capitalized terms in this Reply use the same definitions set forth in Verisign's Motion.

*Third*, Plaintiffs provide no legal or factual reason why Verisign's compliance with the *Huebner* Order was not absolutely privileged – it plainly was.  Instead, Plaintiffs make the astonishing argument that third parties, presented with a lawful order of a United States District Court, should have discretion to disregard such an order even though it is facially valid. Plaintiffs' argument is contrary to law, which is clear that orders valid on their face must be obeyed unless and until they are reversed.  The *Huebner* Order is valid on its face, and specifically directed registries like Verisign to assist the *Huebner* Plaintiffs in changing the registrar of record for the Radaris Domain Name.  The registrar of record subsequently changed the registrant of the Radaris Domain Name (or "transferred" the domain name in Plaintiffs' vernacular).  (*See* Hyland Decl., Ex. 5).  It is simply not relevant, as Plaintiffs' claim, that the registration record for the Radaris Domain Name identified Accuracy and not one of the *Huebner* Defendants as the registrant – the *Huebner* Order directed Verisign to take action with respect to the Radaris Domain Name, irrespective of its registrant.  Verisign complied with the Order according to its terms, and is absolutely privileged from legal liability for doing so.

*Fourth*, Plaintiffs' argument that California, Cypriot, or Latvian law applies to their claims is simply an attempted end-run around controlling Virginia law that the Radaris Domain Name and Radaris Website are not property subject to conversion or trespass claims.  Virginia applies the choice of law principle of *lex loci delicti*, or the law of the place of the wrong.  That place is clearly Virginia based on Plaintiffs' own allegations, not California, Cyprus or Latvia.

Applying binding Virginia law, Plaintiffs' trespass and conversion claims must be dismissed.  Virginia courts repeatedly have confirmed that domain names and websites are not proper subjects for claims for conversion or trespass to chattels.  None of the cases cited by Plaintiffs in their opposition overcome this clear and controlling law.

2

*Finally*, Plaintiffs' opposition admits that this Court lacks subject matter jurisdiction over this controversy.  Plaintiffs cannot amend their Complaint by submitting declarations in response to the Motion that purport to supply the missing allegations regarding Plaintiffs' places of business or their owners or members.  Plaintiffs also fail to identify the Doe Defendants' citizenship, and diversity does not exist if any of the Doe defendants are foreign persons.

## III.   ARGUMENT

### A.   Plaintiffs' Complaint is Premised on a Misunderstanding of the DNS – There Was No "Transfer" or Other Actionable Conduct by Verisign.

The central – indeed, only – allegation of wrongdoing in the Complaint is that Verisign "complied with the request of the plaintiffs in the *Huebner* case"…to "transfer the registration and operation of the Radaris Domain Name to those plaintiffs."  (Complaint, ¶¶ 28-29). Plaintiffs' conclusory assertion that a *registry* like Verisign is responsible for transfer of a domain name between registrants reflects a misunderstanding of how the Domain Name System works, is inconsistent with indisputable facts, and is contradicted by numerous court opinions.

Pursuant to a Registry Agreement with the Internet Corporation for Assigned Names and Numbers ("ICANN"), and a Cooperative Agreement with the Department of Commerce, Verisign or its predecessor has operated the .com Top Level Domain ("TLD") since the inception of the internet.[2]  *Coalition for ICANN Transparency, Inc. v. VeriSign, Inc.*, 611 F.3d 495, 499 (9th Cir. 2010).  As the .com registry operator, Verisign does not possess or exercise control over .com domain names registered by third parties; it merely maintains the database that

---

[2] "A 'registry' for a given top-level domain is an entity that receives information from domain name 'registrars,' places that information into a database and publishes the information in files on the Internet so that the names can be found by users around the world. A 'registry' interfaces only with 'registrars,' not with the public. A 'registrar' is accredited by ICANN and deals directly with the public, selling domain name registrations. The registrar processes and maintains domain name registrations and sends the necessary data to the 'registry' for that top-level domain."  5 McCarthy on Trademarks & Unfair Competition § 25A:73 (5th ed. 2019).

associates a domain name with the IP address of a nameserver.  *See Globalsantafe Corp. v. Globalsantafe.com*, 250 F. Supp. 2d 610, 618-19 (E.D. Va. 2003) ("Verisign, as the registry for all domain names ending in ".com," is responsible for directing domain name queries regarding [a] second level domain name to the appropriate SLD name server.  This SLD name server, in turn, matches the domain name … with its specific numeric IP address.  In other words, the ".com" TLD zone file maintained by Verisign contains a list of all second level domains within the ".com" TLD linked to the IP address of the SLD name servers for those second level domains…").

As numerous cases have recognized,[3] domain name *registrars*, not registries, are responsible for registering domain names for registrants and maintaining domain name registration records.  *See Cable News Network, LP v. CNNews.com*, 56 Fed. Appx. 599, *1 (4th Cir. 2003) ("When a company wants the rights to a new domain name, it contacts a registrar.  The registrar submits the domain name to a registry, which enters the assigned domain name into a database."); *Globalsantafe Corp.*, 250 F. Supp.2d at 619 ("Registering, transferring, or deleting a domain name typically involves interaction between the *registrar* and registry.").

As the registry, Verisign *cannot transfer a domain name registration between registrants*.  Only a domain name *registrar* can transfer a domain name.  Verisign maintains a database that includes (i) the domain name; (ii) the IP addresses of the primary and secondary name server for that domain name; (iii) the name of the registrar; and (iv) the expiration date for the registration.

