# In the Matter of:

## Bitseller Expert Limited, et al.
## v.
## Verisign, Inc, et al.

# Hearing

December 6, 2019



Phone: 703-837-0076
Fax: 703-837-8118
Toll Free: 877-837-0077

1010 Cameron Street
Alexandria, VA 22310
transcript@casamo.com

Bitseller Expert Limited, et al. vs. Verisign, Inc., et al.

```
 1              IN THE UNITED STATES DISTRICT COURT

 2             FOR THE EASTERN DISTRICT OF VIRGINIA

 3                     Alexandria Division

 4

 5   --------------------------------:

 6   BITSELLER EXPERT LIMITED, and   :

 7   ACCURACY CONSULTING, Ltd.,      :

 8                Plaintiffs,        :

 9   vs.                            :Case No.

10   VERISIGN, INC., et al.,        :1:19-cv-01140-AJT-JFA

11                Defendants.        :

12   --------------------------------:

13                              Alexandria, Virginia

14                              Friday, December 6, 2019

15

16          The above-entitled matter came on to be

17   heard before the HONORABLE ANTHONY J. TRENGA, Judge in

18   and for the United States District Court for the

19   Eastern District of Virginia, Alexandria Division,

20   located at 401 Courthouse Square, Alexandria, Virginia,

21   commencing at 9:36 a.m., when were present on behalf of

22   the respective parties:
```

Bitseller Expert Limited, et al. vs. Verisign, Inc., et al.

```
 1              A P P E A R A N C E S

 2

 3    On behalf of Plaintiffs:

 4        MATTHEW SHAYEFAR, ESQUIRE

 5        VAL GURVITS, ESQUIRE

 6        Boston Law Group, P.C.

 7        825 Beacon Street, Suite 20

 8        Newton Centre, Massachusetts 02459

 9

10        JEFFREY HAMILTON GEIGER, ESQUIRE

11        Sands Anderson

12        1111 East Main Street, Suite 2400

13        Post Office Box 1998

14        Richmond, Virginia 23218-1998

15

16    On behalf of Defendants:

17        RONALD L. JOHNSTON, ESQUIRE

18        Arnold & Porter

19        777 South Figueroa Street

20        Los Angeles, California 90017-5844

21

22
```

```
 1              A P P E A R A N C E S

 2                   (Continued)

 3

 4   On behalf of Defendant:

 5        TIMOTHY B. HYLAND, ESQUIRE

 6        TYLER SOUTHWICK, ESQUIRE

 7        Hyland Law, PLLC

 8        1818 Library Street, Suite 500

 9        Reston, Virginia 20190

10

11

12                        *   *   *   *   *

13

14

15

16

17

18

19

20

21

22
```

Bitseller Expert Limited, et al. vs. Verisign, Inc., et al.

4
12/6/2019

```
 1              P R O C E E D I N G S

 2              THE CLERK:  Civil Action Number

 3    1:19-cv-1140, Bitseller Expert Limited versus

 4    Verisign, Inc., et al.

 5              Counsel, will you please note your

 6    appearances for the record.

 7              MR. SHAYEFAR:  Good morning, Your Honor.

 8    Matthew Shayefar for the plaintiffs, and I have with

 9    me Val Gurvits and Jeff Geiger.

10              THE COURT:  All right.  Good morning.

11              MS. SOUTHWICK:  Good morning, Your Honor.

12    Tyler Southwick on behalf of defendant, Verisign.

13              MR. HYLAND:  And good morning, Your Honor.

14    Tim Hyland for Verisign.  And I'm pleased to

15    introduce Ronald Johnston from Arnold & Porter in Los

16    Angeles who's been admitted pro hac and will be

17    handling the substantive portion of the argument

18    today.

19              THE COURT:  All right.  Welcome.

20              We're here on a motion to dismiss.  I

21    reviewed the pleadings.  I'd be pleased to hear

22    further from counsel.  What I would like to do --
```

Bitseller Expert Limited, et al. vs. Verisign, Inc., et al.

```
1    you're welcome to structure or emphasize your

2    argument however you want, but I am particularly

3    interested in the effect of the federal court

4    judgment on the conversion claim.

5            Counsel.

6            MR. JOHNSTON:  Let me jump right to what

7    Your Honor is identifying.  The federal court

8    judgment should be dispositive in this case in

9    causing a dismissal of both of the claims and the

10   grounds that the Court deprived the plaintiffs in

11   this case of the right to possession.  It's a

12   fundamental element of the tort of conversion that

13   the plaintiff must have the right of possession.  As

14   a consequence of that order, the plaintiff lost the

15   right of possession.  There are cases that we've

16   cited to the Court that confirm that principle.  The

17   only response to that principle is the plaintiffs'

18   argument that when the part of that order was

19   vacated, that somehow the order disappeared as though

20   it had never existed, something like a rescission of

21   a contract.  That's not the law.

22           When the court order was vacated, part of
```

Bitseller Expert Limited, et al. vs. Verisign, Inc., et al.

```
 1    the order was vacated, and after that part of the

 2    order, it changed the circumstances that during the

 3    entire period during which these claims were in

 4    existence or the conduct here alleged took place, the

 5    order deprived the plaintiffs of the right to

 6    possession of the property.  Even in the law of

 7    contracts where you have a rescission, you don't

 8    create this fiction that nothing ever happened when

 9    there's been performance or reliance on the

10    contract --

11              THE COURT:  Well, as I understand the

12    plaintiffs' argument, Verisign, upon getting this

13    order from the Court to transfer the domain name, had

14    some obligation to investigate the -- whether the

15    order appropriately considered the rights of the

16    plaintiffs in the domain name and do some kind of

17    investigation or review of the registrant, the

18    history and see if that coincided with the defendants

19    in the case.

20              MR. JOHNSTON:  We have two principal

21    responses to that.  Number one, we did not transfer

22    the domain name.  The transfer of the domain name was
```

Bitseller Expert Limited, et al. vs. Verisign, Inc., et al.

