IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| BITSELLER EXPERT LIMITED, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:19-cv-01140 (AJT/JFA) |
| | ) | |
| VERISIGN, INC., *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

As alleged in the Complaint, on February 26, 2018, in reliance on a federal court order, Defendants caused the domain name <**radaris.com**>, registered to plaintiff Accuracy Consulting Ltd. ("Accuracy"), and the website located at that domain name, operated by plaintiff Bitseller Expert Limited ("Bitseller"), to be transferred as directed by a third-party that had obtained the federal court order. Plaintiffs were not parties to the litigation in which the federal court order was issued and the court order was premised, incorrectly, on a finding that someone other than the plaintiffs were the rightful owners and registrants of the transferred domain name and website. Shortly after the domain name was transferred, plaintiffs learned of the transfer and successfully took steps to have the federal court order amended, and once amended, plaintiffs were able to have the registration revert back to the them. Nevertheless, on September 4, 2019, plaintiffs initiated this action for damages against Verisign and John Does 1-10 based on the torts of conversion and trespass to chattels as a result of the allegedly wrongful transfer of the domain name and its accompanying website.

On October 21, 2019, Verisign filed the pending Motion to Dismiss the Complaint [Doc. 20] (the "Motion") for lack of subject matter jurisdiction and for plaintiffs' failure to assert a

1

cognizable claim in light of the federal court order.  The dispositive issue is whether Verisign reasonably relied on the federal court order, thereby negating the wrongfulness element of the alleged torts. For the reasons stated below, as a matter of law, defendants reasonably relied on a facially valid federal court order that directed it to act and did not act wrongfully as required for relief under the alleged torts when it acted as directed by that court order. Accordingly, the Motion is **GRANTED** and this action is **DISMISSED.**

## I.  BACKGROUND

The facts recited herein are as alleged in the Complaint and as reflected in the exhibits attached to the Complaint, which includes the issued federal court order:

Accuracy, a limited company organized under the laws of the British Virgin Islands, is the owner and regis*trant* of the domain name: **<radaris.com>** (the "Radaris Domain Name"). [Doc. 1 ("Complaint" or "Compl.") ¶ 8].  Bitseller, a limited company organized under the laws of Cyprus, is the operator of the website located on the Radaris Domain Name (the "Radaris Website").  *Id*. ¶ 9. The Radaris Website is a public records search engine that provides publicly-available information related to people, business, and real property.  *Id*. ¶ 10.

Verisign, a corporation registered under the laws of the State of Delaware with a principal place of business in Reston, Virginia, is the regis*try* for top-level internet domains, such as ".com" and ".net."  *Id*. ¶ 3.  As the domain name registry for all ".com" domain names, Verisign maintains a publicly-accessible database, entitled the WhoIs database, which holds information and data stating that Accuracy is the regis*trant* of the Radaris Domain Name.  *Id*. ¶¶ 20, 21.[1]

---

[1] At the hearing on the Motion, the parties disagreed on whether the registrant of the radris.net domain name could be determined by accessing the WhoIs database.  For the purposes of the Motion, the Court

2

On October 24, 2014, a class action complaint (the "Huebner Complaint") was filed on behalf of a putative class of plaintiffs in the United States District Court for the Northern District of California ("California District Court").  *See Huebner v. Radaris, LLC et al.*, Civil Case No. 3:14-cv-04735-VC (N.D. Cal.).  The Huebner Complaint alleged, among other wrongs, various issues arising from the operation of the website located on the Radaris Domain Name.  *Id*. ¶¶ 13, 15.  Named as defendants in the Huebner Complaint were Radaris, LLC, a Massachusetts LLC; Radaris America, Inc., a Delaware corporation; and Edgar Lopin, an individual (collectively, the "Huebner Defendants").  *Id*. ¶ 14.  The Huebner Complaint, however, did not name either Bitseller or Accuracy as defendants.  *Id*.