---

[3] At the motion to dismiss stage, a court may consider facts and documents subject to judicial notice where, like here, the facts are not subject to reasonable dispute.  *Zak v. Chelsea Therapeutics Intern., Ltd.*, 780 F.3d 597, 607 (4th Cir. 2015).  Moreover, in determining the sufficiency of the pleadings, "a court must conduct a 'context-specific' analysis drawing on its 'judicial experience and common sense' and determine whether the factual allegations 'plausibly suggest an entitlement to relief.'"  *S.W. Wholesale Corp. v. Cox Commc'ns Hampton Roads, LLC*, Civil Action No. 2:12-cv-701, 2013 WL 2147478, *3 (E.D. Va., May 14, 2013) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679-80 (2009)).

Noticeably absent from that database, among other information, is the identity of the registrant. Domain name *registrars*, in turn, maintain records that include the name, address, and other contact information for a domain name registrant.[4]  Verisign can only change the identity of the *domain name registrar*; independent action by that registrar is required to change the identity of the domain name *registrant*.  *Globalsantafe Corp.*, 250 F. Supp.2d at 619.

It is simply not plausible, based on the indisputable facts in numerous court opinions that Verisign somehow "transferred" the Radaris Domain Name as alleged by Plaintiffs.  Thus, this Court should dismiss their Complaint.  *See Iqbal*, 556 U.S. at 679-80.

**B.      Plaintiffs Lacked the Right to Possess the Radaris Domain Name.**

The plain effect of the *Huebner* Order dispossessed Plaintiffs of the Radaris Domain Name.  As a result, Plaintiffs lacked a right to possess the Radaris Domain Name when they allege Verisign transferred it away and thus cannot state claims for conversion or trespass. Nothing in the Opposition overcomes this fatal defect.

Notwithstanding the clear language of the *Huebner* Order, Plaintiffs contend that they had a right to possess the Radaris Domain Name at the time of Verisign's alleged conduct because "the *Huebner* court granted Accuracy's motion for relief from the default judgment." (Opposition at 10).  This illogical argument fails for three reasons.

---

[4] The difference in information regarding a domain name registration available to a registrar versus a registry is evident in the different WhoIs records maintained by each of them.  Plaintiffs have submitted with their Opposition *registrar* domain name registration records for the Radaris Domain Name which include, among other things, the name of the registrant, Accuracy. (Shayefar Decl. Ex. 3, ECF Docket Entry 24-1).  By contrast, the WhoIs records maintained by Verisign, including the WhoIs record for the Radaris Domain Name, do not identify the purported owner of that domain name.  (*See* Hyland Decl., ¶ 4 & Ex. 3.).  To the extent the Court takes judicial notice of Plaintiffs' submission of *registrar* WhoIs records, Verisign requests that the Court likewise take judicial notice of the *registry* WhoIs record for the Radaris Domain Name.  Plaintiffs' conflation of the different versions of WhoIs records highlights their fundamental misunderstanding of the Domain Name System and Verisign's role within it.

*First*, Plaintiffs have admitted that the *Huebner* Order dispossessed them of the right to possess the Radaris Domain Name.  Plaintiffs have pleaded the *Huebner* Action into their Complaint, thereby incorporating that action's pleadings into the Complaint.  The *Huebner* Order states that the defendants in that action and any "third parties providing services used in connection with Defendants' operations who receive actual notice of this Order, including but not limited to domain name registrars, ***domain name registries***…are ***immediately ordered to cease*** hosting, using, linking to, transferring, selling, ***facilitating access to, exercising control over, or otherwise owning the domain name radaris.com***…".  (Complaint, Ex. 1 (§ II.5.a.) (Emphasis added).)  Plaintiffs do not dispute this clear language.  Indeed, in the *Huebner* Action, Plaintiffs *admitted* that the *Huebner* Order dispossessed them of the Radaris Domain Name.

In their Emergency Motion for Relief From Default Judgment in the *Huebner* Action, Plaintiffs stated that the ***Northern District Court "ordered transferred" the domain name "radaris.com and website at the same address.***" (Hyland Decl., ¶ 3, Ex. 2.)  This is the *opposite* of Plaintiffs' current argument, which is that they maintained possessory rights to the Radaris Domain Name despite the *Huebner Order*.  Plaintiffs cannot take a different position now to obtain an advantage in this case.[5]

*Second*, Plaintiffs' own actions undermine their asserted possessory rights to the Radaris Domain Name.  By seeking relief from the Northern District Court, Plaintiffs conceded that the *Huebner* Order took away their right to possess the Radaris Domain Name.  Otherwise, Plaintiffs

---

[5] Plaintiffs are judicially estopped from arguing that the *Huebner* Order did not dispossess them of the Radaris Domain Name because that argument is "inconsistent with a stance taken in prior litigation," the "prior inconsistent position" was accepted by the Northern District Court because it relieved Plaintiffs from the *Huebner* Order, and because the judicially noticeable WhoIs records that Plaintiffs incorporate into their Complaint lead to the inevitable conclusion that Plaintiffs "intentionally misled [the Northern District Court] to gain an unfair advantage." *Zinkand v. Brown*, 478 F.3d 634, 638 (4th Cir. 2005).

would not have needed to seek relief from the default judgment and injunction.[6]

   *Third*, Plaintiffs fail to rebut the authority cited in Verisign's motion to dismiss -- *Moffitt* and *Muho* – that make it clear that a prior court order revokes the right of possession.  *United States v. Moffitt, Zwerling & Kemler, P.C.*, 83 F.3d 660, 663-64 (4th Cir. 1996); *Muho v. Citibank N.A.*, No. 14-cv-3219, 2015 WL 106677, at *1-2 (N.D. Cal. Jan. 7, 2015).  *Muho* is precisely on point.  There, a court entered a default judgment that ordered the freezing of a bank account and as a result a "bank was obligated to comply with those [court] orders [and] Muho did not have a right to possess the funds in his Citibank account."  *Id.*  Plaintiffs cannot avoid this sensible legal consequence.  When the *Huebner* Order instructed that "domain name registries" such as Verisign "immediately . . . cease . . .  facilitating access to, exercising control over, or otherwise owning the domain name radaris.com," Plaintiffs lost their right to possess the Radaris Domain Name, and cannot maintain claims for conversion or trespass to chattels.