1   effected by a third party, a registrar, issuing a

2   command to our computer which alters a record in our

3   computer, and that effects the transfer of the

4   registrant for the domain name.

5           Verisign engaged in no volitional act, no

6   intentional conduct whatsoever as part of the alleged

7   transfer that's the gravamen of these claims.

8           THE COURT:  Well, what did it do then?  It

9   made some direction to somebody, didn't it?

10          MR. JOHNSTON:  No.  It's a fully automated

11  process.  Our computers -- domain names are created

12  by a registrant going to a registrar entering into a

13  contract.  The registrar, in the simplest case,

14  issues an add command to add the domain name chosen

15  by the registrant to our computer database.  That

16  computer database may change over time by reason of

17  changes to the registrant or a deletion of that

18  domain name in our computer database, but those

19  actions are performed based on commands issued by the

20  registrar directly to the database in our computer.

21  Those are third-party actions.  The transfer here was

22  completely effected without any conduct by Verisign.

1          The -- one of the cases in the materials

2    we've sited, the Forchion case, goes into some detail

3    in describing what happens.  And with the Court's

4    permission --

5          THE COURT:  And who is the registrar?

6          MR. JOHNSTON:  The registrar was GoDaddy --

7          THE COURT:  All right.

8          MR. JOHNSTON:  -- who has not been -- for

9    some reason we don't quite understand, is not a party

10   to the case.  But if the Court pleases --

11         THE COURT:  And who acted in response to

12   the court order then?  GoDaddy?

13         MR. JOHNSTON:  GoDaddy.  The court order

14   was in two parts.  The court order directed that

15   Verisign change the registrar of record, which it did

16   do in direct response to the court order.  It did

17   nothing more than that.  Secondly, the court order --

18         THE COURT:  I'm sorry.  Just say that

19   again.  Verisign did what?

20         MR. JOHNSTON:  Verisign changed the

21   registrar of record.

22         THE COURT:  All right.

Bitseller Expert Limited, et al. vs. Verisign, Inc., et al.

```
 1            MR. JOHNSTON:  It did not transfer the

 2    domain name --

 3            THE COURT:  All right.

 4            MR. JOHNSTON:  -- did not change the

 5    registrant.  We don't know who the registrant is.  We

 6    don't have that information.

 7            It changed the registrar of record.  The

 8    registrar of record then, at the urging of the

 9    plaintiff in that action, issued a command to our

10    computer to effect a change in the domain name.  But

11    in that process in what's alleged to be the wrongful

12    transfer in this case, Verisign committed no

13    volitional act.  Verisign has a database.  Registrars

14    issue commands directly to the database in order to

15    create actions at the urging of the registrants.

16            If it would assist the Court, I have a very

17    simple one-page illustrative exhibit of what goes on

18    when there's a change in the domain name.  The

19    important part of this exhibit, oddly, are the

20    errors.  The errors show who does what.  The errors

21    in the exhibit show that the registrar, in response

22    to Your --
```

Bitseller Expert Limited, et al. vs. Verisign, Inc., et al.

12/6/2019

```
 1              THE COURT:  Right.

 2              MR. JOHNSTON:  -- Honor's questions,

 3    actually issues commands, whether it's to add a

 4    domain name, delete a domain name, transfer a domain

 5    name to the registry computer database.  Our computer

 6    database has thousands of these transactions going on

 7    an hour.  It's fully automated.  There's no human

 8    involvement in the process except rarely, and there's

 9    no action by the registry itself.

10              So the notion that the registry converted

11    these domain names or trespassed when the registry

12    did nothing but its computer responded to a command

13    by a third party defies logic.  The plaintiffs know

14    that the registrar is the one who does these things.

15    The court order made that clear.  Nonetheless,

16    they've sued us without suing the registrar.  We get

17    many of these orders to do things, changing

18    registrars, but the orders that go to changing the

19    registrants of domain names such as in this case are

20    orders that are effected without our involvement at

21    all.

22              THE COURT:  All right.
```

Bitseller Expert Limited, et al. vs. Verisign, Inc., et al.

1        MR. JOHNSTON:  Now, you'll see in this

2    chart, it's very simple.  The registrant goes to a

3    registrar.  They form a contract.  The registrant

4    asks the registrar to create a domain name.  To do

5    that, the registrar issues a command to our computers

6    that asks, in effect, is this name already in your

7    computer.  If it's not, in simplest form, it's -- the

8    registrar will create that domain name in a computer

9    record in our computer.

10         The registrar controls the actions so to

11    speak.  We have and maintain a database, but the

12    registrar has the relationship to the registrant.  We

13    have no relationship to the registrant.  We do not

14    know who the registrant is.  Our database doesn't

15    identify the registrant.  Our Whois database that's

16    independently published does not identify who the

17    registrant is.  We have a very specific and limited

18    job in this context, and we don't go beyond that job.

19         THE COURT:  The court order refers to a

20    top-level domain registrar or their administrators.