On June 19, 2017, the California District Court issued a default judgment order (the "Default Judgment Order") against the Huebner Defendants due to their failure to appear in the action despite proper service of process.  *Id*., Ex. 1; *see also id*. ¶ 22.  In Section II.5.c. of the Default Judgment Order, the district court specifically ordered that:

> [t]he domain name registrars for the Subject Domain Names (including but not limited to Godaddy.com) shall transfer to [the Huebner] Plaintiffs the domain name certificates for the Subject Domain Names and/or shall transfer exclusive control of the Subject Domain Names to the [Huebner] Plaintiffs.  The domain name registrars for the Subject Domain Names shall immediately assist in changing the registrar of record for such domains to a register for [the Huebner]Plaintiffs' choosing.  To the extent that the registrars do not assist in changing the registrars of record for the domains under their control within 1 business day, the top-level domain (TLD) registrars[2] (or their administrators) for the Subject Domain Names within 5 business days of receipt of this Order shall change or assist in changing the registrars of record for the Subject Domain Names to a registrar of Plaintiffs' choosing . . . To the extent that the TLD registrars for the Subject Domain Names do not change the registrars of record for the Subject Domain Names, the domain

---

assumes as true plaintiffs' allegation that the identity of registrants can be determined through the WhoIs data base.

[2] Both parties appear to agree that the reference to "top-level domain (TLD) regist*rars*" in Section II.5.c. of the Default Judgment Order is a typo, and that the correct reference should be "top-level domain (TLD) regist*ries*." *See* [Doc. 29 ("December 6 Transcript") at 12:5-7; 22:16-19].

3

name registries shall transfer or assist in transferring the Subject Domain Names to Class Counsel.

*Id*., Ex. 1 § II.5.c..

"Subject Domain Names" are defined in the Default Judgment Order as "... the domain name *radaris.com*, radaris.net, radaris.us, radaris.biz, radaris.info, trustoria.com, and all other websites that display, publish, or disseminate information about Subclass members that are operated by Defendants." *Id*. Ex. 1 § II.5.a. (bold-type emphasis added). The term "Defendants" is not expressly defined in the body of the Default Judgment Order; and the case caption, present on the face of the Default Judgment Order, only identifies as Defendants "Radaris, LLC, *et al*." However, the Default Judgment Order, by its terms, applied to the:

> Defendants, Defendants' officers, agents, servants, employees, and all other persons in active concert or participation with any of them or third parties providing services used in connection with Defendants' operations who receive actual notice of this Order, including but not limited to domain name registrars, domain name registries, website hosts, internet search engines, and internet service providers, whether acting directly or indirectly . . .

*Id*., Ex. 1 § II.5.a.

At about the same time the Default Judgment Order was entered, Accuracy, the owner of the Radaris Domain Name, registered that domain name with EuroDNS, its domain name regis*trar*. *Id*. ¶ 26. EuroDNS, however, refused to transfer the Radaris Domain Name to the Huebner plaintiffs when requested to do so. *Id*. ¶ 27.

Unable to have the Radaris Domain Name transferred through EuroDNS (the Radaris Domain Name regis*trar*), the Huebner plaintiffs next requested that Verisign, the relevant top-level domain regis*try*, transfer the registration and operation of the Radaris Domain Name to the class action plaintiffs, which Verisign did on or about February 26, 2018. *Id*. ¶¶ 28, 29. As a consequence of Verisign's alleged transfer, the Radaris Website was taken offline, which

allegedly caused serious and irreparable damage to plaintiffs, including loss of internet traffic to the Radaris Website. *Id.* ¶ 31.