   **C.     Verisign's Alleged Conduct Was Absolutely Privileged.**

   Verisign's alleged transfer of the Radaris Domain Name was done pursuant to a valid and final court order issued by the Northern District Court.  As a result, Verisign's alleged actions are not actionable because "[o]ne is privileged to commit acts which would otherwise be a trespass to a chattel or a conversion when he acts pursuant to a court order which is valid and fair on its face."  Restatement (2d) of Torts § 266 (1965).  Plaintiffs seek to avoid this black-letter law by mischaracterizing the *Huebner* Order, suggesting that it was not binding on Verisign, was

---

[6] To the extent this Court takes judicial notice of the WhoIs records submitted by Plaintiffs, then this Court should take judicial notice of the entire registration history of the Radaris Domain Name.  The entire WhoIs history shows that Accuracy is the successor-in-interest of the *Huebner* Defendants. The WhoIs records show that Radaris, LLC (a *Huebner* Defendant) was the registrant of the Radaris Domain Name during the time period of alleged misconduct in the *Huebner* Action.  The WhoIs records show that the Radaris Domain Name passed from Radaris, LLC to two other entities before Accuracy appeared as registrant.  These entities all share a combination of identical physical addresses or phone numbers.  (*See* Hyland Decl., Ex. 1).

invalid, and that § 266 does not apply to Verisign.  Each of these arguments fail.

Plaintiffs first contend that Verisign's alleged transfer of the Radaris Domain Name was not privileged because Verisign should have sought "clarification or correction" from the Northern District Court.  (Opposition at 13).  Not only does this argument invite this Court to create a rule that people must seek pre-compliance review of orders emanating from a federal district court, it also ignores well-settled principles of law.  There is a "basic proposition that all orders and judgments of courts must be complied with promptly" and "persons who make private determinations of the law and refuse to obey an order generally risk criminal contempt even if the order is ultimately ruled incorrect."  *Maness v. Meyers*, 419 U.S. 449, 458 (1975).  Plaintiffs suggest that Verisign should have ignored this well-settled principle to place itself in jeopardy and instead conduct an investigation to determine whether it should comply with the *Huebner* Order.  This irrational argument assumes that federal district court orders are mere suggestions for entities to consider, but not necessarily follow.  That is not the rule.  The *Huebner* Order expressly ordered "domain name registries" such as Verisign to "immediately . . . cease . . . facilitating access to" the Radaris Domain Name.  (Complaint, Ex. 1 (§ II.5.a.).  This unequivocal language leaves no doubt that Verisign had a legal obligation to comply.[7]

Plaintiffs also are wrong that § 266 does not apply to Verisign because Plaintiffs were not parties to the *Huebner* Action and, thus, "Verisign converted Plaintiffs' property at its own peril".  (Opposition at 14).  Plaintiffs mischaracterize the *Huebner* Order's scope, asserting that it only "authorized third-parties to seize the goods of [the *Huebner*] Defendants" rather than goods

---

[7] It is of no moment that neither Verisign nor Plaintiffs were parties to the *Huebner* Action. Under a federal court's equitable powers, it may issue "injunctions binding on all persons, regardless of notice." *Fed. Trade Com'n v. Productive Mktg, Inc.*, 136 F. Supp. 1096, 1105 (C.D. Cal. 2001); *Columbus-Am. Discovery Grp. v. Atlantic Mut. Ins. Co.*, 203 F.3d 291, 302 n. 5 (4th Cir. 2000) (recognizing that a federal court can hold third parties in contempt for not complying with an injunction).

belonging to Plaintiffs.  (*Id.*).  The *Huebner* Order is not so limited.  Rather, the Northern District Court directs its injunction at the Radaris Domain name *itself* and at "domain name registries" such as Verisign to "immediately . . . cease . . . facilitating access to . . . the domain name radaris.com."  (Complaint, Ex. 1 (§ II.5.a.).  This unambiguous language directed Verisign to act with respect to "the domain name radaris.com" irrespective of who Plaintiffs contend was the registrant of that domain name.

Nor is the § 266 privilege limited to "a sheriff, constable, or other officer who intermeddles with chattels."  (Opposition at 14).  Comment *d* of § 266 makes the privilege "applicable to the seizure of goods by a sheriff or other officer," but the Comment does not limit § 266 to such a scenario.  Indeed, courts routinely apply the § 266 privilege to private parties.  At least one federal court relied on § 266 to conclude that a *private* party was privileged to execute a distribution of funds "in accordance with governing directives of the regulatory agency."  *Dexter v. Depository Trust & Clearing Corp.*, 406 F. Supp. 2d 260, 264-65 (S.D.N.Y. 2005); *see also Mid-Am. Fire & Marine Ins. v. Middleton*, 468 N.E.2d 1335, 1338 (Ill. App. 1984).