21    Would that -- would Verisign fall into that category?

22         MR. JOHNSTON:  No.  The registrar in the --

Bitseller Expert Limited, et al. vs. Verisign, Inc., et al.

```
 1    refers to the GoDaddy --

 2              THE COURT:  Right.

 3              MR. JOHNSTON:  -- the middle box.

 4              THE COURT:  Right.

 5              MR. JOHNSTON:  Verisign is the registry.

 6    In that court order, at one point, there is a

 7    reference to "registrar" when it means "registry."

 8              THE COURT:  Well, I'm reading from the

 9    court order.  It says, To the extent that the

10    registrars, which I understand from you refers to

11    GoDaddy, does not assist in the changing of the

12    registrars of record within one day of the receipt of

13    the order, the top-level domain registrars or their

14    administrators for the subject domain names within

15    five days shall change.

16              What do you understand the reference to

17    top-level domain registrar means?  I'm looking in

18    page 4 of the court order, paragraph C.

19              MR. JOHNSTON:  A?

20              THE COURT:  Paragraph C, yes, the last

21    sentence there on the bottom --

22              MR. JOHNSTON:  To the extent the TLD
```

Bitseller Expert Limited, et al. vs. Verisign, Inc., et al.

```
 1   registrars --

 2             THE COURT:  Yes.

 3             MR. JOHNSTON:  -- do not change the

 4   registrars of record for the domain name registries

 5   -- in other words, the registrar of record --

 6             THE COURT:  Are you reading the last

 7   sentence?

 8             MR. JOHNSTON:  Yes.

 9             THE COURT:  It says, To the extent that the

10   registrars do not assist in changing the registrars

11   of record.  Then it refers to a top-level domain

12   registrar.  What do you understand that reference to

13   be?

14             MR. JOHNSTON:  In effect, GoDaddy, the

15   registrar, the middle box.  Commonly registrars who's

16   representing somebody who acquires the domain name,

17   for example, will have a registrar that they want to

18   use, and the registrars may transfer who the

19   registrar of record is between themselves, and

20   they'll issue a command to the -- Verisign, the

21   registry database.

22             Here, to the extent that doesn't happen, it
```

Bitseller Expert Limited, et al. vs. Verisign, Inc., et al.

```
 1    says that the registry operator, Verisign, will

 2    change the registrar of record to somebody designated

 3    by the plaintiff.  That happened here, but that's a

 4    change in the registrar of record.  It's not a change

 5    in the domain name.  The registrar of record

 6    subsequently changed the domain name to a new

 7    registrant pursuant to a contract with the

 8    registrant.

 9            THE COURT:  Well, I understand that, but

10    how do you understand the court order -- who is to

11    act under this court order as the top-level domain

12    registrar if the registrar of record does not act

13    within one day?  Who is to act within five days?

14            MR. JOHNSTON:  Well, that would be the

15    registry.

16            THE COURT:  Verisign?

17            MR. JOHNSTON:  Yes.  Verisign, who would

18    assist by changing the registrar of record, not

19    assist by changing the registrant or transferring the

20    domain name.

21            THE COURT:  I understand.  And in this

22    case, did the registrar of record, GoDaddy, effect
```

15

Bitseller Expert Limited, et al. vs. Verisign, Inc., et al.

12/6/2019

1    the change within one day, or did Verisign have to do

2    something?

3            MR. JOHNSTON:  Verisign changed the

4    registrar of record.

5            THE COURT:  Because GoDaddy hadn't done

6    it --

7            MR. JOHNSTON:  Well, it was originally

8    registered with EuroDNS, a different registrar --

9            THE COURT:  All right.

10           MR. JOHNSTON:  -- who refused to comply

11   with the change --

12           THE COURT:  All right.  So Verisign

13   changed --

14           MR. JOHNSTON:  So the plaintiffs in the

15   lawsuit went to Verisign and said, we want to change

16   the registrar of record to GoDaddy.  So they changed

17   the registrar of record to GoDaddy, and then GoDaddy

18   implemented the transaction that's the subject to the

19   claim.

20           THE COURT:  All right.  And that was in

21   response to the order that somebody at Verisign had

22   seen?

Bitseller Expert Limited, et al. vs. Verisign, Inc., et al.

```
1              MR. JOHNSTON:  Verisign would have seen --

2              THE COURT:  The order.

3              MR. JOHNSTON:  -- this order, I believe.

4     That's not pled, but the order --

5              THE COURT:  Well, would they have acted in

6     the absence of an order --

7              MR. JOHNSTON:  The order actually --

8     there's another part to this order.  This order asks

9     that immediately registries stop supporting the

10    domain name.

11             THE COURT:  Right.

12             MR. JOHNSTON:  Now, that requested

13    immediate action.  It also asked that this other

14    process takes place within five days.  So Verisign,

15    in its records, doesn't have anything other than the

16    face of the order to help it interpret the order.

17    The order on its face commanded Verisign immediately

18    to take certain actions, which it took.  Within

19    Verisign's access to information, we don't know who

20    the registrant is.  We don't know beyond the order

21    what the case is about.  And we just complied with

22    the order to the letter.
```

Bitseller Expert Limited, et al. vs. Verisign, Inc., et al.

```
 1            THE COURT:  All right.

 2            MR. JOHNSTON:  I mean, there's no dispute

 3    about that part of it.

 4            THE COURT:  All right.

 5            MR. JOHNSTON:  So that deprived them --

 6    this order deprived them of the right to possession.

 7    Now, the order could well refer to them.  We wouldn't

 8    know necessarily.  The order refers to defendants and

 9    anyone acting in concert with them.  According to the

10    plaintiffs, they were, in fact, operating the

11    website.  So even if we investigated for the

12    following six months, we could well have concluded

13    that, yeah, they were operating in concert with the

14    defendants, including because when the order was

15    entered, they didn't stop supporting the domain name.

16    So there is no way to distinguish these plaintiffs

17    from the conduct of a group of people that the Court

18    clearly sought to enjoin and clearly --

19            THE COURT:  I understand.

20            MR. JOHNSTON:  Okay.  I want to direct

21    my -- did I address your question fully?

22            THE COURT:  Yes.
```