On March 1, 2018, three days after Verisign changed the name of the regis*trar* and operation of the Radaris Domain Name,[3] Bitseller and Accuracy, without intervening in the *Huebner* action, filed an Emergency Motion for Relief from the Default Judgment as non-parties. *Id.* ¶ 32. In that motion, plaintiffs requested that the California District Court undo its previously-entered Default Judgment Order as to both. *Id.*; *see also* [Doc. 27, Ex. 2 (emergency motion for relief)]. On May 4, 2018, the California District Court granted the emergency motion and issued an order finding that "the current record does not permit a conclusion that Accuracy and Bitseller are acting in concert with the named defendants in this case . . . [or] that Accuracy and Bitseller were involved in the unlawful conduct that was the subject of the lawsuit." Compl., Ex. 2 at 1. Plaintiffs have since regained full control over the Radaris Domain Name and Radaris Website.[4]

On September 4, 2019, plaintiffs initiated this action, and on October 21, 2019, Verisign filed the Motion, which the parties have fully briefed. *See* [Docs. 21, 24, 27]. The Court held a hearing on the Motion on December 6, 2019, following which it took the Motion under advisement.

---

[3] Plaintiffs do not allege in the Complaint *where* the alleged transfer of the Radaris Domain Name occurred.

[4] The Complaint does not allege precisely *when* plaintiffs regained control over the Radaris Domain Name and Radaris Website. At the hearing, plaintiffs' counsel represented that after filing an emergency motion for relief on March 1, 2018 in the *Heubner* action, they worked with the *Huebner* plaintiffs' counsel to redirect the domain name back to the actual website, which occurred within a week or so thereafter. December 6 Transcript at 37:17-38:6.

## II.  LEGAL STANDARD

### A.  Rule 12(b)(1)

"Federal courts are courts of limited jurisdiction, and we presume that a cause lies outside this limited jurisdiction." *Wheeling Hosp., Inc. v. Health Plan of the Upper Ohio Valley, Inc.*, 683 F.3d 577, 583–84 (4th Cir. 2012).  Thus, where a motion to dismiss under Rule 12(b)(1) challenges the court's subject matter jurisdiction, the burden rests with the plaintiff, as the party asserting jurisdiction, to prove that federal jurisdiction is proper. *Int'l Longshoremen's Ass'n v. Va. Int'l Terminals, Inc.*, 914 F. Supp. 1335, 1338 (E.D. Va. 1996).

Subject matter jurisdiction may be attacked by a defendant with either a facial or a factual challenge. *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009). In a facial challenge, the defendant is asserting that the allegations contained in the complaint fail to sufficiently establish the existence of subject matter jurisdiction. *Id*.  In this context, the plaintiff is "afforded the same procedural protection as she would receive under a Rule 12(b)(6) consideration," so that "facts alleged in the complaint are taken as true," and the defendant's motion "must be denied if the complaint alleges sufficient facts to invoke subject matter jurisdiction." *Id*. (citation omitted).

### B.  Rule 12(b)(6)

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of the complaint.  *See Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1994). A claim should be dismissed "if, after accepting all well-pleaded allegations in the plaintiff's complaint as true . . . it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief." *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999); *see also Trulock v. Freeh*, 275 F.3d 391, 405 (4th Cir. 2001).  In considering a motion to dismiss, "the material allegations of the complaint are taken as admitted." *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969) (citations omitted). Moreover, "the complaint is to be liberally construed in favor of

6

plaintiff." *Id.*; *see also Bd. of Trustees v. Sullivant Ave. Props., LLC*, 508 F. Supp. 2d 473, 475 (E.D. Va. 2007). Nevertheless, while Rule 8 does not require "detailed factual allegations," a plaintiff must still provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (the complaint "must be enough to raise a right to relief above the speculative level" to one that is "plausible on its face").

### III.  DISCUSSION

#### A.  Subject Matter Jurisdiction

As an initial matter, Verisign contends that plaintiffs have not sufficiently pled subject matter jurisdiction, pursuant to 28 U.S.C. § 1332(a)(2), because the Complaint lacks detail regarding the citizenships of the named plaintiffs (Bitseller and Accuracy) and the John Doe defendants (John Does 1 through 10). [Doc. 21 ("Memo.") at 7-10].