Similarly, Plaintiffs contend that Verisign cannot enjoy the § 266 privilege because it did not "exercise reasonable care to give timely notice to the other whose goods he holds." (Opposition at 15).  This argument also fails.  There is no allegation that Verisign failed to give notice with respect to the alleged domain name transfer.  Instead, Plaintiffs base their argument on facts entirely absent from the pleading.  In addition, the Comments to § 266 indicate that a failure of notice results in potential liability for *negligence*, but Plaintiffs have not asserted any claim for negligence.  Consequently, there is no legitimate basis for Plaintiffs to avoid dismissal of their lawsuit by suggesting Verisign did not provide notice.  In any event, Plaintiffs had at least constructive notice of the alleged transfer because the published and publicly available

*Huebner* Order stated that the Radaris Domain Name was being transferred to those plaintiffs.

Finally, Plaintiffs are wrong that the *Huebner* Order was neither "valid nor fair on its face" because they were not parties to that case and the Radaris Domain Name "was not within the territorial jurisdiction" of the Northern District Court.  (Opposition at 14-15).  Plaintiffs offer no authority or even logic as to why those two facts would render the *Huebner* Order invalid on its face.  Rather, Plaintiffs seem to suggest that, because they disagree with and eventually received relief from the *Huebner* Order, then it was somehow retrospectively invalid at the time Verisign complied with it.[8]  That is not the law.  As the Supreme Court has explained, "until [a court's] decision is reversed for error by orderly review, either by itself or by a higher court, its orders based on its decision are to be respected."  *Howat v. Kansas*, 258 U.S. 181, 190 (1922); *Dolman v. United States*, 439 U.S. 1395, 1397 (1978) ("An injunction . . . must be obeyed . . . however erroneous the action of the court may be.").  Thus it is irrelevant that Plaintiffs eventually received discrete relief from the Northern District Court.  At the time Plaintiffs allege Verisign acted, the *Huebner* Order was valid and enforceable.

### D.      Virginia Substantive Law Governs this Dispute.

Bitseller and Accuracy attempt to avoid application of the laws of Virginia – where they brought this action – by muddling Virginia's choice of law principles and by asking the Court to disregard that Verisign's .com registry operations are located in Virginia.  They suggest that "Latvian, Cypriot, Virginian, or Californian substantive law" may apply (ECF No. 24, at 8); yet they do not, and cannot, describe what Verisign did in Latvia, Cyprus, or California.[9]

---

[8] Plaintiffs also mischaracterize the *Huebner* Order, stating that the Northern District Court held that it lacked "proper jurisdiction over the Radaris Domain Name."  (Opposition at 15.). That is demonstrably false.  The Northern District Court made no such ruling.  (*See* Complaint Ex. 1)

[9]  Indeed, when Bitseller originally filed this action against Verisign in the United States District Court for the Central District of California, that Court, *sua sponte*, dismissed the action for lack of personal jurisdiction and improper venue, because, it found, Verisign is located in Virginia and

"Virginia applies the lex *loci delicti*, the law of the place of the wrong, to tort actions."
*Milton v. IIT Research Inst.*, 138 F.3d 519, 521 (4th Cir. 1998); *see also*, *Jones v. R.S. Jones &
Assoc.*, 246 Va. 3, 431 S.E.2d 33 (1993) (affirming that Virginia's choice-of-law rule in tort
actions remains the law of the place of the wrong).

To this end, "Virginia clearly selects the law of the place where the wrongful act occurred
even when that place differs from the place where the effects of the injury are felt." *Milton*, 138
F.3d at 522.  Plaintiffs correctly agree that "the place of the wrong has been defined as the state
where 'the last event necessary to make an actor liable for an alleged tort takes place.'" *Quillen
v. Intern. Playtex, Inc.*, 789 F.2d 1041, 1044 (4th Cir. 1986) (quoting *Miller v. Holiday Inns, Inc.*,
436 F. Supp. 460, 462 (E.D. Va. 1977)).  However, "[t]he location where 'the last event
necessary to make an act liable for an alleged tort takes place' will vary amongst different
claims, depending on what elements comprise the particular claim and which element is deemed
to provide the 'last event necessary' to make the actor liable for the particular tort at issue."
*Ford Motor Co. v. Nat'l Indem. Co.*, 972 F. Supp. 2d 850, 857 (E.D. Va. 2013).

Both *Quillen* and *Miller*, cited by plaintiff for the proposition that the wrongful act herein
occurred in California, are personal injury cases.  The *Quillen* court, applying *lex loci delicti*,
determined that the claim allegedly accrued when the plaintiff first became ill from defendant's
product.  *Quillen*, 789 F.2d at 1044.  The plaintiff purchased the product in Tennessee but the
wrongful act – the release of toxins into her body – occurred when she used the product in
Virginia.  *Id*.  Thus, the court held that the wrongful act had occurred in Virginia. *Id*.

Likewise, in *Miller*, the court emphasized that the plaintiff's cause of action for loss of

---

did nothing in California.  *See Bitseller Expert Ltd. v. Verisign, Inc.*, C.D. Cal., Case No. 2:19-cv-
2036-PA-GJS, at ECF No. 16 (Apr. 10, 2019); Hyland Decl. ¶ 5, Ex. 4.

consortium resulted immediately upon the wrongful act – the offense to his wife – which occurred in Virginia.  *Miller*, 436 F. Supp. at 462.  In reaching its decision, the court rejected the argument that the wrong occurred in the place of the situs of the marital relationship even though that is where the effects of the injury were felt.  *Id*.