Bitseller Expert Limited, et al. vs. Verisign, Inc., et al.

```
 1          MR. JOHNSTON:  Okay.  The -- each of

 2   these -- each of the claims requires not only a right

 3   to possession, which we've discussed.  We think they

 4   were deprived of that right to possession.  We cite

 5   two cases that very clearly say that.  Secondly, each

 6   of these claims require some exercise of dominion and

 7   control over the domain name.  And we tried to

 8   illustrate with our exhibit that we've provided to

 9   the Court there's nothing we did that could

10   constitute the exercise of dominion and control over

11   the domain name registrant or the domain name because

12   we took no act to change the database record

13   regarding that domain name as registrant, the domain

14   name, apart from the computer responding to an order

15   from the third party.

16          We also believe that the law is clear here,

17   including an opinion by this Court earlier, that

18   domain name is not the kind of property that's

19   embodied in a document or other tangible thing such

20   that this clearly intangible item could be the

21   subject of a claim for conversion or trespass.  They

22   cite no cases to the contrary save one, a Ninth
```

Bitseller Expert Limited, et al. vs. Verisign, Inc., et al.

```
 1   Circuit case, the Kremen case.  That case, however,

 2   was predicting what California courts would do.

 3   California courts did not go in the direction and,

 4   instead, suggested that in their view, domain names

 5   were not subject to conversion because they were not

 6   in any tangible form.

 7          The -- but quite beyond that, we think it's

 8   clear Virginia law applies, which we could address if

 9   the Court wishes, because a different California

10   court, in response to a complaint by these same

11   plaintiffs against Verisign, dismissed the complaint

12   on the grounds that there was no venue or personal

13   jurisdiction because no actions or conduct by the

14   registry had any relationship with California.  So

15   there's no basis here for California law to apply.

16   And the only other places mentioned by the

17   plaintiffs, Cyprus and another foreign country, the

18   plaintiffs don't say what the law is, so there's no

19   true conflict.

20          So if we look at Virginia law, Virginia

21   law, we think, is clear that this is not property

22   that's subject to a claim for conversion or trespass.
```

Bitseller Expert Limited, et al. vs. Verisign, Inc., et al.

```
 1            THE COURT:  All right.

 2            MR. JOHNSTON:  There's no document in which

 3   it embodies.  And once you go beyond some link

 4   between an intangible item and its merger into

 5   something tangible, you really make all of the

 6   elements of these claims for conversion and trespass

 7   kind of illusory.  I mean, it's hard to say what they

 8   would mean because there's no possession, there's no

 9   interference with its use that's observable.

10            The -- so the courts have tended to require

11   that there's some merger for very good reason.  There

12   is none here.  They've suggested that the merger is

13   with the domain name system, which I don't

14   understand.  The domain systems network knows

15   hundreds of millions of domain names.  It's not

16   something into which their domain name merges in the

17   identifiable way that supports either a claim for

18   conversion or trespass.

19            I would be happy to address any other

20   issues the Court has.

21            THE COURT:  All right.  Let me hear from

22   the plaintiffs.
```

Bitseller Expert Limited, et al. vs. Verisign, Inc., et al.

```
 1              MR. SHAYEFAR:  Good morning, Your Honor.

 2    Thank you very much.

 3              THE COURT:  Good morning.

 4              MR. SHAYEFAR:  Your Honor, I will first go

 5    to what was your initial question regarding the court

 6    order.

 7              THE COURT:  Right.

 8              MR. SHAYEFAR:  At a very basic level, this

 9    court order was never supposed to apply to these

10    domain names.

11              THE COURT:  Why do you say that?  It

12    specifically references them.

13              MR. SHAYEFAR:  So, Your Honor, looking at

14    Section 5(A) and going to the page of top of page 4

15    of the order, the -- what we've been talking about

16    here is how the order applies to, quote, subject

17    domain names.  And subject domain names is defined as

18    a number of domain names that are operated

19    by defendants, defendants in that prior class-action

20    lawsuit filed in the Northern District of California.

21    There is no question, though, that the domain name

22    was not operated by defendants --
```

Bitseller Expert Limited, et al. vs. Verisign, Inc., et al.

```
 1          THE COURT:  Well, but the domain name

 2   isn't -- is specifically included there, isn't it?

 3          MR. SHAYEFAR:  It is, Your Honor, but it

 4   says, as it is operated by defendants.  So at the

 5   very least, we have an issue.  I mean, if it wasn't

 6   clear to Verisign whether this applies or not, the

 7   court order, again, at the very end, bottom of page 5

 8   says, If there are any third parties -- that would be

 9   Verisign here -- subject to this order may seek

10   relief from the court if they believe the scope of

11   injunctive relief requires clarification or

12   correction.

13          It's all there.  There was no issue for

14   Verisign to say, hey, there's an issue here, there's

15   a problem here.

16          And then so going then to Section 5(C),

17   which is where the transfer takes place, Your Honor,

18   I'm genuinely not sure what it means by top-level

19   domain registrars.  As counsel noted, there are two

20   parties -- there are three parties here.  There's the

21   registrant, the registrar and the registry.  The

22   first section does refer to registrar.  I mean, the
```