A federal court may exercise diversity jurisdiction over a civil action when the amount in controversy exceeds $75,000 and is between "citizens of a State and citizens or subjects of a foreign state." 28 U.S.C. § 1332(a)(2). The diversity jurisdiction statute also requires complete diversity of citizenship of each plaintiff from each defendant. *Rosmer v. Pfizer, Inc.,* 263 F.3d 110, 123 (4th Cir. 2001). Thus, complete diversity is lacking where on one side there are citizens and aliens and on the opposite side there are only aliens. *General Technology Applications, Inc. v. Exro Ltda,* 388 F.3d 114, 120 (4th Cir. 2004) (citing *Universal Licensing Corp. v. Paola del Lungo S.p.A.,* 293 F.3d 579, 581 (2d Cir. 2002)).

Whether Accuracy or Bitseller is to be treated as an alien or citizen is unsettled, as the Fourth Circuit has "not yet adopted any approach to characterizing foreign civil-law business entities for diversity purposes." *Hawkins v. i-TV Digitalis Tavkoziesi zrt.*, 935 F.3d 211, 224 (4th

7

Cir. 2019). Nevertheless, the Fourth Circuit has indicated that under the predominant rule, adopted by most circuits to address the question and one it would likely adopt, the foreign entity's substantive features determine whether it is to be treated as a corporation (in which case, the principal place of business test applies) or an unincorporated association (in which case, the citizenship of the association's members determines its citizenship). *Id*. The Complaint does not allege these substantive features of either Accuracy, a limited company organized under the laws of the British Virgin Islands, or Bitseller, a limited company organized under the laws of Cyprus. However, plaintiffs have attached declarations pertaining to these issue, *see* [Docs. 24-2; 24-3], which the Court may consider when deciding if subject matter jurisdiction exists. *See St. Paul Fire and Marine Ins. Co. v. Universal Builders Supply*, 409 F.3d 73 (2d Cir. 2005) (citations omitted) ("It is also well established that when the question is subject matter jurisdiction, the court is permitted to rely on information beyond the face of the complaint."). Those declarations state that neither plaintiff has a principal place of business located in the United States or are owned by citizens in the United States. *See* [Docs. 24-2 at 1; 24-3 at 1]. Based on these declarations, both Accuracy and Bitseller are aliens regardless of whether they are characterized as a corporation or as an unincorporated association; and complete diversity exists as between them and Verisign.

With respect to the John Doe defendants, Plaintiffs allege, on information and belief, that "at all times herein mentioned . . . the fictitiously named defendants, and each of them, were agents and employees of the remaining defendants [and] were acting within the course and scope of such agency and/or employment . . . ." Compl. ¶ 4. Because the Complaint can be reasonably construed as naming only those John Doe defendants located in the United States, where Verisign operates and has its principal place of business, the Court finds a sufficient prima facie

8

showing has been made that there is complete diversity as between the plaintiffs and the defendants and the Court has subject matter jurisdiction pursuant to § 1332(a)(2) with respect to this action between "citizens or subjects of a foreign state" (plaintiffs) and "citizens of a State" (Verisign and John Doe Defendants 1-10).

### B. Motion to Dismiss

A federal court considering state law claims applies the conflict of laws rules prevailing in the state in which it sits—in this case, Virginia. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 387, 396 (1941). Applied to tort claims, Virginia's choice of law rules apply the doctrine of *lex loci delicti*, and thus claims are analyzed under the law governing the place of the alleged wrong. *Consulting Eng'rs Corp. v. Geometric Ltd.,* 561 F.3d 273, 280 (4th Cir 2009) (citing *Jones v. R.S. Jones & Assocs.,* 431 S.E.2d 33, 34 (Va. 1993)). The place of the alleged wrong is where the last act necessary to create the injury occurred. *See Quillen v. Int'l Playtex, Inc.*, 789 F.2d 1041, 1044 (4th Cir. 1986); *Dreher v. Budget Rent-A-Car Sys., Inc.*, 634 S.E.2d 324, 327 (Va. 2006).