In *Trs. of Columbia Univ. in City of N.Y. v. Symantec Corp*., 2014 WL 1329417 (E.D. Va. Apr. 2, 2014), relied upon by Plaintiffs, the Court was unable to determine which state's law applied on a motion to dismiss, because "it was not apparent where the conversion had occurred."  *Id*. at *13.  Symantec argued that New York law applied because New York was "the place of the injury."  However, the court found that "this assertion is inconsistent with Virginia law," which instead selects the place where the wrongful act occurred.  *Id*.  The court could not determine from either party's assertions where the wrongful act had occurred.  The instant case is distinguishable from *Symantec* because the location of the purported wrongful acts – the purported conversion of the Radaris Domain Name and the trespass to the Radaris Website – must have been committed, if at all, at Verisign's place of business in Reston, Virginia.

Under Virginia law, conversion is the "wrongful exercise of dominion or control over the plaintiff's property, depriving the plaintiff of possession."  *Fed. Ins. Co. v. Smith*, 144 F. Supp. 2d 507, 517-18 (E.D. Va. 2001).  Similarly, "[a] trespass to chattels occurs when one party intentionally uses or intermeddles with personal property in the rightful possession of another without authorization." *Am. Online, Inc. v. IMS*, 24 F. Supp. 2d 548, 550 (E.D. Va. 1998).

Here, the purported wrongful acts – the wrongful exercise of control or intermeddling – involved data being entered into a database that is located at Verisign in Virginia resulting in a change of registration information for the Radaris Domain Name.  (Complaint, Ex. A (§ II ¶ 5(a))).  That act of entering data into a database and thereby altering the registrar of record was

12

fully and exclusively performed in Virginia.  It is well known to this Court and to the entirety of the internet-based world that Verisign is the registry for the .com TLD, and that Verisign operates in in Virginia.  *See, e.g.*, *Cai v. Zhang*, 2017 WL 6892897, at *1 (E.D. Va. Oct. 4, 2017) ("The registry for the Domain Name Defendants is VeriSign, Inc., which operates in Reston, Virginia"); *Consumer Source Holding, Inc. v. Does 1-24*, 2014 WL 2967942, at *4 (E.D. Va. July 1, 2014) ("Verisign …, located in Reston, Virginia, … and is the registry for the Defendant Domain Names"); 5 McCarthy on Trademarks & Unfair Competition § 25A:73 n.2 (5th ed. 2019) ("The registry for the ".com" gTLD is VeriSign, Inc., physically located in Reston, Virginia, in the Eastern District of Virginia").  Verisign acted nowhere else, and Plaintiffs cannot possibly contend otherwise.

In an attempt to confuse matters, Plaintiffs argue that they suffered harm outside of Virginia.  This has no bearing on the choice-of-law analysis.  *See, e.g.*, *Jeffrey J. Nelson & Assocs., Inc. v. LePore*, 2012 WL 2673242, at *7 (E.D. Va. July 5, 2012) (finding "there is not enough to compel the conclusion that New York law should apply because that's where the effects of the allegedly wrongful acts would be felt").  Further, the *Huebner* Plaintiffs' purported use of the Radaris Domain Name in California, after the registrar altered the registrant of record, in no way impacts the determination under *lex loci delicti* that the alleged wrongful acts by Verisign occurred in Virginia.  Therefore, Virginia's substantive law plainly governs this case.

### E.   Plaintiffs Fail to State Claims for Conversion – Neither a Domain Name Nor a Website Is Subject to a Claim for Conversion.

#### 1.   A Domain Name Cannot be the Subject of a Conversion Action.

Plaintiffs contend that it is "clear and undeniable" that California law holds that a domain name may be the subject of a conversion claim. ECF No. 24, at 18.  Plaintiffs are wrong.  While the Ninth Circuit did predict that California law would hold that domain names can be converted,

*see Kremen v. Cohen*, 337 F.3d 1024 (9th Cir. 2003), that prediction was incorrect.  A subsequent appellate decision in California state court held otherwise.

In *In re Forchion*, 130 Cal. Rptr. 3d 690, 198 Cal. App. 4th 1284 (Cal. App. 2011), the Court examined at length the issue of whether a domain name is property.  The Court concluded, as did the Court in *Umbro*, that "a domain name, technically and simply, is a reference point in a computer database.  It is created by the registration process before which it does not exist, and it has no utility or function separate and apart from the contractual Internet services provided by registrars because a domain name does not exist until it is registered, and because it ceases to exist." *Id*. at 709, 198 Cal. App. 4th at 1308-09 (internal ellipsis, quotations, and brackets omitted); *see Network Solutions, Inc. v. Umbro Int'l, Inc.*, 259 Va. 759, 529 S.E.2d 80 (2000).  Hence the Court concluded that it is "apparent that a domain name is not property, but rather the product of a contract for services between the registrar and the registrant." *Id*. at 709, 198 Cal. App. 4th at 1308-09.  Therefore, California law holds, as does Virginia law, that a domain name is merely a product of a registrar's services and therefore is not "property."  And if it is not property, it cannot be converted.

Turning back to Virginia law, Plaintiffs contend that Verisign has cited "no case on point to state that conversion claims cannot apply to domain names."  ECF No. 24, at 20.  In so arguing, Accuracy ignores two cases cited by Verisign: *RitLabs S.R.L. v. RitLabs, Inc.*, 2012 WL 3263893, at *8 (E.D. Va. Aug. 9, 2012), *vacated in part on other grounds*, 2012 WL 6021328 (E.D. Va. Nov. 30, 2012), and *NextEngine Ventures, LLC v. Network Solutions, LLC*, 2017 WL 4569679, at *5 (N.Y. Supr. Ct., Oct. 13, 2017) (holding that under both Virginia and New York law, "a domain name cannot be the subject of a conversion claim since a domain name is not considered personal property").