Bitseller Expert Limited, et al. vs. Verisign, Inc., et al.

```
 1        court order is, quite frankly, vague.

 2               Where it does refer to registry, though,

 3        which is, again, where Verisign comes in, as I

 4        believe Your Honor noted, the very last sentence of

 5        Section 5(C), which says, To the extent that the TLD

 6        registrars for the subject domain names do not change

 7        the registrars of record for the subject domain

 8        names, the domain name registries -- this is the

 9        first time that registries is specifically talked

10        about with regard to transferring the domain name --

11        that's where they shall transfer, assist in

12        transferring the subject domain names to class

13        counsel.

14               There is no five-day limitation on this.

15        There is no one-day limitation on this.  The court

16        gave Verisign the option to come and ask for a

17        clarification because there's obviously an issue on

18        its face with this thing.  Verisign did no such

19        thing.  They simply rubber-stamped this order and

20        transferred --

21               THE COURT:  Well, I guess I'm trying to

22        understand from both your perspective and Verisign's.
```

Bitseller Expert Limited, et al. vs. Verisign, Inc., et al.

```
1   They get a court order, federal court order that

2   specifically identifies a domain name that's to be

3   transferred, and your position is that they should

4   have done what?  Looked behind the court order and

5   determined whether the court actually meant to

6   adjudicate the ownership of these particular

7   plaintiffs in the domain -- or these particular

8   defendants in the domain name --

9           MR. JOHNSTON:  Your Honor, I think --

10          THE COURT:  -- because it talks about

11  defendants generally.  The defendants aren't listed

12  in the caption even.  It just talks about et al.  It

13  talks about defendants and everybody acting in

14  concert with them.

15          Why wouldn't someone looking at this

16  reasonably think that the federal court, if we're

17  issuing this order here to adjudicate it, the

18  relative rights of the parties and to verify who

19  owned the domain names and adjudicate whether those

20  people had a legitimate interest and made its

21  adjudication that the domain name needed to be

22  transferred based on an adjudication with the
```

Bitseller Expert Limited, et al. vs. Verisign, Inc., et al.

```
 1   relevant information?
 2         MR. SHAYEFAR:  Your Honor, this sort of
 3   goes to a much larger issue with this case.  This
 4   case is not only redars.com.  This case is about
 5   Verisign, which is the backbone of the internet, and
 6   whether it had any obligation to exert any sort of
 7   reasonable care in its operation of the DNS system or
 8   the domain name registry system.
 9         So this court order is so broadly written
10   that it says any defendants or anybody working in
11   their concert and any other domain names that could
12   possibly be part of this.  Under this court order,
13   the attorneys for the class-action plaintiffs could
14   have come to Verisign and said, well, the domain name
15   Amazon.com is also being operated in conjunction with
16   it.  Transfer that to us.  There's nothing in this
17   order that says they can't --
18         THE COURT:  Well, except that Amazon.com
19   isn't listed as a specific domain name.
20         MR. SHAYEFAR:  Well, Your Honor, the court
21   order does say and it defines subject domain names as
22   all other websites that display, publish or
```

Bitseller Expert Limited, et al. vs. Verisign, Inc., et al.

```
 1   disseminate information about the subclass members.

 2           THE COURT:  Right.  And so -- I mean, I can

 3   understand it would have some -- I could understand

 4   if they came and said, all right, transfer Amazon.com

 5   because it's a website also operated by the

 6   defendants, that there would be some question about

 7   whether that, in fact, is the case.  But here you

 8   have very specific websites already identified in the

 9   court order.

10           MR. SHAYEFAR:  And, Your Honor, but so

11   that's the issue.  From what I'm hearing, at some

12   point, there is a duty of care on their part to say,

13   well, this doesn't make sense.  So --

14           THE COURT:  Let me just ask a side

15   question.  Have you all proceeded against the

16   plaintiffs in the California case?

17           MR. SHAYEFAR:  No, we have not yet, Your

18   Honor.  No.

19           THE COURT:  All right.  And you're not a

20   defendant -- the California action is not pending; is

21   that right?

22           MR. SHAYEFAR:  The original class-action
```

Bitseller Expert Limited, et al. vs. Verisign, Inc., et al.

```
 1    suit?

 2              THE COURT:  Yeah.

 3              MR. SHAYEFAR:  I believe that the judgment

 4    has been issued and there's nothing further

 5    proceeding in that case.

 6              THE COURT:  All right.

 7              MR. SHAYEFAR:  They have not amended the

 8    complaint --

 9              THE COURT:  And did you intervene for the

10    purposes of obtaining the relief, or did you just

11    simply file a motion?

12              MR. SHAYEFAR:  We filed a motion for

13    relief, Your Honor.  I don't remember the --

14              THE COURT:  But you didn't intervene as

15    defendants?

16              MR. SHAYEFAR:  No.  We did not become

17    party, so it was simply as third-party movements in

18    the case.

19              THE COURT:  All right.

20              MR. SHAYEFAR:  Your Honor, I would like to

21    proceed on a couple of other issues --

22              THE COURT:  All right.
```

Bitseller Expert Limited, et al. vs. Verisign, Inc., et al.

```
 1          MR. SHAYEFAR:  Counsel has been dancing

 2   around the fact of what Verisign did.  And either

 3   they did something or they didn't.  And what Verisign

 4   did here was regardless of what happened after they

 5   took action, Verisign's action was to divest control

 6   of the domain name away from the plaintiffs in this

 7   case, and they did that --

 8          THE COURT:  Well, as I understand, they

 9   replaced the registrar or substituted the registrar,

10   who, in turn, did what was necessary to transfer.

11          MR. SHAYEFAR:  Right.  So first off, Your

12   Honor, this is -- none of this is in the complaint.

13   We're in the motion-to-dismiss stage here.

14          THE COURT:  Right.  I understand.

15          MR. SHAYEFAR:  So assuming that Your Honor

16   is taking a look at any of this, the domain name was

17   registered with a registrar EuroDNS --

18          THE COURT:  Right.

19          MR. SHAYEFAR:  -- where it is my clients

20   had an account where they could control an access to

21   the domain name.  That's the only place that they had

22   access to it.  What Verisign did was take it
```