Here, the parties dispute what law applies to plaintiffs' claims for conversion and trespass to chattels. While Verisign argues that Virginia substantive law should apply because the alleged transfer—the last act necessary to complete both torts—occurred at Verisign's headquarters in Virginia, Memo. at 11-12, plaintiffs contend that the Complaint does not allege facts sufficient to determine *where* the last act necessary to complete the torts occurred and that, in any case, California substantive law should apply because that is where the class action plaintiffs, to whom the Radaris Domain Name was transferred, were located, [Doc. 24 ("Opp.") at 9-10 (citing Compl. ¶¶ 28, 29, 31)]. Given the Court's decision concerning the effect of the

9

Default Judgment Order on the wrongfulness element of those torts under either California or Virginia law, as discussed below, the Court need not resolve this choice of law issue.[5]

Under either California or Virginia law, a claim of conversion or trespass to chattels cannot proceed if the defendant has lawful justification for interfering with the alleged converted property. In this regard, courts have regarded a defendant's compliance with a valid court order as lawful justification. *See, e.g.*, *Concur-Texas, LP v. Duradril, LLC*, Case No. 2:14-cv-00218-DB, 2016 U.S. Dist. LEXIS 60258, at *22-23 (D. Utah. May 5, 2016) (dismissing conversion law claim upon finding that a Texas preliminary injunction, which defendant Dynomax followed, prohibited Dynomax from transferring the disputed slide reamers until the conclusion of the Texas litigation); *Kieffer v. Tundra Storage LLC*, Civ. No. 14-3192, 2016 U.S. Dist. LEXIS 5292, 2016 WL 199411, at *6 (D. Minn. Jan. 15, 2016) ("Because the . . . Defendants were acting in compliance with a court order, they can hardly be considered to have acted 'without lawful justification.'" (citations omitted)); *Huebner v. Alliance Fund Servs., Inc.*, No. Civ. A. 98-243, 1999 U.S. Dist. LEXIS 7465, 1999 WL 314168, at *5 (D.N.J. May 3, 1999) ("[I]t is widely recognized that when a taking is authorized or directed by a court order, conversion will not

---

[5] The parties do not dispute that the elements for conversion and trespass to chattels are essentially the same in Virginia and California. *See* Memo. at 11-12; Opp. at 10. And under both states' laws, an element as to both torts is that the property be dealt with wrongfully or without authorization. *Compare Universal C.I.T. Credit Corp. v. Kaplan*, 198 Va. 67, 92 S.E.2d 359, 366 (Va. 1956) (Under Virginia law, the tort of conversion is "any wrongful exercise or assumption of authority . . . over another's goods, depriving him of their possession; [and any] act of dominion wrongfully exerted over property in denial of the owner's right, or inconsistent with it"), *with Farmers Ins. Exchange v. Zerin*, 53 Cal.App.4th 445, 451-52 (Cal. Ct. App. 3d Dist. 1997) (under California law, the tort of conversion is "the wrongful exercise of dominion over the property of another"); *compare Am. Online, Inc. v. IMS*, 24 F. Supp. 2d 548, 550 (E.D. Va. 1998) (Under Virginia law, "[a] trespass to chattels occurs when one party intentionally uses or intermeddles with personal property in rightful possession of another without authorization"), *with Thrifty-Tel, Inc. v. Bezenek*, 46 Cal.App.4th 1559, 1566 (Cal. Ct. App. 4d 1996) (under California law, trespass to chattels "lies where an intentional interference with the possession of personal property has proximately caused injury" and includes the "unauthorized *use* of personal property) (emphasis in original).