Instead, Plaintiffs rely on *E.I. duPont de Nemours & Co. v. Kolon Indus., Inc.*, 2011 WL 4625760 (E.D. Va. Oct. 3, 2011) and *S.W. Wholesale Corp. v. Cox Commc'ns Hampton Roads, LLC*, 2013 WL 2147478 (E.D. Va. May 13, 2013) for the proposition that intangible property can be the subject of a conversion action.[10]  But neither of these cases involves a domain name. *Kolon* involved the conversion of "copied confidential information" and held that such a copy can be the subject of a conversion action.  *Id.* at *5.  In *S.W. Wholesale*, the Court declined to decide whether a telephone number can be converted.  *Id.* at *6.  It is an unremarkable proposition that intangible personal property can be the subject of conversion.  But this is so only "where intangible property rights arise from or are merged with a document, such as a valid stock certificate, promissory note, or bond."  *United Leasing Corp. v. Thrift Ins. Corp.*, 247 Va. 299, 305, 440 S.E.2d 902, 906 (1994). "Merger" occurs "when a document embodies 'an intangible obligation' or 'is regarded as equivalent to the obligation' and the physical document can therefore 'be the subject of conversion as the embodiment of and as representing ... the obligation.'"  *Integrated Direct Mktg., LLC v. May*, 143 F. Supp. 3d 418, 426 (E.D. Va. 2015) (quoting Restatement (2d) of Torts § 242 cmt. a (1965)).  Courts consistently have held that a domain name is not merged in a document. *See Xereas v. Heiss*, 933 F. Supp. 2d 1, 7 (D.D.C. 2013) (holding that domain names are intangible property not merged in a document); *Famology.com, Inc. v. Perot Sys. Corp.*, 158 F. Supp. 2d 589, 591 (E.D. Pa. 2001) ("domain names are not the kind of intangible rights which are customarily merged in, or identified with

---

[10]  Plaintiffs also incorrectly state that in *Umbro*, Network Solutions "took the position that the [domain] name was 'personal property.'"  ECF No. 20.  This is a gross mischaracterization of *Umbro*.  In that case, Network Solutions merely conceded the obvious: "the *right to use* a domain name is a form of intangible personal property."  259 Va. at 769, 529 S.E.2d at 86 (emphasis added).  This means a domain name is akin, in this regard, to a trademark.  Trademarks, in turn, cannot be the subject of conversion claims. *See East W., LLC v. Rahman*, 873 F. Supp. 2d 721, 732 (E.D. Va. 2012) (holding that a trademark cannot be converted).

some document").  *See also AdVnt BioTechs., LLC v. Bohannon*, 2007 WL 1875670, at *3 (D.

Ariz. June 28, 2007) (distinguishing *Kremen* by noting that unlike California, in states following

the Restatement "strict merger" requirement, there can be no conversion of unmerged

intangibles).  Virginia follows the Restatement view strictly requiring merger.  See *United

Leasing*, 247 Va. at 306, 440 S.E.2d at 906.[11]

Plaintiffs make a final attempt to salvage their claim by asserting that a domain name

"does in fact merge with the Domain Name System."  ECF at 22.  It is difficult to imagine what

this means.  The DNS is an addressing system that facilitates Internet-based communication.  It

consists of hundreds of millions of domain names, registrants, and computers.  *See Am. Online,*

*Inc. v. Huang*, 106 F. Supp. 2d 848, 852 (E.D. Va. 2000).  Neither the domain name system nor a

WHOIS record is "a document [that] embodies an intangible obligation or is regarded as

equivalent to the obligation," like a promissory note or a stock certificate. Plaintiffs' unsupported

suggestion otherwise should be disregarded.

### 2.   A Website Cannot be the Subject of a Conversion Action.

Plaintiffs next argue, again without any developed legal theory, that their website could

be the subject of a conversion action.  They make no attempt to distinguish the authorities cited

by Verisign to the effect that in states, like Virginia, which have a merger requirement for

---

[11]  Yet another flaw in Plaintiffs' position is their failure to recognize that a domain name exists
solely by reason of a registration contract between a registrant and registrar.  *See Dorer v. Arel*,
60 F. Supp. 2d 558, 561 (E.D. Va. 1999) ("a domain name registration is the product of a
contract for services between the registrar and registrant"); *Umbro*, 259 Va. 759, 770, 529 S.E.2d
80, 86 (2000) (same).  As the *Umbro* court recognized, this is a contract for personal services. *Id*.
Personal services contracts, in turn, are not assignable.  *See Reynolds & Reynolds Co. v. Hardee*,
932 F. Supp. 149, 153 (E.D. Va. 1996); *McGuire v. Brown, Guardian*, 114 Va. 235, 242, 76
S.E.2d 295, 297 (1912).  Because the concept of "property" requires that the owner have "the
unrestricted and exclusive right to a thing, the right to dispose of it in every legal way, to possess
it, use it, and to exclude everyone else from interfering with it," 63C Am. Jur. 2d Property § 1
(2019), the lack of free alienability of a domain name registration agreement dictates than a
domain name is not property, let alone tangible property.  It is nothing more than the product of
an executory contract right.