Bitseller Expert Limited, et al. vs. Verisign, Inc., et al.

```
 1   completely out of that domain name registrar's

 2   control and put it into GoDaddy, where my clients had

 3   no control, had no account, had no ability to do

 4   anything anymore.  And Verisign did that specifically

 5   with the intent that it would be held then by the

 6   California counsel, and they could do what they want

 7   with it.

 8         Yes, GoDaddy did some action in between

 9   there, yes, the lawyers did some action as well, but

10   the nucleus, the reason all of this happened was

11   because Verisign took it -- and this is their actual

12   voluntary action -- took it out of the control of the

13   plaintiffs.  That was a voluntary action.  I don't

14   think that counsel can get up here and make the claim

15   that they did not take that voluntary action of

16   taking it out of the control of them.  What they're

17   dancing around the issue is other people did

18   something after we did our action --

19         THE COURT:  Well, as I understand it, based

20   on the court order, they did what you've said because

21   the registrar of record didn't act within one day of

22   the court order.
```

Bitseller Expert Limited, et al. vs. Verisign, Inc., et al.

```
1            MR. SHAYEFAR:  Correct, Your Honor.

2            THE COURT:  Right.  And they were under an

3    obligation to then act within five days of the court

4    order.

5            MR. SHAYEFAR:  Your Honor, there is no --

6    as I noted, the obligation for them has no timeline

7    on it.  That is the last sentence of Section 5(C) on

8    page 5.

9            THE COURT:  Uh-huh.  It says, To the extent

10   that the registrar of record, which is the Euronet,

11   correct?

12           MR. SHAYEFAR:  So it says, To the extent

13   that the TLD registrar -- and, Your Honor, again,

14   there is no TLD registrar.  Those are two conflicting

15   terms that are being used here.  So I don't know what

16   the court meant.  And, again, because this was a

17   default, it was probably written by counsel, the

18   class-action counsel.  But if we assume that TLD

19   registrar refers to EuroDNS, which is the registrar,

20   for the subject domain names, do not change the

21   registrars of record, which, again, I don't know --

22           THE COURT:  Well, it says, To the extent
```

Bitseller Expert Limited, et al. vs. Verisign, Inc., et al.

```
 1    the registrar do not assist in changing -- I see what

 2    you're saying.

 3              MR. SHAYEFAR:  The order, Your Honor, is

 4    just frankly ambiguous, but to -- the only time that

 5    it says registry, the registry, that says, in case

 6    these other people don't do it, that's when the

 7    domain name registries shall transfer or assist in

 8    transferring the subject domain name.

 9              That was Verisign's obligation, if any,

10    under this.  And, again, Your Honor, subject domain

11    names, questionable whether it applies to -- at all

12    to the redars.com domain name.  And, again, the court

13    gave them an out.  The court specifically told them

14    to ask the court if there is any issue, or at the

15    very least, Verisign could have sent a notice to

16    Accuracy that we're going to take this action.  We've

17    received this order.  They did nothing.  All they did

18    was represent the order where it was not clear, which

19    gave them an option to go to the court and ask for

20    clarification.

21              Verisign says it doesn't have access to who

22    the registrant is.  It's not true.  If you go to
```

Bitseller Expert Limited, et al. vs. Verisign, Inc., et al.

```
 1   Verisign.com/whois, I believe, Your Honor, they
 2   operate -- they have available on their website
 3   access to the Whois database, which specifically
 4   listed Accuracy as the domain name registrant.  They
 5   didn't look at it, or maybe they did and they didn't
 6   care.  That's one of the issues here.
 7            We don't know why Verisign did what it did.
 8   We don't know how much effort Verisign actually took
 9   to look at this thing.  We don't know if Verisign
10   simply looked at a cover letter from the plaintiffs'
11   lawyers and said, hey, this domain name needs to be
12   transferred, here's an attached order, and they did
13   it without looking at the order.  We don't know
14   because we haven't gotten to discovery yet.  But they
15   did nothing except transfer the domain name out of
16   the control of the plaintiffs.
17            THE COURT:  All right.
18            MR. SHAYEFAR:  Counsel mentioned the case
19   of In re:  Forchion, which, Your Honor, frankly, I'm
20   very happy to bring up because it is such a weird
21   case and it, frankly, has nothing to do with any of
22   the causes of action here.  That was a name-change
```

Bitseller Expert Limited, et al. vs. Verisign, Inc., et al.

1   petition by an individual who wanted to change his

2   name to NJWeedman.com.  That's the full name that he

3   wanted to pick.  And in dicta, the court goes over

4   and references some of the cases, including cases

5   which claim that domain names are not property, but

6   in no way was that California court trying to

7   determine whether a cause of action for conversion

8   applies in California.

9           And, Your Honor, if you want some cases

10  from California Appeals Courts which do confirm that

11  there's a cause of action encouraged against domain

12  name, I have a number of cases here I'm happy to read

13  for you, Your Honor.

14          THE COURT:  All right.  Let me just go back

15  to the court order again.