10

result." (citing cases)); *Whitehead v. Allied Signal, Inc.*, No. 98-6305, 1998 U.S. App. LEXIS 31428, 1998 WL 874868, at *2 (10th Cir. Dec. 16, 1998); *see also* Restatement (Second) of Torts, Section 266 (a party "is privileged to commit acts which would otherwise be a trespass to a chattel or a conversion when he acts pursuant to a court order which is valid or fair on its face").[6]

Here, Verisign acted in response to the Default Judgment Order. The first issue therefore is whether that Order was one that Verisign was entitled to rely upon. Plaintiffs contend that the Order was sufficiently unclear and ambiguous that it was unreasonable for Verisign to rely upon it without first receiving clarification from the California District Court, which the Order invited; or without first verifying through a review of its records that the Huebner Defendants were, in fact, the true and rightful owners of the domain name to be transferred under the Order since, had it investigated the contents of the Default Judgment Order, it "would have known that Accuracy was not any one of the 'Defendants' in the *Huebner* action." Opp. at 12-16. Similarly, they contend that in any event defendants should not have acted without prior notice to the plaintiffs. Opp. at 15. Overall, plaintiffs contend that Verisign had a duty to "act reasonably when it

---

[6] Relying on Comment *f* to Section 266, plaintiffs liken Verisign to a bailee who had a duty to notify plaintiffs before transferring its "property," *i.e.*, its domain name and website. But even were there such a duty (which the Court does not conclude), the comment makes clear that the remedy is a claim for negligence, not conversion. Plaintiffs also rely on Comment *d,* which provides that "[i]f the writ [or order] merely authorized the officer to seize the goods of A, it will protect him only when the goods seized belong to A. The officer takes the wrong goods or the goods of the wrong person at his peril." But that comment addresses a situation where a person charged with seizing a person's property must determine which property to seize. Here, the Default Judgment Order expressly and unambiguously identified <**radaris.com**> as a domain name to be transferred; and in that circumstance, Comment *d* states that "if the writ [or order] directs the officer to take and hold in the custody of the law a *definite and particular chattel*, it is sufficient to protect him against an action for the seizure of the chattel thus described." Restatement § 266, cmt. d (emphasis added).

11

received the *Huebner* default judgment." Opp. at 16. None of these contentions prevail under the alleged facts of this case.

First, the Default Judgment Order is sufficiently clear on its face to justify Verisign's reliance on the Order without further investigation or inquiry. It identifies specifically and without any ambiguity the name of the domain name to be transferred, <**radaris.com**>, Default Judgment Order at § II.5.a.,[7] together with an unqualified directive that the domain name be transferred as the *Huebner* plaintiffs direct, *id.* at § II.5.c ("The domain name registrars [or the top-level domain (TLD) registrars or the domain name registries] for the Subject Domain Name (including but not limited to Godaddy.com) shall transfer to Plaintiffs the domain name certificates for the Subject Domain Names and/or shall transfer exclusive control of the Subject Domain Names to Plaintiffs"). While there is arguably some question concerning who is referenced as the "TLD registrar,"[8] there is no uncertainty that Verisign as the "domain name registry" was directed to act in the absence of a transfer. *Id*. at § II.5.c. ("To the extent that the TLD registrars for the Subject Domain Names do not change the registrars of record for the

---

[7] Under the Default Judgment Order, "Subject Domain Names" include the "domain name radaris.com, radaris.net, radaris.us, radaris.biz, radaris.info, radaris.org, tustoria.com, and all other websites that display, publish, or disseminate information about Subclass members that are operated by Defendants");
[8] At the December 6 hearing, plaintiffs also claimed that the Default Judgment Order is ambiguous because of the Order's reference to "top-level domain (TLD) registrars (or their administrators)" at § II.5.c., as no such registrars, as opposed to registries, exist, and it is therefore unclear who is required to act, and when, once the "domain name registrars for the Subject Domain Names . . . do not assist in changing the registrars of record for the domains under their control within 1 business day of receipt of this Order. . ." Compl., Ex. 1, § II.5.c.; *see also* December 6 Transcript at 30:12-31:20. As plaintiffs read this section, there is no identifiable top-level domain regis*trar*; and Verisign, as the "domain name regis*tr[y]*," had an unlimited amount of time to "transfer or assist in transferring the Subject Domain Names to Class Counsel," as the last sentence of § II.5.c. states, and Verisign should have confirmed the propriety of any transfer with the California District Court. But Verisign's obligation is act is clear and unambiguous regardless how one understands the reference to the "TLD registrar"; and Verisign in fact acted in the procedural order the Default Judgment Order contemplated and required.