conversion of intangibles, a website cannot be converted.  See *Simmonds Equip., LLC v. GGR Int'l, Inc.*, 126 F. Supp. 3d 855, 869 (S.D. Tex. 2015); *Exeter Twp. v. Gardecki*, 2018 WL 6616930, at *4 (E.D. Pa. Dec. 17, 2018) (dismissing claim for conversion of electronic data from servers, because data is intangible); *4C, Inc. v. Pouls*, 2014 WL 1047032, at *9 n.18 (D. Del. Mar. 5, 2014) (suggesting but not deciding that a website cannot be the subject of a conversion claim because it is intangible); *Bancorp Bank v. Isaacs*, 2010 WL 1141336, at *8 (E.D. Pa. Mar. 25, 2010) (dismissing claim for conversion of website).  Instead, they puzzlingly argue that "the DNS records that Verisign claims it maintains itself merges the website with a document."  ECF No. 24, at 23.  But the DNS is an addressing system that has nothing to do with websites or the content thereof.  See *Petroliam Nasional Berhad v. GoDaddy.com, Inc.*, 897 F. Supp. 2d 856, 859 (N.D. Cal. 2012) ("The DNS does not provide any website content, but instead functions as the Internet's equivalent of 'directory assistance'").  Put another way, the DNS provides an internet user with one way (of several ways) to locate a website; but it has no effect or connection whatsoever with the website itself or its content.  Indeed, numerous domain names can "point" to a single website, with each domain name providing a separate path to the website's content.  And as Plaintiffs themselves concede, a domain name merely "points to" a website.  ECF No. 24, at 23.  It begs credulity to suggest that this pointer is somehow a document that embodies the website or is the equivalent of the website. Plaintiffs' conversion action with respect to the website must therefore also be dismissed.

### F.     Plaintiffs Fail to State Claims for Trespass to Chattels.

Next, Plaintiffs make another unsupported assertion that they have stated claims for trespass to chattels.  All they muster in this regard are vague suggestions that (1) California law might provide them with a cause of action, and (2) their conclusory allegation that they have suffered "serious and irreparable damage" is sufficient.  Again, they are wrong.

Plaintiffs ignore the law which renders their trespass to chattels claim frivolous. *First*, it is beyond question that intangibles like domain names and websites are not "chattels" to which a trespass to chattels claim may be applied. *See Dish Network LLC v. Fraifer*, 2017 WL 10085027, at *2 (M.D. Fla. Oct. 17, 2017) (because a domain name is intangible, it cannot be the subject of a trespass to chattels claim); *Universal Tube & Rollform Equip. Corp. v. YouTube, Inc.*, 504 F. Supp. 2d 260, 268 (N.D. Ohio 2007) (same, under Ohio law); *Fidlar Techs. v. LPS Real Estate Data Sols., Inc.*, 2013 WL 5973938, at *10 (C.D. Ill. Nov. 8, 2013) (dismissing trespass to chattels claim because data "was not tangible property and therefore not chattel"); *Exeter Twp.*, 2018 WL 6616930, at *4 (same); *DHI Grp., Inc. v. Kent*, 2017 WL 1088352, at *11 (S.D. Tex. Mar. 3, 2017) (dismissing claim for trespass to chattels where the "chattel" was intangible). Plaintiffs do not even attempt to distinguish these authorities, because they are indistinguishable and dispositive of the issue at hand.

Further, the analysis in *Universal Tube & Rollform* is instructive. Universal registered the domain name <utube.com> in 1996. YouTube registered <youtube.com> in 2005. Thereafter, traffic to Universal's website increased dramatically, causing Universal's servers to crash on multiple occasions. Universal claimed that it was damaged in the form of lost business by the server crashes, and by an increase in hosting fees occasioned by the increased traffic to its website. To this end, Universal sought relief under a theory of trespass to chattels.

The Court dismissed the trespass to chattels claim on several bases. *First*, the Court held that because a trespass to chattels must involve "physical contact," a domain name or website cannot be the subject of such a claim. 504 F. Supp. 2d at 268 (citing Restatement (2d) of Torts § 217 cmt. e). *Second*, the Court found that absent physical contact with the computers hosting the website itself, there can be no trespass to chattels. *Id.* at 269.

18

Here, Plaintiffs do not contend, nor can they, that Verisign made physical contact with the Radaris Domain Name or the Radaris Website.  They allege only that Verisign "transferred" the Radaris Domain Name which, as discussed *supra*, would only involve changes to Verisign's own computer database.  Verisign never made any contact, physical or otherwise, with the computers hosting the Radaris Website.  Accordingly, there can be no viable claim for trespass.

### G. Plaintiffs Fail to Establish Subject Matter Jurisdiction.

Plaintiffs concede that they insufficiently pleaded facts necessary to establish subject matter jurisdiction.  (Opp. at 5).  Because the Complaint does not state sufficient facts to show this Court's diversity jurisdiction, this Court must dismiss the case.

*First*, Plaintiffs have failed to properly plead their citizenship by omitting their principal places of business and citizenship of their owners from their Complaint.  Recognizing this deficiency, Plaintiffs submit declarations with their Opposition declaring that they both have a principal place of business in Riga, Latvia, and no United States owners.[12]  (Kaydash Decl. ¶ 2, ECF Docket Entry No. 24-3; Senik Decl. ¶ 2, ECF Docket Entry No. 24-2).  These declarations do not amend the Complaint and are not incorporated into the Complaint.  *See* Fed. R. Civ. P. 10(c) (allowing for incorporation by reference into a pleading of any "written instrument that is an exhibit to a pleading.").  Plaintiffs' Opposition is not a pleading and therefore its exhibits are not incorporated into the operative Complaint.  *Id.*  The proper course of action for Plaintiffs is to amend the Complaint instead of submitting declarations outside of the pleadings.