16          MR. SHAYEFAR:  Sure.

17          THE COURT:  I understand what -- you're

18  saying that under paragraph C, Verisign is not

19  implicated, they're not addressed, and that's the

20  subject of this court order until you get to the very

21  last sentence of paragraph C --

22          MR. SHAYEFAR:  That's the way that I read

Bitseller Expert Limited, et al. vs. Verisign, Inc., et al.

```
 1   the order, Your Honor.

 2            THE COURT:  All right.

 3            MR. SHAYEFAR:  Frankly, it is a very

 4   ambiguous order, which is one of the biggest problems

 5   with this.

 6            THE COURT:  All right.

 7            MR. SHAYEFAR:  I'd just like to confirm --

 8   conclude, Your Honor, with we're talking about here

 9   some of the most valuable assets of any internet

10   companies in the world.  If there is no duty at all

11   for Verisign to act in any way reasonable on this,

12   there's nothing to stop them, especially because they

13   claim that there is no cause of action for

14   conversion, period, whether or not the court order

15   was applied.

16            There's nothing to stop Verisign from one

17   day deciding, for no reason, that they want to take

18   over the Amazon.com domain name or transfer it away

19   from Amazon or Google.com or Facebook.com because

20   they're claiming they have no contractual

21   relationship with any registrants, they are claiming

22   that it's not property, they're claiming nothing,
```

Bitseller Expert Limited, et al. vs. Verisign, Inc., et al.

1    that it's -- they're simply maintaining a database, a

2    database which can divest control of these domain

3    names from the most powerful companies in the world

4    and have no responsibility to them and those

5    companies would have no remedy.

6            THE COURT:  So how would you frame the

7    issue, whether Verisign acted reasonably in response

8    to this court order?

9            MR. SHAYEFAR:  I think that -- well,

10   conversion is a strict liability tort.

11           THE COURT:  No.  I understand.  But in

12   terms of the wrongfulness aspect of the tort, they're

13   relying on a federal court order, and the Court

14   should evaluate whether that negates the wrongfulness

15   aspect of the conversion tort based on what legal

16   measure, whether they acted reasonably in response to

17   the court order?

18           MR. SHAYEFAR:  Yes, Your Honor.  That's one

19   of the issues.  So looking at -- and there's no --

20           THE COURT:  But you would agree that would

21   be the relevant inquiry, whether they acted

22   reasonably in response to the court order?

Bitseller Expert Limited, et al. vs. Verisign, Inc., et al.

```
 1            MR. SHAYEFAR:  I think that that is part of

 2    a response to their affirmative defense.  Their

 3    affirmative defense is, hey, we have this court

 4    order; that's what gives us protection against your

 5    conversion.  That affirmative defense, the best we

 6    can find, that I've found, is Section 266 of the

 7    Restatements, Second, of Torts, and that does require

 8    parties like Verisign, when they receive orders like

 9    this, to act reasonably, which is our claim that they

10    did not act reasonably.

11            THE COURT:  All right.

12            MR. SHAYEFAR:  And, Your Honor, if Your

13    Honor finds that these causes of action do not

14    proceed as they are, we respectfully request leave to

15    amend to add causes of action for negligence and

16    tortious interference because there must be, under

17    the common law, some cause of action that allows

18    remedies for these parties and allows remedies in

19    case Verisign does it to any of these other people.

20            Many of the conversion cases which have

21    been referenced by defendants are between private

22    parties.  Those are different -- those have a
```

Bitseller Expert Limited, et al. vs. Verisign, Inc., et al.

```
 1    different feeling to them if someone goes in and

 2    changes your domain name.  When Verisign, which has

 3    control over it entirely, does it, it's a whole

 4    different ball game, Your Honor.

 5            THE COURT:  When did the plaintiffs first

 6    realize that they had lost control over the domain

 7    name?

 8            MR. SHAYEFAR:  Immediately after the domain

 9    name was moved to -- to point to another website.

10            THE COURT:  And that was when?

11            MR. SHAYEFAR:  It would have been in --

12            THE COURT:  2018?

13            MR. SHAYEFAR:  I think so.  It would have

14    been a few days before we filed the motion, Your

15    Honor.  I remember very quickly moving to file that

16    motion.  It's the first we found out about it.

17            THE COURT:  And when did they act in the

18    California action?

19            MR. SHAYEFAR:  So we had filed that motion

20    for relief, and then immediately after we filed it,

21    we worked with the class-action plaintiffs' lawyer to

22    at least redirect the domain name back to the actual
```

Bitseller Expert Limited, et al. vs. Verisign, Inc., et al.

```
 1   website.  I think maybe within a week, maybe a little

 2   more than that, maybe less.  I can't remember

 3   exactly, Your Honor.  And then it was within two or

 4   three months that the court issued its relief from

 5   the motion, which then actually transferred the

 6   domain name back to the control of --

 7            THE COURT:  So how long have they been --

 8   when did they first regain control of the website?

 9            MR. SHAYEFAR:  Full control, Your Honor, it

10   would be between -- it is in the complaint.  We filed

11   the motion on March 1st, and on May 4th, the court

12   issued its ruling on the emergency order.

13            THE COURT:  2018?

14            MR. SHAYEFAR:  2018, yes.

15            THE COURT:  All right.  Thank you.

16            MR. SHAYEFAR:  Thank you, Your Honor.

17            THE COURT:  All right.  Counsel, I'll give

18   you the last word on this.

19            MR. JOHNSTON:  As the last comment

20   indicates, with Verisign, the court order issued that

21   Verisign has to do something immediately within five

22   days.  It's strange credibility to think that
```

Bitseller Expert Limited, et al. vs. Verisign, Inc., et al.

```
1    Verisign could investigate this, seek relief from the
2    court, get an interpretation of this within that
3    period of time based on how long it took them to take
4    action and get a decision vacating a piece of the
5    order.  It wasn't the whole order; it was a piece of
6    the order.
7            Counsel asked for leave to amend so that it
8    can state negligence claims or something else under
9    the error.  There has to be a duty.  There is no duty
10   here in tort based on Verisign's relationship with
11   these parties.  There are contracts, there is an
12   entire registry structure that's in place that
13   precludes parties from doing different things.  But
14   the notion that this is simply the Wild West and
15   Verisign can go do anything it wants, notwithstanding
16   its contracts with the Department of Commerce that
17   has oversight as well as ICANN, is ridiculous.
18   There's no basis for a duty that's been alleged or
19   argued here or is present in any of the cases for
20   what they're asking this Court to do to give it leave
21   to amend.  We think that there should be no leave to
22   amend because we think it's clear that these claims
```

Bitseller Expert Limited, et al. vs. Verisign, Inc., et al.