12

Subject Domain Names, the domain name registries shall transfer or assist in transferring the Subject Domain Names to Class Counsel"); *see also* December 6 Transcript at 31:3-10.

Nor was it apparent from the face of the Default Judgment Order that the plaintiffs' rights had not been adjudicated in the *Huebner* action since the Order applied to all "defendants," who were not specifically listed in the caption or the body of the Order, but included "all those acting in concert with them and all other persons in active concert or participation with any of them or third parties providing services used in connection with Defendants' operations who receive actual notice of this Order, including but not limited to domain name registrars, domain name registries, website hosts, internet search engines, and internet service providers, whether acting directly or indirectly . . . "[9] Under these circumstances, Verisign had no duty to question, investigate or look behind the Order. And plaintiffs have not cited any case that would support that position. Indeed, requiring a party in Verisign's position to question a facially clear directive in a facially valid court order strikes against the weighty public policy in favor of requiring compliance with judicial orders. *See W.R. Grace Co. v. Local Union 759*, 461 U.S. 757, 766 (1983) ("It is beyond question that obedience to judicial orders is an important public policy. An injunction issued by a court acting within its jurisdiction must be obeyed until the injunction is vacated or withdrawn.").

Finally, plaintiffs, citing the Restatement (Second) of Torts § 266, cmt. *b*, contend that Verisign acted unreasonably because the California District Court never exercised proper

---

[9] Specifically, plaintiffs argue that the words "operated by Defendants" applies to each of the specifically referenced domain names and that because the Subject Domain Name <**radaris.com**> was never operated by any *Huebner* Defendants—a fact that plaintiffs contend Verisign could have easily confirmed—Verisign acted unreasonably. But the phrase "operated by Defendants" appears as a phrase that applies only to the residual, catch-all category—*i.e.*, "all other websites that display, publish, or disseminate information about Subclass members that are operated by Defendants." Default Judgment Order § II.5.a.

jurisdiction over the Radaris Domain Name as no proceedings were ever initiated against the actual parties-in-interest (plaintiffs); the Radaris Domain Name, registered to a Cypriot limited company (Accuracy), "was not within the territorial jurisdiction of the California District Court[,]" Opp. at 15-16; and the Default Judgment Order was therefore invalid when entered. But as already discussed, the Default Judgment Order unambiguously adjudicated the rights to the <**radaris.com**> domain name, extended the scope of its injunctive relief to the <**radaris.com**> domain name, and directed "domain name registries," here Verisign, to "immediately . . . cease . . . facilitating access to . . . the domain name radaris.com."  Compl., Ex. 1 § 11.5.a.  In short, as of the time Verisign acted, the Default judgment Order was final, valid, unambiguous and enforceable; and based on the allegations of the Complaint and the substance of the Default Judgment Order, Verisign's reliance on it was reasonable.

For all of the above reasons, Verisign's reliance on the Default Judgment Order was reasonable as a matter of law.  Plaintiffs have therefore failed to allege facts that make plausible that defendants acted "wrongfully" with respect to the transfer of Plaintiffs' domain name and website and as a result have failed to state a claim for either the tort of conversion or trespass to chattels.

## IV. CONCLUSION

For the above reasons, it is hereby

ORDERED that the Motion to Dismiss [Doc. 20] be, and the same hereby is, **GRANTED** and this action be, and the same hereby is, **DISMISSED**.

The Clerk is directed to forward copies of this Order to all counsel of record.

/s/
Anthony J. Trenga
United States District Judge

Alexandria, Virginia
December 20, 2019