*Second*, the Complaint is jurisdictionally defective because Plaintiffs have failed to identify the citizenships of the John Doe defendants.  As explained in Verisign's Motion, if "John Doe"

---

[12] Plaintiffs' declarations that they have "no owners in the United States" do not speak to the citizenship of Plaintiffs' members.  Instead, the statements merely establish that Plaintiffs do not have owners geographically located within the United States while leaving open the real possibility that such owners might share the citizenship of Verisign or a Doe Defendant.

pleading is allowed in a diversity action, a plaintiff "must at least show that the John Doe defendants are citizens of states other than the Plaintiffs' states of citizenship." *Ancient Egyptian Arabic Order Nobles Mystic Shrine of N. & S. Am. & Its Jurisdiction, Inc. v. Most Worshipful Prince Hall Grand Lodge of Va.*, No. 3:09-cv-521, 2009 WL 4068454, at *2 (E.D. Va. Nov. 19, 2009).   To avoid the defect in its Complaint, Plaintiffs argue that "Plaintiffs are citizens and subjects of foreign states and Verisign and the Doe Defendants are citizens of domestic states." (Opp. at 6).  The Complaint, however, does not allege that the Doe Defendants are citizens of any domestic state.  Indeed, Plaintiffs allege that they are "ignorant of the true names and capacities of" these Doe Defendants.  (Complaint, ¶ 4).  If the Doe Defendants are foreign citizens, there would be foreign parties on both sides of this controversy, destroying diversity.  *Gen. Tech. Applications, Inc. v. Exro Ltda*, 388 F.3d 114, 120 (4th Cir. 2004) ("alien citizenship on both sides of the controversy destroys diversity."); *Baiqiao Tang v. Wengui Guo*, No. 17 Civ. 9031, 2019 WL 1207859, at *5 n.2 (S.D.N.Y. Mar. 14, 2019) ("[T]here is no jurisdiction over suits between a nonresident alien on one side and resident aliens and United States citizens on the other.").

Accordingly, this Court should dismiss this action for lack of subject matter jurisdiction. Fed. R. Civ. P. 8(a)(1).

## IV.   <u>CONCLUSION</u>

For these reasons, Verisign respectfully requests that this Court dismiss Plaintiffs' Complaint with prejudice.

Respectfully submitted,


  /s/  Timothy B. Hyland
Timothy B. Hyland
Virginia Bar No. 31163
Counsel for VeriSign, Inc.
HYLAND LAW PLLC
1818 Library Street, Suite 500
Reston, VA  20190
Tel.:   (703) 956-3566
Fax:    (703) 935-0349
Email:  thyland@hylandpllc.com


  /s/  Tyler Southwick
Tyler Southwick
Virginia Bar No. 91087
Counsel for VeriSign, Inc.
HYLAND LAW PLLC
1818 Library Street, Suite 500
Reston, VA  20190
Tel.:   (703) 956-3566
Fax:    (703) 935-0349
Email:  tsouthwick@hylandpllc.com


  /s/  Ronald L. Johnston
Ronald L. Johnston
*Pro Hac Vice*
Counsel for VeriSign, Inc.
ARNOLD & PORTER KAYE SCHOLER, LLP
777 S. Figueroa Avenue, 44th Floor
Los Angeles, CA  90017
Tel.:   (213) 243-4000
Fax:    (213) 243-4199
Email:  ronald.johnston@arnoldporter.com

21

   /s/  James S. Blackburn
James S. Blackburn
*Pro Hac Vice*
Counsel for VeriSign, Inc.
ARNOLD & PORTER KAYE SCHOLER, LLP
777 S. Figueroa Avenue, 44th Floor
Los Angeles, CA  90017
Tel.:    (213) 243-4000
Fax:    (213) 243-4199
Email:  james.blackburn@arnoldporter.com


   /s/  E. Christopher Beeler
E. Christopher Beeler
*Pro Hac Vice*
Counsel for VeriSign, Inc.
ARNOLD & PORTER KAYE SCHOLER, LLP
777 S. Figueroa Avenue, 44th Floor
Los Angeles, CA  90017
Tel.:    (213) 243-4000
Fax:    (213) 243-4199
Email:  chris.beeler@arnoldporter.com

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on the 12th day of November, 2019, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

> Jeffrey H. Geiger, Esquire
> SANDS ANDERSON PC
> 1111 E. Main Street, Suite 2400
> Bank of America Plaza
> P.O. Box 1998
> Richmond, VA 23218
> jgeiger@sandsanderson.com

and that a copy of the foregoing and the NEF was sent by email and first class mail, postage prepaid on the same date to the following non-ECF users:

> Valentin D. Gurvits, Esquire
> Matthew Shayefar, Esquire
> BOSTON LAW GROUP, PC
> 825 Beacon Street, Suite 20
> Newton Centre, MA 02459
> vgurvits@bostonlawgroup.com
> matt@bostonlawgroup.com

>   /s/  Timothy B. Hyland
> Timothy B. Hyland
> Virginia Bar No. 31163
> Counsel for VeriSign, Inc.
> HYLAND LAW PLLC
> 1818 Library Street, Suite 500
> Reston, VA  20190
> Tel.:    (703) 956-3566
> Fax:    (703) 935-0349
> Email:  thyland@hylandpllc.com

23