1   have no basis in law.  And, therefore, it would just

2   end up being another round of briefing that we think

3   would result in the same conclusion.

4          I would like to respond to a couple of very

5   specific things.

6          THE COURT:  All right.

7          MR. JOHNSTON:  Counsel said this order is

8   very ambiguous.  It's not ambiguous.  There's the one

9   typo where registrar was used where registry

10  obviously was intended, and there's never been any

11  debate about that.

12         THE COURT:  Well, look at paragraph 5.  As

13  you read that, what portion of that paragraph is

14  directed to Verisign?  Is it the last paragraph -- is

15  it the reference to a top-level registrar, or is it

16  the last sentence of that paragraph?

17         MR. JOHNSTON:  Verisign is referenced in

18  paragraph 5 --

19         THE COURT:  C.

20         MR. JOHNSTON:  -- C, last -- basically the

21  last several words on page 4 --

22         THE COURT:  As a top-level registrar?

Bitseller Expert Limited, et al. vs. Verisign, Inc., et al.

```
 1              MR. JOHNSTON:  Yes.  That's the typo.  That

 2   should be registry.  And then in the last sentence,

 3   it says, domain name registries where the court got

 4   it right.  That's a reference to Verisign.  Yeah.

 5              THE COURT:  Well, but that -- the last

 6   sentence distinguishes between domain name

 7   registries, which is Verisign, and top-level domain

 8   registrars.

 9              MR. JOHNSTON:  Right.  What I'm saying is

10   the first time that it's used at the bottom of the

11   previous page is just an error.  It should have been

12   top-level registry.

13              THE COURT:  Well, what's a top-level

14   registry?

15              MR. JOHNSTON:  That's Verisign, top-level

16   domain.

17              THE COURT:  All right.

18              MR. JOHNSTON:  Second-level domain is what

19   people register.

20              But there's no, otherwise, ambiguity in

21   this order.  Counsel does also suggest, well, there's

22   this language at the end, that it's just supposed to
```

Bitseller Expert Limited, et al. vs. Verisign, Inc., et al.

```
 1    address domain names owned by the defendants.  Well,

 2    the order explicitly addresses, as the Court pointed

 3    out, redars.com.

 4              Furthermore, in their application or in the

 5    lawsuit they filed in Los Angeles, they stated that

 6    this order required the transfer of that domain name.

 7    So --

 8              THE COURT:  This necessarily in the record,

 9    but is Verisign able to identify a specific person

10    who reviewed this order and when that person reviewed

11    the order and acted?

12              MR. JOHNSTON:  Verisign may be able to

13    identify the person who reviewed the order.  The

14    order may have come in and reviewed by a person --

15              THE COURT:  Is there --

16              MR. JOHNSTON:  I don't know that -- the

17    only reason I don't know that is because the transfer

18    itself, Verisign didn't do.  So the most Verisign

19    would have done is look at this to see if the order

20    is --

21              THE COURT:  There must be some record of

22    the order being transmitted and received --
```

Bitseller Expert Limited, et al. vs. Verisign, Inc., et al.

1          MR. JOHNSTON:  I'm sure there's a record

2     that the order was received by Verisign, but that --

3     you know, the order, on its face, is clear about the

4     domain name, the registry and the time limits and the

5     immediacy of this.  And Verisign probably gets a

6     thousands of these a year -- and this is outside the

7     record -- but, you know, Verisign can't go litigate

8     around the country every time it gets an order from a

9     court that allows a registrar to change a domain name

10    in Verisign's computer.

11          So -- but to answer Your Honor's question,

12    I suspect there was a person.

13          One other comment.  Counsel said Accuracy

14    is listed in our Whois database.  That's not right.

15    The information that we have is in the last box on

16    that illustrative exhibit I gave to the Court.

17          THE COURT:  All right.

18          MR. JOHNSTON:  Thank you.

19          THE COURT:  All right.  Thank you.

20          The Court will take it under advisement.

21    I'll get you a decision just as soon as I can.

22          MR. JOHNSTON:  Thank you, Your Honor.

Bitseller Expert Limited, et al. vs. Verisign, Inc., et al.

1          THE COURT:  All right.  Thank you.

2          MR. SHAYEFAR:  Thank you, Your Honor.

3          (Whereupon, at 10:36 a.m., the

4          proceedings were concluded.)

5

6                    *   *   *   *   *

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

Bitseller Expert Limited, et al. vs. Verisign, Inc., et al.

```
 1        COMMONWEALTH OF VIRGINIA AT LARGE, to wit:

 2        I, LAQUICIA THOMAS, Court Reporter and Notary

 3   Public in and for the Commonwealth of Virginia at

 4   Large, and whose commission expires February 28, 2022,

 5   do certify that the foregoing is a true, correct, and

 6   full transcript of the proceedings.

 7        I further certify that I am neither related to

 8   or associated with any counsel or party to the

 9   proceedings; nor otherwise interested in the event

10   thereof.

11

12

13        _____

14        LaQuicia Thomas

15        Notary Public

16        Commonwealth of Virginia at Large

17        Notary No. 7363169

18

19

20

21

22
```